UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT MICHIGAN

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Case No. 1:13-CV-360-RJJ |
| | ) | |
| v. | ) | |
| | ) | |
| JESSE RALEIGH, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S MOTION TO COMPEL
AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, Malibu Media, LLC, by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 37, hereby moves for entry of an order compelling Defendant to produce responsive documents to Plaintiff's Requests for Production, and in support files the following memorandum.

**I.       INTRODUCTION**

On October 25, 2013, Plaintiff served Defendant with its Requests for Production, which Defendant responded to on February 27, 2014.  Not only were Defendant's responses submitted three months after the deadline set by the Fed. R. Civ. P. 34, but the responses are severely deficient.  Indeed, Defendant asserted the same boilerplate objections for each request and failed to produce a single document.  Since receiving Defendant's discovery responses, Plaintiff communicated with defense counsel in an effort to obtain complete answers to its Request for Production, and specifically, production of Defendant's hard drives for forensic imaging. Defendant's failure to produce his hard drives and provide complete answers to discovery requests has prejudiced Plaintiff and unduly delayed its ability to advance the litigation, conduct

depositions, and prepare for trial. For the foregoing reasons as explained more fully below, this Court should grant the subject Motion.

## II.     FACTS

On October 25, 2013, Plaintiff served its Requests for Production on Defendant, which Defendant responded to on February 27, 2014. *See* Exhibit A, Defendant's Responses to Plaintiff's Requests for Production. Within his responses, Defendant asserts numerous boilerplate objections for the purpose of frustrating and delaying discovery. Indeed, Defendant failed to produce a single document in response to Plaintiff's requests. Further, Defendant refused to produce his hard drives for imaging and examination unless Plaintiff adhered to his unreasonable demands. Specifically, Defendant states that he will only produce his hard drives if Plaintiff agrees pay for the cost of a Michigan licensed independent computer forensic expert to examine the hard drives at defense counsel's office after the entry of a protective order. Nevertheless, in an effort to move discovery along, on June 16, undersigned e-mailed defense counsel a proposed protective order and requested that defense counsel track changes and provide any suggestions. *See* Exhibit B, pp. 8-9. However, defense counsel failed to provide any suggestions. On June 30, Plaintiff sent defense counsel a detailed email inquiring about production of the hard drives and Defendant's deficient answers to the Requests for Production. Defense counsel was unresponsive.

Accordingly, Plaintiff is seeking an order waiving Defendant's boilerplate objections, and compelling production of all documents responsive to Plaintiff's Requests for Production, including his hard drives for imaging and proper examination.

### III.    LEGAL STANDARD

A party "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense…[.]" Fed. R. Civ. P. 26(b)(1). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action…[r]elevant information need not be admissible … if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Federal Rule 37(a)(4) states that an "incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." If a party fails to answer an interrogatory or respond to a document request, the discovering party may move for an order compelling such answer or response. *See* Fed. R. Civ. P. 37(a)(3)(B).

Upon granting a motion to compel "[t]he court must, after giving an opportunity to be heard, require the party … whose conduct necessitated the motion … to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). A court must grant this payment when the movant has made an attempt in good faith to obtain the disclosure or discovery without court action, the opposing party's nondisclosure or responses were not substantially justified, and the award of expenses is just. *See* Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).

### IV.    ARGUMENT

A. The Court Should Waive All of Defendant's Boilerplate Objections to Plaintiff's Requests for Production And Compel Production of All Documents Requested

In response to Plaintiff's Requests for Production, Defendant asserts numerous boilerplate objections without any specificity in an effort to frustrate and delay discovery. Further, Defendant failed to produce a single responsive document to any of Plaintiff's requests.

3

Objections to requests for production must state the reasons for the objections. *See* Fed. R. Civ. P. 34(b)(2)(B). "The mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection." *Kafele v. Javitch, Block, Eisen & Rathbone*, 2005 WL 5095186 at * 1 (S.D. Ohio, 2005). And, courts "strongly [condemn] the practice of asserting boilerplate objections to every discovery request." *Carfagno v. Jackson Nat'l Life Ins. Co.*, 2001 WL 34059032 at *4 (W.D. Mich., 2001). "Such objections are tantamount to no objection at all." *Cumberland Truck Equip. Co. v. Detroit Diesel Corp.*, 2007 WL 4098727 at *1 (E.D. Mich., 2007).

For Plaintiff's Request for Production Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18, and 19, Defendant asserts the same boilerplate objection, or variation thereof:

> Defendant objects to this interrogatory as it is overly broad, unduly burdensome, not relevant to the issues in this case and not likely to lead to discoverable material or data. Moreover, the interrogatory is vague, ambiguous, and Defendant does not know what Plaintiff means by the Interrogatory as stated, and it is not limited in time or scope.
> Defendant further objects to the production of confidential information, and will only produce such information upon the entry of a protective order.

