## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT MICHIGAN

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Case No. 1:13-CV-360-RJJ |
| | ) | |
| *v.* | ) | |
| | ) | |
| JESSE RALEIGH, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## OBJECTIONS TO THE COURT'S ORDER [CM/ECF77]

### INTRODUCTION

Plaintiff, Malibu Media, LLC ("Malibu Media"), has filed Objections to this Court's Order [ECF 77], asking that it be vacated. For the reasons contained in this Response, Plaintiff's Objections should be denied and, further, both Plaintiff and Plaintiff's counsel should be sanctioned for *misrepresentations*, *mendacious commentary,* and *misleading* this Court for the content in its Objections.

Quite simply, any delay in this case is the fault of Malibu Media and not the fault of the Defendant, Jesse Raleigh ("Raleigh"). Throughout this case, Raleigh has consistently raised the defense that he did not download and/or possess any Malibu Media material, whether that material was copyright protected or not. Raleigh has produced *five* devices, including laptops, iPads, and external hard drives, and *none* of those devices have contained any Malibu Media material. Further, Raleigh has maintained, and communicated to Plaintiff, through Plaintiff's counsel, that he was (a) not at home at the time the media was downloaded because he was working out of town

at a job site; and (b) had an open network, meaning that anyone could have used his Charter Communications wireless router to download the material.

Even more important, Malibu Media has had all five of Raleigh's devices examined by its expert Patrick Page and Page has reached the same conclusion with regard to each device: ***there is no Malibu Media material on any of Raleigh's devices***. Nonetheless, Malibu Media has engaged in a pattern of harassing, abusive, and threatening behavior which continues to this day. Even though Malibu Media violated this Court's Order and searched Raleigh's hard drive for non-Malibu Media material, Malibu has threatened to seek sanctions against Raleigh. Malibu Media is using this Court and the judicial system, as a tool in its attempt to shakedown Raleigh. Because Raleigh did not capitulate and settle this case at the outset, instead of dismissing this case, Malibu Media has consistently harassed Raleigh. This behavior must stop. Both Malibu Media, and its attorney, must be sanctioned by this Court for it flagrant abuse of the Court system, violations of a Court Order it agreed to, and its harassment of Raleigh.

<u>**FACTS**</u>

**A.    DEFENDANT SUBMITTED DISCOVERY ANSWERS WHICH WERE ENTIRELY APPROPRIATE.**

Plaintiff claims that Raleigh's Responses to Malibu Media's Discovery Requests "asserted the same boiler plate objection to nearly every discovery request for production." Raleigh has attached his discovery answers as **Exhibit A** to this Response. Malibu Media must not have read Raleigh's discovery answers because, if it did, it would see that the answers were not "boilerplate" at all. While Raleigh objected to Malibu's overly broad, unduly burdensome, and irrelevant responses, he also provided answers to

2

each and every interrogatory, including the following interrogatories which can only have been asked in an attempt to embarrass Raleigh:

> 23.　Have you ever watched x-rated, adult or pornographic movies or live feeds (collectively, "adult content")? If so, when was the last time you watched adult content, how often do you watch adult content, which studios do you prefer, and what type of movies do you prefer?

> 24.　How and from where do you procure adult content to watch? Have you ever subscribed to an internet company distributing adult content?

> 25.　Is there anyone in your personal or professional life who you do not want to know you watch adult content? If so, explain who and why? (**Exhibit A**, Answers to Interrogatories).

Plaintiff's counsel should be embarrassed himself for asking such irrelevant and intrusive questions. As Plaintiff's counsel, and this Court, are well-aware, there is only one relevant question which should have been asked of Raleigh – did you download and/or possess any Malibu Media material. No other question was/is relevant. It is incredible that Plaintiff's counsel asked Raleigh what type of adult movies he prefers. And, to top it off, question 25 was clearly designed to attempt to embarrass Raleigh into settling this case or risk being exposed to "anyone in [his] personal or professional life who [he] did not want to know [he watched] adult content." Plaintiff should be ashamed of having used the legal system this way.