In each response, Defendant fails to state *how* or *why* the request is overly broad, unduly burdensome, vague, ambiguous, and irrelevant. Defendant also fails to state what specific information is confidential and why a protective order is warranted. Equally as disturbing is the idea that Defendant "does not know what Plaintiff means by the Interrogatory[.]" First, these are not interrogatories, they are requests for production. Also, it is hard to believe that Defendant does not understand every one of Plaintiff's requests.

Defense counsel's cavalier approach to the responses is easily demonstrated by his response to Plaintiff's Request for Production No. 15 wherein Plaintiff seeks any documents

4

indicating that Defendant was not at his residence or within control of his IP address at or around the time of infringement. Defendant's response states that this request is overly broad, unduly burdensome, irrelevant, vague, ambiguous, seeks confidential information which would only be produced after entry of a protective order, and of course, Defendant claims to "not know" what this request "means".

> **Plaintiff's Request for Production No. 15**: Any documents pertaining to receipts of purchases, credit card statements, checks cashed, bank account statements, or travel documents dating two months before and until and including two months after the time of the alleged infringement that would indicate that you were not at your residence or within the control of your IP address at or around the time of infringement.
>
> **Defendant's Response**: Defendant objects to this interrogatory as it is overly broad, unduly burdensome, not relevant to the issues in this case and not likely to lead to discoverable material or data. Moreover, the interrogatory [sic] is vague, ambiguous, and Defendant does not know what Plaintiff means by the Interrogatory [sic] as stated, and it is not limited in time or scope. Defendant further objects to the production of confidential information, and will only produce such information upon the entry of a protective order.

Thereafter, in an email to undersigned, defense counsel alleges that Defendant has documentation proving that Defendant was not home during the entire period of recorded infringement, which defense counsel will use to support his motion for summary judgment. *See* Exhibit B, pp. 4. Essentially, defense counsel asserts a boilerplate objection – for allegedly "irrelevant" documents which he refuses to produce – and then plans on using those exact documents in support of a motion for summary judgment. This is not only improper, but also demonstrates Defendant's attempt to delay discovery by asserting baseless boilerplate objections to every discovery request.

Defendant's responses are riddled with generic boilerplate objections and he has yet to produce a single document requested. Therefore, this Court should deem all of Defendant's

objections waived and compel Defendant to produce all responsive documents to Plaintiff's requests.

B.  <u>The Court Should Compel Production of Defendant's Relevant Hard Drives</u>

1.  <u>Defendant's Hard Drives Contain Relevant Information</u>

Plaintiff's infringement claim is based on Defendant's use of the BitTorrent network to copy and distribute Plaintiff's copyrighted works.  BitTorrent clients and torrent files may be located on Defendant's hard drives.  Request No. 1 seeks a forensically sound copy of the hard drive for each of the computer devices in Defendant's house, apartment, or dwelling.

"Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."  Fed. R. Civ. P. 26(b)(1).  "[W]here the computer itself is at the heart of the litigation-where it is, in effect, an instrumentality of the alleged copyright infringement-it is plainly relevant under Fed. R. Civ. P. 26(b)[.]"  *Capitol Records, Inc. v. Alaujan*, 2009 WL 1292977 at *1 (D. Mass., 2009) (allowing Plaintiff to examine Defendant's hard drive under a protective order).  Indeed, "inspection of a computer's contents is frequently permitted in cases involving copyright infringement."  *Dassault Systemes, S.A. v. Childress*, 2012 WL 993959 at *2 (E.D. Mich., 2012).  "Thus, courts have permitted imaging of hard drives where the use of the computer or its files forms the basis of the plaintiff's claims against the defendant."  *Piccone v. Town of Webster*, 2010 WL 3516581 at *8 (W.D.N.Y. 2010).

Plaintiff's infringement claim is based on Defendant's use of the BitTorrent network to copy and distribute its copyrighted works.  Because BitTorrent clients and torrent files may be

located on computer hard drives, external storage devices, and video game consoles, a complete

copy of each is relevant and discoverable.

        2.  <u>Plaintiff Attempted To Negotiate A Protective Order In Good Faith</u>

        In response to Plaintiff's request for production of Defendant's hard drives, Defendant

insisted on the entry of a protective order.