In addition, Raleigh was forced to object to virtually every discovery request because they <u>were</u> (a) all overly broad; (b) almost uniformly irrelevant in that they asked for material that was not related to Malibu Media's copyright protected material; and (c) were unduly burdensome in that they required Raleigh to look back through records which were irrelevant to this case. Raleigh also answered all of the interrogatories by pointing out that he emphatically denied ever downloading and/or possessing any of

Malibu Media's copywritten material. However, Raleigh could not answer all of the requests to produce until a Protective Order was entered, which Raleigh communicated to Plaintiff through his discovery answers.

Therefore, it is completely disingenuous for Plaintiff to claim that Raleigh's answers were deficient in ***any*** respect. Raleigh asks this Court to take a close look at the discovery submitted by Plaintiff in this case. (**Exhibit A**). As the Court can see, the discovery requests themselves are clearly boiler plate, designed to be used in just about every case in which Malibu Media harasses defendants by subjecting them to undue and overly burdensome discovery. These discovery requests are not tailored to Raleigh to in any meaningful way.

## B. RALEIGH DID NOT DELAY IN PRODUCING HIS HARD DRIVE FOR 14 MONTHS – ANY DELAY WAS CAUSED BY PLAINTIFF

As this Court is well aware, Raleigh was reluctant to produce his hard drive until a Protective Order was put in place, for reasons which will become obvious later in this Response Brief due to Plaintiff's flagrant violations of the Protective Order. On August 29, 2014, at the hearing on Plaintiff's Motion to Compel, the parties, through counsel, reached agreement on a Protective Order. (ECF ___). However, despite Plaintiff's counsel claiming that Raleigh delayed the discovery process, Plaintiff's counsel waited until October 2, 2014, ***five*** weeks after the hearing, to even submit a draft of a protective Order to Raleigh's attorneys. (**Exhibit B**). This Protective Order was entered on October 21, 2014. (ECF ___).

Despite the Protective Order being entered, Plaintiff did not communicate any instructions to Raleigh's counsel for having the devices examined. On October 10, 2014, ***six weeks*** after the hearing at which the parties agreed in principle to a protective

4

order, Raleigh's attorney emailed Malibu's attorney, for instructions. (**Exhibit C**). On October 13, 2014, Raleigh's sent Malibu's attorney another email asking for instructions. (**Exhibit D**).

Finally, on October 15, 2014 (now ***seven*** weeks after the hearing), Malibu's attorney emailed Raleigh's attorney with instructions on where to send the devices. (**Exhibit E**). Due to Plaintiff's counsel's lack of response to Raleigh's attorney's multiple request for instructions, Raleigh's attorney instructed Raleigh (who has an extensive background in IT) to image his hard drives and send the images to Plaintiff's expert. This was consistent with ***Malibu's original request to Raleigh – that he image the devices and send them to Malibu's experts.*** (See **Exhibit A**, Answers to Requests to Produce #1, where Malibu asks that Raleigh produce "a forensically sound copy of the hard drive (a clone) for each of the computer devices in your house . . ."; **Exhibit F**, Malibu's objections to Raleigh imaging his devices).

Plaintiff's counsel then objected to Raleigh imaging his own drives, even though it was what Plaintiff originally requested, which set off another ***six week delay*** in getting the devices to Plaintiff's technician/transporter, Kevin Pursley. Starting on November 14, 2014, Pursley began emailing Raleigh's counsel to set up a time to facilitate pick up of Raleigh's devices. However, because Raleigh had already imaged the devices, he needed the drives on which he imaged the devices returned so he could back up the devices he was to send to Malibu's experts. (**Exhibit G**, email chain with Pursley). This was partially due to, again, Malibu's counsel sitting on the issue and not getting back with Raleigh's counsel. (See **Exhibit G**). Eventually, Pursley picked up two of the devices from Raleigh on December 3, 2014. Once those devices were returned, Raleigh sent the remaining devices.

Even though Raleigh turned over his original devices to Pursley beginning on December 3, 2014, and Pursley imaged those devices, those devices remained in Pursley's care and he did not turn them over to Mr. Page until December 22, 2014.  (See ECF 70, joint status report).  Even though Malibu now complains that Raleigh unduly delayed in producing his devices, by the time Mr. Page actually received the images of them, ***three full months*** had passed, all due to ***Malibu's own delays***.