> **Plaintiff's Request for Production No. 1**: A forensically sound copy (a clone) of the hard drive for each of the Computer Devices in your house, apartment or dwelling.
>
> **Defendant's Response**:  Defendant objects to this request on the basis that, by its terms, it proposed to impose on Defendant annoyance, embarrassment, oppression or undue burden or expense. More specifically, Defendant does not personally have the skills or knowledge to produce such a copy, and should not be expected to bear the financial burden of hiring an expert to produce such a copy. Moreover, Defendant has neither permission, access to, or even knowledge of every computer device ever used in his house during the alleged "period of record infringement." Moreover, and more importantly, the hard drive of the only computer that Defendant has ever used in his house from well before, during, and after the alleged "period of record infringement, contains private and confidential information completely unrelated to any legitimate purpose of Plaintiff in the instant lawsuit, and Defendant should not be compelled to entrust such private and confidential matters to the custody and control of a pornographer/plaintiff. Notwithstanding said objection, Defendant proposes to allow Plaintiff access to the information it seeks, as follows:
>
> Plaintiff and Defendant shall mutually agree upon the selection of an independent expert in "computer forensics" (as that terms is defined by MCL 338.822(b)), who is licensed in Michigan under MCL 338.821 et seq. If Plaintiff and Defendant cannot agree on the selection of such an expert, then one shall be selected by the Court. Plaintiff will bring his computer, and any other video games or equipment within his custody and control and identified in these requests as being sought by Plaintiff for inspection, to the offices of Blanco Wilczynski at a mutually agreed upon time, where it/they can be examined by the independent expert in computer forensics. Said expert may make copies of the information stored on any such device, subject to the following conditions. First, the Plaintiff must agree to the entry of an appropriate protective order, being one that forbids the computer forensic expert from revealing to Plaintiff (or any other person) any of the information obtained from Defendant's computer or devices that is not relevant to this action under FRE 401. Second, the protective order must forbid the computer forensic expert from retaining such information after the close of this case, or permitting anyone else from retaining it. In addition, Plaintiff will be required to pay computer forensic expert's fees, but the computer forensic expert must agree

to maintain his or her independence, rather than maintaining a client relationship with Plaintiff.

On June 16, 2014, Plaintiff submitted a proposed protective order to defense counsel. Because defense counsel failed to provide any suggestions for the order, on June 30, 2014, undersigned again emailed defense counsel inquiring about any suggestions or changes Defendant might like to make to Plaintiff's previously sent protective order. Again, defense counsel did not respond to Plaintiff's protective order. Without Defendant's input regarding a protective order, Plaintiff is left with no other alternative but to file the instant motion.

### a. Defendant's Protective Order is Unreasonable and Lacks any Legal Basis

As part of Defendant's Response to Plaintiff's Request for Production No. 1, Defendant demands that the examination of Defendant's hard drives be conducted: (1) at defense counsel's office (2) by an independent Michigan licensed computer forensic expert; and (3) at Plaintiff's expense. Such a demand is unreasonable and lacks any legal basis. Indeed, Defendant has not supplied Plaintiff with any legal basis, case law, court rule, statute or otherwise in support of this demand. Further, a forensic examination at defense counsel's office is unreasonable because imaging alone can take up to a business day and examination thereof can take several weeks. To understand how unreasonable Defendant's demand is, a brief explanation of how forensic imaging and examinations are conducted is warranted.

One of the purposes of creating a forensically sound image of a hard drive or mobile device (collectively, "hard drives") is to preserve evidence contained within the hard drives. *Declaration of Patrick Paige, at* ¶ 16. Creation of a forensically sound image is an industry standard prerequisite for the proper forensic examination of a source hard drive. *Paige Decl. at* ¶ 17. In other words, the creation of a forensically sound image and examination thereof preserves the evidence contained within the source hard drive itself. *Paige Decl. at* ¶ 18. If properly

created and validated using forensic software which creates an E01 EnCase file format, a forensically sound image is tamper-proof. *Paige Decl. at* ¶ 19. Therefore, it removes all doubt that any individual conducting an examination of the imaged hard drive has altered, destroyed, or spoiled the evidence contained therein. *Paige Decl. at* ¶ 19.

After imaging a hard drive, a forensic expert can begin his examination of the imaged drive. Such an examination is not a simple lexical search for terms or files. Rather, it is an examination of the imaged hard drive as a whole. It is a labor intensive and time consuming process which entails the search for and discovery of peer-to-peer clients, Plaintiff's copyrighted works, and evidence of deletions or spoliation which may not be readily visible to the average user. Therefore, this process can take several weeks.