In addition, Plaintiff's counsel represented to this Court, through the Magistrate, on December 15, 2014, that Mr. Page would have the devices analyzed and a report produced by the end of 2014.  Plaintiff's counsel insisted on using Patrick Page and would not allow anyone else to analyze the hard drives and/or produce a report. However, Mr. Page was apparently delayed due to a pre-planned vacation and another hearing/trial.  (See ECF 70).  Rather than obtain another expert, Plaintiff insisted on using Patrick Page, even though he knew that he would be running close to, if not, violating, this Court's Discovery Order.  (See ECF 52, requiring the parties to file a joint status report upon receipt of Patrick Page's report, and before the settlement conference dated February 3, 2015).  As this Court is well-aware, Mr. Page's first report was not issued until February 13, 2015.

Notably, even after Mr. Page's February 13, 2015 report was issued, and he concluded that Raleigh's devices did not have any Malibu Media material on them, Plaintiff was still not satisfied to agree to dismiss this case.  Rather, Plaintiff's counsel insisted, by email, that Raleigh had failed to disclose the existence of a 2 Terrabyte Western Digital Hard Drive and insisted that Raleigh produce it.  (**Exhibit H**, emails from Plaintiff's counsel).  However, that device had been disclosed – in Raleigh's Supplemental Answers to Plaintiff's Discovery Requests Served on October 2, 2014.

6

(See **Exhibit A**).  Plaintiff's counsel, however, ***never requested that device be produced for imaging and analysis.***

Nonetheless, Plaintiff's expert actually had that external hard drive in his possession, as Raleigh had sent it to Plaintiff's expert on October 21, 2014.  Even though the expert was only supposed to keep the hard drive for 2-3 days, the expert kept the hard drive for 45 days before returning it to Raleigh, without imaging the hard drive or examining it!!  So, even though Plaintiff had possessed the hard drive at issue for 45 days, and the existence of the hard drive had been disclosed earlier that month in supplemental discovery responses, Plaintiff and Plaintiff's counsel now claim that Raleigh never disclosed the device.  (Exhibit H, emails regarding external hard drive).  If Raleigh had dropped it in Plaintiff's counsel's lap, Plaintiff would probably say the same thing.

## C.    PLAINTIFF'S EXPERT DID NOT TIMELY EXAMINE THE HARD DRIVES.

As indicated previously, Plaintiff's technician/transporter kept the imaged devices in the back of his car and did not timely transport them to Patrick Page.  (ECF 70).  This caused not just a three week delay but, because Mr. Page had a pre-planned vacation as well as a hearing/trial, it delayed the production of Page's report until February 13, 2015.

To make matters even worse, Plaintiff violated this Court's "Order Regarding Settlement Conference."  (ECF 56).  That order required Malibu's attorney, at least 14 days prior to the February 4, 2015 settlement conference, to send a demand letter to Defendant's attorneys.  Defendant's attorneys were required to submit a response letter to Plaintiff's counsel seven days prior to the settlement conference.  Even though

Defendant's counsel submitted its letter by the deadline, Plaintiff's counsel failed to follow through and only responded to Defendant's counsel's letter. (**Exhibit I**). Because Page had not submitted his report, this exercise was meaningless.

In fact, because Page's report was four weeks late, and the February 4 settlement conference was right around the corner, Defendant moved to dismiss the case for lack of progress. (ECF 57; this motion was eventually withdrawn and Raleigh filed a Motion for Summary Judgment based on the fact that both of Page's report conclude that Raleigh did not have any Malibu Media material on any of his *five* devices). Moreover, despite requesting the concurrence of defense counsel in a Motion to Adjourn the Settlement Conference, Malibu's attorney failed to file his Motion and instead requested from Raleigh's counsel that his client be allowed to attend by the phone. Raleigh's attorney objected, informing Malibu's attorney that the settlement conference would be futile without Page's report and that the proper procedural mechanism would have been to simply request to adjourn the settlement conference. (**Exhibit J**, emails to Malibu's attorney).