> "Often, the process of analyzing a computer's hard drive can take several weeks. Indeed, depending on the size of the hard drive, making a forensic copy and verifying the accuracy of that copy could take more than a business day. Thereafter, analysis is performed on the forensic image to ascertain if the peer-to-peer client and copyrighted works are on the hard drive. If not, the process continues by searching for evidence of deletions or spoliation. *When there have been deletions or spoliation, the process of uncovering that fraud is <u>a labor intensive and time consuming process which takes weeks</u>.* Further, all of the files on a hard drive which have been spoiled are potentially relevant. Indeed, proving that a hard drive has missing files requires an analysis of the files that are remaining on the hard drive. In light of the foregoing, it is unreasonable to impose a condition that the investigation be limited or supervised by adverse counsel. And, in undersigned's opinion attempting to impose these conditions demonstrates a fear that a proper investigation would yield unfavorable results."

*Paige Decl. at* ¶ 20(emphasis added).

Plaintiff agrees to allow a Michigan licensed forensic expert to forensically *image* the hard drives at defense counsel's office. Although, this imaging process could take an entire business day, (*Paige Decl. at* ¶ 20), it would provide Defendant and his counsel, the opportunity to observe the imaging of his hard drives and would also prevent Defendant from being without his hard drives for an extended period of time. The source drives would be returned to

Defendant that same day after imaging and the forensically sound tamper-proof images would be sent to Plaintiff's forensic expert in Florida for *examination*. In other words, while Plaintiff agrees to have a Michigan license forensic expert *image* the hard drive at defense counsel's office, Plaintiff maintains that the *examination* of those images be conducted by Plaintiff's expert Patrick Paige.

Defendant's response to Plaintiff's hard drive request demands that the *examination* of the hard drives be conducted at his offices. Defendant's unreasonable request is based on the erroneous belief that a forensic examination of a computer hard drive is a lexical scan for a series of files or terms which can be completed within a short period of time at his office. As previously stated, such an examination first requires a computer forensic expert to create a forensically sound *image* of the hard drives - a process which would take up to a business day to complete. Thereafter, the expert would then conduct the *examination* of the image, which can take several weeks to complete. In fact, in this case, more time may be required because Defendant has a total of four (4) devices which need to be examined. Therefore, it is unreasonable to impose a restriction that the investigation be conducted at defense counsel office under his supervision.

To be clear, Plaintiff does not opposed the entry of a protective order stipulating that the forensically sound images be made at defense counsel's offices by a Michigan licensed computer forensic expert, at Defendant's expense. Further, Plaintiff agrees that the protective order will forbid the computer forensic expert from (1) retaining any information within the hard drives after the close of this case; (2) permitting anyone else from retaining information within the hard drives; (3) disclosing any of Defendant's attorney-client communication or work-product to Plaintiff and its attorneys; and (4) revealing irrelevant information to Plaintiff. However,

Plaintiff maintains that the examination of the images be conducted by Plaintiff's expert, Patrick Paige, at Plaintiff's expense.

b.  <u>Defendant Should Bear the Cost of Production of the Hard Drives</u>

Defendant should bear the cost of producing forensically sound images of his hard drives because the hard drives are accessible and the imaging process does not impose an undue burden or expense.

Under the discovery rules, "the presumption is that the responding party bears the costs of complying with discovery requests[.]"  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358, 98 S. Ct. 2380, 2393, 57 L. Ed. 2d 253 (1978).  However, "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost."  Fed. R. Civ. P. 26(b)(2).  "Whether production of [electronically stored information] is unduly burdensome or expensive turns primarily on whether it is kept in an *accessible* or *inaccessible* format."  *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 318 (S.D.N.Y. 2003) (emphasis added).  Indeed, inaccessible data is significantly more costly to produce than accessible data.  Therefore, "cost-shifting does not even become a possibility unless there is first a showing of inaccessibility."  *Peskoff v. Faber*, 240 F.R.D. 26, 31 (D.D.C. 2007).

In this case, Plaintiff seeks a forensically sound copy of Defendant's computer devices such as desktops, laptops, tablets or iPads, mobile phones, portable hard drives, external storage devices, and video game consoles.  All of the foregoing devices and electronic data contained therein are accessible.  Indeed, "[a]ny data that is retained in a machine readable format is typically accessible."  *Zubulake*, at 318.  Further, electronic data on hard drives are considered to be *the most accessible*.  *See Id*. (emphasis added).  As such, Defendant should be required to pay

11

the cost of producing a forensic image of his hard drives. *See Covad Commc'ns Co. v. Revonet, Inc.*, 258 F.R.D. 5 (D.D.C. 2009) (court held that Defendant was responsible for cost of producing forensic copies of its hard drives).