All delays in this case have been caused by Plaintiff's counsel, due to the fact that he simply has not been attentive to the details of this case. He has misread (and mischaracterized) Raleigh's discovery answers and has slandered Raleigh's name by accusing him of lying (see next section). These tactics are sickening and serve to underscore one indisputable fact – ***there is no Malibu Media material on Raleigh's devices, never has been, and never will be. Despite this, Malibu cannot simply give up on this litigation and continues to harass and attempt to embarrass Raleigh.***

**D.    THE EXAMINATION OF DEFENDANT'S HARD DRIVE DID NOT REVEAL ANY RELEVANT NEWLY DISCOVERED EVIDENCE BUT, RATHER, WAS A CLEAR VIOLATION OF THIS COURT'S PROTECTIVE ORDER**

On October 21, 2014, the parties had a Protective Order entered with the following clauses:

> 5.    Plaintiff's forensic expert, as identified in Plaintiff's Fed. R. Civ. P. 26(a) Disclosures, will then ascertain if a peer-to-peer client or Plaintiff's copyrighted works are on any of the "imaged" hard drives.  If not, Plaintiff's forensic expert will continue to search the "imaged" hard drives for evidence of deletions, spoliation, and suppressing of evidence.  Plaintiff's forensic expert will perform a search of the "imaged" hard drives for: (1) torrent files; (2) torrent file fragments; (3) any files pertaining to peer-to-peer clients; (4) any files pertaining to peer-to-peer distribution; (5) web history relating to BitTorrent activity; and (6) any evidence that significant alterations have been made to the devices consistent with the deletion or suppressing of evidence.  Plaintiff's forensic expert may conduct any other actions that may be necessary to determine if significant alterations have been made to the hard drives consistent with the deletion or suppressing of evidence.

> 6.    After completing the forensic examination of Defendant's "imaged" hard drives, Plaintiff's forensic expert shall disclose whether or not he found any relevant documents.  If so, it will provide the information to Plaintiff's counsel.  Determination as to the form, foundation, and admissibility of the information will be made by the judge and or magistrate prior to trial.

Plaintiff has identified what it describes as "newly discovered evidence on pages 5 and 6 of its Objections, including the following:

> a.    Defendant's interest in BitTorrent through text and chat files discussing BitTorrent;

> b.    Defendant's possession of highly sensitive personal information of unrelated third parties (such as social security numbers, license numbers, and account passwords) linked to different hacking events; this highly sensitive data was obtained through BitTorrent;

> c.    Installation of uTorrent on Defendant's hard drives – the exact  BitTorrent client used to infringe Plaintiff's works;

      d.    Defendant's failure to disclose and produce the contents of another network (titled "PSF") which Defendant consistently uses to store and access data;

      e.    Defendant's failure to disclose and produce the contents of his cloud services which Defendant uses to store and access data;

      f.    Defendant repeatedly visited The Pirate Bay website – a website which enables piracy of copyrighted works through its extensive index of torrent files;

      g.    Defendant obtained third party music media files through the torrent website www.torrentazos.com; and

      h.    Since 2011, Defendant has possessed and consistently used an External 2 Terabyte Western Digital Hard Drive, which he failed to disclose or produce to Plaintiff.

The protective order only allowed Plaintiff to search for peer to peer material and Malibu's own copyrighted material. Plaintiff's listed "newly discovered evidence" goes way beyond the scope of the protective order it agreed to in another attempt to harass and/or embarrass Raleigh.

Plaintiff, in violating this Court's Order, which is clearly sanctionable in and of itself, is also using the system to harass, abuse, and attempt to intimidate Raleigh. It is irrelevant whether Raleigh possessed any "third party" material. The only thing that is relevant in this case is whether Raleigh possessed any Malibu Media material, and the answer to that question is clearly and unequivocally (as Raleigh has state throughout this case), "**NO**."

Plaintiff claims that Raleigh failed to produce "storage network contents and additional devices." This is in regard to the "2 Terrabyte Western Digital" external hard drive covered above and Plaintiff's allegation is simply not true. (See **Exhibit H;** see also **Exhibit K. ¶¶** 19-21.)