In addition to being readily accessible, the cost of forensic imaging is not an undue burden or expense. The industry standard cost of forensic imaging by a licensed computer forensic expert, ranges from about $600 to $1000 per hard drive or mobile device depending on the size of the device. *Paige Decl* ¶15. At this time, Defendant maintains that he only has four computer devices, two (2) MacBook Pros and two (2) iPads, all of which were in his home during the period of recorded infringement. Thus, Defendant's cost to image these hard drive would be within the $2,400 to $4,000 range – an amount that is below what courts consider to be an "undue burden or expense" when imposing cost-shifting for production of electronically stored information.

Defendant's hard drives are not only readily accessible, but the cost of imaging does not impose an undue burden or expense. Accordingly, Defendant should bear the cost of producing forensically sound images of his hard drives.

> 3. The Hard Drives Are Necessary to Proceed With the Case

Without production of the hard drives, Plaintiff's expert cannot submit an expert report and Plaintiff cannot depose the Defendant. It is Plaintiff's practice to depose Defendant after its expert analyzes the Defendant's computers because the information gleamed from Defendant's computers will be the subject of deposition questions. Therefore, Defendant's failure to produce his hard drives and provide complete answers to Plaintiff's discovery has prejudiced Plaintiff and unduly delayed Plaintiff's ability to advance the litigation, conduct depositions, and prepare for trial.

Given the relevancy of the hard drives, Plaintiff's willingness to stipulate to the entry of a reasonable protective order, and undersigned's good-faith negotiation attempts to construct such an order, this Court should order the Defendant to produce his hard drives for imaging and inspection.

C.  Plaintiff Is Entitled to Its Reasonable Attorney Fees and Costs Incurred Pursuant to Fed. R. Civ. P. 37(a)(5)(A)

Plaintiff has attempted in good faith to obtain production of Defendant's hard drives and documents responsive to Plaintiff's remaining Requests for Production.  Indeed, undersigned contacted defense counsel through e-mail in an effort to resolve the foregoing issues and coordinate production of responsive documents.  Pursuant to Fed. R. Civ. P. 37(a)(5)(A), if a movant's motion to compel is granted, the Court, after giving the party whose conduct necessitated the motion an opportunity to be heard, must require the party to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

Despite undersigned's good faith efforts, responsive documents have not been produced. Defendant has not demonstrated good cause for his failure to adhere to Rule 34 of the Federal Rules of Civil Procedure, nor has Defendant's disregard for the rule been substantially justified. As such, Plaintiff is entitled to its attorney's fees and costs associated with bringing forth the instant motion.

I.     **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff's Motion to Compel and award Plaintiff its attorney's fees and expenses incurred pursuant to Fed. R. Civ. P. 37(a)(5)(A).

**WHEREFORE,** Plaintiff, Malibu Media, LLC, respectfully requests entry of an Order:

(A) Granting Plaintiff's Motion to Compel;

(B) Compelling Defendant to serve upon counsel for Plaintiff, within seven (7) days of the entry of its Order, all responsive documents to Plaintiff's Requests for Production at his expense;

(C) Waiving all of Defendant's boilerplate objections to Plaintiff's Requests for Production;

(D) Awarding Plaintiff its reasonable attorney's fees and expenses pursuant to Fed. R. Civ. P. 37;

(E) Holding that Defendant's failure to comply with the Court's Order Compelling substantive discovery responses shall result in the entry of a Default Judgment in Plaintiff's favor; and

(F) Granting such other and further relief as this Court deems just and proper.

## GOOD FAITH CERTIFICATION

Plaintiff, by and through undersigned counsel, pursuant to Fed. R. Civ. P. 37(a)(1), Local Rule 37-1, and Local Rule 7-1(d), hereby certifies that on June 30, 2014, undersigned attempted to confer with defense counsel through e-mail in a good faith effort to resolve the issues raised by this Motion and to explain the nature of the motion and its legal basis. Defense counsel did not respond. On July 11, 2014, undersigned called defense counsel via telephone to seek concurrence for the instant motion. Defense counsel has not responded to undersigned's message as of the time of this filing. Therefore, the issues raised in this motion remain unresolved. To date, undersigned has not received any documents responsive to any of Plaintiff's Requests for Production.

DATED: July 11, 2014

Respectfully submitted,

NICOLETTI LAW, PLC

By: /s/ *Paul J. Nicoletti*
Paul J. Nicoletti, Esq. (P44419)
33717 Woodward Ave., #433
Birmingham, MI 48009
Tel:  (248) 203-7800
E-Fax: (248) 928-7051
Email:  pauljnicoletti@gmail.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:      /s/ *Paul J. Nicoletti*

15