Moreover, and perhaps more importantly, none of the materials identified in Plaintiff's list are relevant to this case. The only issue in this case is whether Raleigh had ***Malibu Media's*** materials on any of his devices. Again, the answer to that is "**NO**." However, there is a very logical explanation for why Raleigh has an interest in BitTorrent – his job.

Plaintiff is well aware, from Raleigh's first set of discovery answers, that Raleigh has been a software designer, an installer and maintainer of computer networks, in computer network security, and in the development of computer databases, all which require that he familiarize himself with internet security and threats to his networks and databases, including Bit Torrent activity. (**Exhibit K**, Affidavit of Jesse Raleigh, ¶ 2.)

In addition, Raleigh was in possession of "highly sensitive personal information" because he performed investigations of potential identity theft and fraud on behalf of friends of his. (**Exhibit K**, ¶¶ 6-10.) ***It is incredibly disturbing that Plaintiff', Plaintiff's counsel, and Patrick Page looked for/are aware of this because (a) it is beyond the scope of the protective order and (b) should not have been disclosed in a Motion because it is private and needed to be protected!***

Malibu is surprised that Raleigh had uTorrent installed on his computer. Again, Raleigh uses that program for work ***and it is one of the most popular Bit Torrent clients on the market and available for use.*** (**Exhibit K**, ¶¶ 15-18.) It is not surprising at all.

Plaintiff is disingenuous with regard to items "d" and "e" in that (a) both items were on Raleigh's devices and were available for inspection and (b) Raleigh disclosed his

"cloud" backup service in his discovery answers. (See **Exhibit A**). The "PSF" network is a **virtual** network for which there is no hard device, but for which all data was on the devices produced by Raleigh. (**Exhibit K**, ¶¶ 11-13.)

As to items "f" and "g," this is a violation of the protective order, in that Plaintiff is again attempting to embarrass Raleigh by claiming that he was either illegally visiting Bit Torrent sites or illegally downloading music. Again, however, Malibu's bark is worse that it's bite – there is no evidence that Raleigh ever **illegally downloaded** any material or, more precisely, that he **illegally downloaded** any Malibu material.

Now, for Plaintiff to come into this Court and say, "without production of these devices or storage locations, Plaintiff's expert cannot examine its contents" is simply unreasonable and another attempt by Malibu Media to abuse and harass Raleigh. Plaintiff's counsel had the opportunity to expressly request individual devices and did so, limiting these devices to the four identified above. Raleigh was not required to produce the 2 Terabyte Western Digital Hard Drive but, in the interest of moving this case forward, did so anyway.

Plaintiff then threatens to file a Motion against Raleigh, seeking sanctions for an alleged misrepresentation. Plaintiff's counsel needs to look in the mirror at himself. Plaintiff's counsel had the opportunity to specifically request other storage devices and simply did not do so. The fault lies with Plaintiff's counsel and not Raleigh. Plaintiff's counsel needs to be sanctioned for the misrepresentations he has made in this regard.

**E.    The Magistrate Judge's Denial of Plaintiff's Motion is Extremely Prejudicial and Should be, as Plaintiff's Counsel has Misrepresented the Facts Throughout his Objections**

Plaintiff notes that the Magistrate Judge's denial of its Motion is extremely prejudicial. The Magistrate's denial **should be prejudicial**, based on the undue

delay, misrepresentations, and, quite frankly, the circus created by Plaintiff and Plaintiff's counsel in regard to the handling of the discovery requests at issue.  The Magistrate's order, however, was not ***unreasonably prejudicial*** in that any delay was caused by Plaintiff, not Raleigh.

It should not go unnoticed that, despite entering a Protective Order on October 21, 2014, Plaintiff's counsel never bothered to provide instructions to Raleigh as to how to produce the devices at issue.  Raleigh's counsel basically had to beg Plaintiff's counsel to give his instructions on how to produce the devices at issue.

Even after the devices were produced, neither Plaintiff nor Plaintiff's counsel relative that it actually possessed the 2 Terabyte external hard drive for 45 days ***and never bothered to make an image of it.***  As a result, literally four months after having the device returned, Raleigh had to "re-produce" the 2 Terabyte Western Digital external hard drive to Plaintiff's expert.

Finally, Plaintiff has continuously violated this Court's Case Management Order (ECF 21), entered on October 9, 2013.  This Order required the parties to complete discovery by August 15, 2014.  On that date, Plaintiff filed a Motion to Extend Discovery (ECF 35).  Rather than extend time, the Court required the parties to file a status report as to the outstanding issues.  (ECF 43).   Even though the parties were to agree on a ***joint status report***, Plaintiff filed its own status report which was simply in the guise of a Motion (ECF 45), forcing Defendant to file objections to the status report (ECF 46).  Plaintiff's counsel did not provide Patrick Page's report by the end of 2014 and did not timely serve its settlement demand letter on Defendant's.  In fact, this process was rendered useless by the fact that Defendant complied with the Court order and served his demand letter to Plaintiff ***first***, thus reversing the process.

13

Quite simply, no order has been entered in this case extending discovery, and the Magistrate rightfully denied Plaintiff's late request to, in essence, reopen discovery. None of this would have been necessary had Plaintiff, or Plaintiff's counsel, simply read the discovery production before them (instead of referring to answers as "boilerplate") and responded to emails on a timely basis.  There is no basis for Plaintiff's argument.

## LEGAL ARGUMENT

A party seeking to overturn a Magistrate's ruling on a non-dispositive matter bears the burden to demonstrate that the ruling is clearly erroneous or contrary to law. *Brown v. Wesley's Quaker Maid, Inc.*, 771 F.2d 952 (6th Cir. 1985); *Day v. Wayne County Board of Auditors*, 749 F.2d 1199 (6th Cir. 1984); *Moore v. Secretary of Health and Human Services*, 651 F. Supp. 514 (E.D. Mich. 1986). The discretion vested in the Magistrate to decide discovery matters is necessarily broad and the exercise of that discretion should not be set aside unless the reviewing court has a firm and definite conviction that a mistake has been made. *Anthony v. Abbott Laboratories*, 106 F.R.D. 461, 463 (D.R.I. 1985).

Defendant has covered, in great detail, the outrageous accusations made by Malibu Media of Raleigh in the factual background above.  Despite Plaintiff's desperate attempt to reframe the issues in this case, the documents attached to Raleigh's Brief paint the correct picture – he provided legitimate discovery responses (which were ignored by Plaintiff), produced his devices timely (even if Plaintiff refused to respond to requests of where and how to transport them), and went above and beyond the rules of discovery by producing ***the same external hard drive on two occasions even though Plaintiff's expert had possession of the hard drive for 45 days.***

14

As a result, the Magistrate saw through this charade and, hopefully, this Court will see Plaintiff's Objections for what they really are – a last minute attempt to save a sinking ship.  At this stage in the litigation, Malibu has examined *five* of Raleigh's devices and, even if the Court were to extend discovery, there are no more devices for Malibu to examine.  Moreover, all of Raleigh's data and files are contained on the devices which have already been produced.  In short, the Magistrate got it right – Malibu has ample time and effort to prove its case and has failed miserably.  Raleigh stood up to the shake-down artist which is Malibu Media – and won.  Raleigh has already filed a Motion for Summary Judgment – which should be granted.  Raleigh's reward for standing up this bully should be the award of attorney fees, not more litigation.

## CONCLUSION

For the foregoing reasons, Defendant, JESSE RALEIGH, respectfully requests that this Court denies Plaintiff's Objections and enter and Order sanctioning Plaintiff's counsel for bringing such a frivolous Motion, violating the Protective Order entered by this Court, and slandering Raleigh's name without evidence or good cause.

Dated: April 21, 2015

Respectfully Submitted,

By: */s/* **Derek S. Wilczynski**
Derek S. Wilczynski, Esq.
Blanco Wilczynski, PLLC
2095 East Big Beaver Road, Ste. 400
Troy, MI 48083
Tel: (248) 519-9000
E-mail: dsw@blancopc.com
*Attorney for Defendant, Jesse Raleigh*

15

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 21, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ ***Derek S. Wilczynski***