**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

MALIBU MEDIA, LLC,

Plaintiff,

*v.*

JESSE RALEIGH,

Defendant.

Civil Action Case No.: 1:13-cv-00360-RJJ
HON. ROBERT J. JONKER
MAG. JUDGE: HUGH W. BRENNEMAN

**NICOLETTI & ASSOCIATES, PLLC**
PAUL J. NICOLETTI [P-44419]
Attorney for Plaintiff
33717 Woodward Avenue, Ste. #433
Birmingham, MI 48009
Landline: (248) 203-7800
eFax: (248) 928-7051
pauljnicoletti@gmail.com
http://www.nicolettilawplc.com

**BLANCO WILCZYNSKI, PLLC**
Derek S. Wilczynski [P-57079]
Attorneys for Defendant
2095 East Big Beaver, Suite 400
Troy, MI 48083
(248)519-9000
Fax: (248) 519-9001
dsw@blancopc.com

**LINCOLN G. HERWEYER, P.C.**
LINCOLN G. HERWEYER [P-55742]
Co-Counsel for Defendant
35054 Twenty-Three Mile Road, Suite 115
New Baltimore, MI 48047
(586)716-1562
Fax: (586) 716-1867
lgherweyer@netscape.net

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS

## INTRODUCTION

Plaintiff, Malibu Media, LLC ("Malibu Media"), filed a frivolous, misleading, and intentionally deceptive Motion for Sanctions, for the sole purpose of attempting to muddy the record and sully the Defendant's name to avoid having to pay costs and attorney fees to the Defendant once this Court orders that this case be dismissed with prejudice, based on Defendant's Motion for Summary Judgment. [DOC #74]. Plaintiff's expert found absolutely no evidence that Defendant, Jesse Raleigh ("Raleigh"), illegally

possessed any of Malibu Media's pornography. Nonetheless, Plaintiff has baselessly attempted to smear Raleigh's name by accusing him of perjury and spoiling evidence.

Plaintiff's Motion for Sanctions should be denied because (a) it is factually inaccurate, (b) it is not consistent with the law, and (c) Plaintiff is well aware of this. Plaintiff's counsel has misrepresented to this Court that Raleigh "perjured" himself, spoiled evidence, and was misleading in answering discovery requests. However, in his Motion, Plaintiff's counsel has misled this Court regarding Raleigh's answers to Interrogatories, been untruthful regarding the devices requested and produced (Plaintiff's counsel himself only requested four devices, all of which were produced, yet has accused Raleigh of withholding devices), and has misled the Court regarding the external hard drive at issue, which Raleigh produced and Plaintiff's experts had for 45 days without examining it, and demanded it be returned (which Raleigh provided, to facilitate discovery), *even though Raleigh was under no obligation to produce the device because Plaintiff's counsel did not include in the Protective Order on a list of devices to be produced.*

The brazen misrepresentations by Plaintiff's counsel to this Court are simply stunning. Raleigh has gone above and beyond his obligations under the Federal Rules of Civil Procedure, as well as this Court's Orders, to facilitate discovery. Despite this, Plaintiff, and Plaintiff's counsel, has used the legal system and, in particular, this Court, in an attempt to shame Raleigh into paying money to Malibu Media rather than see himself exposed as someone who views pornography.

Malibu Media, however, chose the wrong litigant to attempt to bully. Raleigh is fighting back – and should not be sanctioned. Rather than order sanctions against Raleigh, this Court should order sanctions against Plaintiff and Plaintiff's counsel for

filing such libelous material and should deny Plaintiff's Motion as a matter of law.

## FACTUAL BACKGROUND

As a general proposition, while reviewing this Motion, Defendant Raleigh requests that this be aware of the current procedural posture of the case. Discovery is closed.[1] Plaintiff has examined two laptops, two ipads, and two external hard drives belonging to Defendant Raleigh. None of those devices have had any of Malibu Medias pornography on them. (See **Exhibits C and D** to Defendant's Motion for Summary Judgment, Doc. No. 74). To repeat – Plaintiff's own expert has concluded that ***none*** of Raleigh's devices has had any of Malibu Media's allegedly copyright protected works on them.

Raleigh, therefore, filed a Motion for Summary Judgment. (Doc. No. 74). This Motion is currently pending and it is clear that this case should be dismissed. Instead, Plaintiff has attempted to stall this case by filing Objections to Magistrate Brennan's Order denying an extension of time to conduct more discovery (Doc. No. 77) and Plaintiff has objected to entry of that Order (Doc. No. 78). Plaintiff now has filed its Motion for Sanctions, not because it believes that Raleigh committed any discovery violations which should lead to sanctions, but because it is terrified that Raleigh, one of

[1] Plaintiff filed a Motion to Extend Discovery, which this Court properly denied. (Doc. Nos. 35 and 77). Plaintiff then filed Objections to the Magistrate's Order, to which Defendant responded, pointing out the numerous misleading and mendacious statements made by Plaintiff in its Objections. (Doc. Nos. 78 and 80). Plaintiff has now continued its personal attacks on Plaintiff Raleigh. As pointed out by Raleigh in past filings, this is a typical approach to litigation for Malibu Media, which has filed over 3,000 cases against "John Does" and individuals it believes violated the Copyright Act. Many Defendants simply roll over and accede to Malibu's shakedown attempts – but Raleigh has stood up Malibu. Even though Raleigh has consistently, and bluntly, told Malibu that he does not have, and never has had, Malibu's pornography on his computer, to the point where Raleigh proved that he was not even at home when the smut was downloaded, Malibu nonetheless insisted on inspecting Raleigh's devices. As this Court is undoubtedly aware, this search turned up ***no Malibu Media pornography***. (See **Exhibits C and D** to Doc. No. 74).

the few litigants to stand up to the shake down artist known as Malibu Media[2], will actually move for sanctions under the Copyright Act in the form of costs and attorney fees. And, based on a similar Motion for fees filed by Raleigh's counsel in another case in which they defended a client against Malibu Media, Plaintiff knows that the fees are likely to be greater than $40,000.00.

**A. Raleigh Did Not Commit Perjury About The Extent Of His BitTorrent Use.**

Malibu Media claims that, "Defendant testified that ***he only*** 'used BitTorrent to download Linux installation ISO images.'" [DOC #81, at p. 2]. This statement is misleading at best and intentionally deceptive at worst. By using the qualifier, "***he only***," Malibu Media makes it appear as though Raleigh absolutely limited his discovery response stating that he *exclusively* used BitTorrent to download Linux installation ISO images.

A closer look at the Interrogatory Response, attached as **Exhibit A** to Plaintiff's Motion (and, for the sake of judicial economy, will not be reattached here), shows that Raleigh went beyond the scope of the Interrogatory being asked to indicate ***an example*** of *when* he uses BitTorrent to state *how* he uses BitTorrent. The answer to the Interrogatory was not to state *exclusive* use of BitTorrent to download Linux installation ISO images but, rather, to indicate an instance of under what circumstances he uses them. For Plaintiff to claim otherwise ignores the plain language of the Answer to the Interrogatory given by Raleigh and attempts to twist and bend an example given

[2] So it is not unclear to this Court, Defendant does not refer to Malibu Media as a shakedown artist lightly. By its experts own admission, in the reports attached as Exhibits C and D to Raleigh's Motion for Summary Judgment, Malibu Media actually "seeds" the internet with its pornography, not to make it available for purchase, but with the hopes that someone *like* Raleigh (but not, in this case, Raleigh) will attempt to illegally download it so Malibu can sue this person for copyright infringement. This is the very essence of a shakedown artist.

by Raleigh for Plaintiff's own nefarious purpose, to libel Raleigh in open Court.

Additionally, Plaintiff claims that Raleigh committed perjury by swearing that he only legally purchased content despite having content on his devices which ***Plaintiff believes*** were illegally obtained. However, as can be seen from The Affidavit signed by Raleigh as **Exhibit A** to Doc. No. 80, Raleigh did not illegally download any of that content. Rather, this material was given to Raleigh on a thumb drive and was not illegally downloaded, or "BitTorrented", at any time by Raleigh. Malibu Media is clearly making a leap of logic (claiming that Raleigh illegally downloaded something which was given to him) again, for the sole purpose of smearing Raleigh's name.

**B. Raleigh's Computer Records Confirm That His Testimony Was True, And Not False As Claimed By Plaintiff.**

Additionally, Malibu Media claims that, "Defendant used BitTorrent to illegally obtain the private information of military and law enforcement officers and to download Torrent files with classified diplomatic cables." Significantly, while claiming that Raleigh "illegally" used BitTorrent to obtain private information of military and law enforcement officers, Malibu Media provides no source for why it believes Raleigh's possession of this material was "***illegal***."

In point of fact, the information obtained by Raleigh was done so both legally and for a specific, legal purpose. Again, as can be seen in Raleigh's Affidavit, one of Raleigh's close friends, a law enforcement officer, believed his personal information was compromised. (Doc. No. 80 **- Exhibit A**). Raleigh sought to assist his friend by searching to see if this was, in fact, true. To accomplish this, Raleigh searched only "open source" (that is, available to the public) information which is clearly not illegal or protected. See, *New York Times Co. v. United States,* 403 U.S. 713 (1971) (the

"Pentagon Papers" case), Doc. No. 80 - **Exhibit A**.

It is incredible that Malibu Media claimed that Raleigh ***illegally*** downloaded information without directing this Court, or Raleigh, to a statute, rule, regulation, case, or Constitutional provision to establish that what it accused Raleigh of doing was *actually* illegal. Instead, Malibu Media expects this Court to simply accept, at face value, its allegation. Plaintiff's counsel, being a seasoned attorney, is fully aware of the dangers of misrepresenting the law to this Court, yet has done so repeatedly throughout his Brief. In *New York Times v. U.S.*, the U.S. Supreme Court made it perfectly clear that once classified information is released to the public, reading that information cannot be a violation of the law. That is all Plaintiff accuses Raleigh of doing – reading information Malibu Media believes was once classified.

### C. Raleigh Has Not Suppressed Any Evidence, And Plaintiff Knows This.

Plaintiff claims that Raleigh has "intentionally failed to produce relevant evidence" with regard to Raleigh's external hard drive – a Western Digital external hard drive. [DOC #81, at p. 4]. With this allegation, Plaintiff is again either being willfully ignorant, misleading to this Court, or intentionally deceptive in an effort to, again, liable Raleigh by publishing false information in open Court documents. The fact that Malibu Media now claims it may not have been given all of Raleigh's hard drives is made even worse by the fact that any misunderstanding was caused solely and exclusively by the failure of Plaintiff's counsel to communicate with his experts and follow through on all of Raleigh's discovery requests. In other words, Plaintiff's counsel caused this very situation and is now attempting to rescue his client from his own incompetence.

As this Court is well aware, Raleigh was reluctant to produce his hard drive until

a Protective Order was put in place. On August 29, 2014, at the hearing on Plaintiff's Motion to Compel, the parties, through counsel, reached agreement on a Protective Order. This Protective Order was entered on October 21, 2014. (Doc. No. 44).

Despite the Protective Order being entered, Plaintiff, who had the burden of providing information to Raleigh by which Raleigh would know how to produce the requested devices, did not communicate any instructions to either Raleigh or his counsel. In fact, Raleigh's attorney attempted, through email, to obtain these instructions from Malibu Media's attorney, despite numerous requests by Raleigh's counsel, attached as Doc. No. 80 - **Exhibit A**, Raleigh's attorney did not receive a timely response from Malibu Media's attorney. This was particularly important because Malibu Media's counsel indicated that he intended on having the device imaged by Stot T. Matthews, an individual working at a company in Southfield, Michigan. However, Mr. Matthews' company ***does not have its address listed on its website***. Therefore, even had Raleigh and his counsel taken the initiative to send Raleigh's devices to Mr. Matthews, they had no idea where to send the hard drive. Again, Plaintiff's counsel could have remedied this by simply responding to defense counsel's emails but, for whatever reason, chose not to do so.

Moreover, Raleigh produced the hard drives to Plaintiff's technician/transporter, who was then, in turn, supposed to forward these devices to Plaintiff's analysis expert, Patrick Page, on December 3, 2014. However, the technician/transporter forgot that he had the devices in the back of his car and did not transport them to Mr. Page until December 22, 2014. (Doc. No. 80 - **Exhibit B,** emails from Plaintiff's counsel).

Raleigh responded to Malibu Media's Requests for Production of Documents by identifying four devices which he, and his wife, used on a regular basis: two (2) laptop

computers and two (2) "iPads." (**Exhibit A, Exhibit B, and Exhibit C,** to Plaintiff's Motion. Raleigh did not initially disclose his "backup" hard drive because it was not *actively* being used by either him or his wife but was only used to backup his laptop. By way of background, a backup hard drive is used, on occasion, to back up the electronic content contained on a device used "everyday" such as a laptop. Because the device is only used periodically, Raleigh did not initially think to disclose the device.

The device works as follows: First, Raleigh periodically uses the device to make a copy of all of the information contained on his "everyday" laptop computer. The device does not generate any new material, create any new files, or segregate any information. In other words, the device only takes a "picture" of what is on Raleigh's laptop computer at the time he uses it to backup that computer. In essence, the backup hard drive can be considered a "time machine," taking a snapshot of Raleigh's laptop at any given time.

When the backup hard drive is full, it automatically deletes the first information, or snapshot, it took. So, for example, if Raleigh began backing up his laptop in 2010, and the hard drive became full in 2012, the very first information, backed up in 2010, would be deleted from the hard drive. This is a common practice from anyone who is in the information technology field and, actually, is a good idea for anyone to do to protect their personal information.

Plaintiff is being intentionally misleading when it indicates that Raleigh did not disclose this hard drive. Plaintiff refers to Raleigh's response to its Request for Production of Documents, numbers 10 and 11, of **Exhibit C** to Plaintiff's Motion for Sanctions, as an example of Raleigh committing perjury. However, a review of those requests indicates that it is actually quite different from what Plaintiff suggests. Requests 10 and 11 do not require Raleigh to identify any external hard drives. Rather,

the requests referred to "electronic and electronic storage locker" and "any cloud based storage system" to which Raleigh may have subscribed. Nevertheless, Raleigh objected to these requests and stated that he would provide these devices upon entry of a Protective Order.

As this Court is well aware, the parties eventually agreed to a Protective Order in this case. That Protective Order was entered on ***October 27, 2014***. [Doc. No. 47]. ***The Order was prepared by Malibu Media's attorneys, reviewed by Raleigh's attorneys, and mutually agreed upon by the parties***. Significantly, the Order specifically lists the devices requested by Malibu Media, and is *limited* to the following devices:

(a) Two Apple Mac Book Pros;

(b) An original iPad; and

(c) An iPad 2.

Notably absent from this is any request for an external hard drive, ***even though one had been disclosed to Plaintiff's counsel well before the Protective Order had been entered.***

In other words, even though he drafted the Protective Order, sent it to Raleigh's counsel for review, accepted the changes requested by Raleigh's counsel, and submitted the Protective Order for entry with the Court, Malibu Media's attorney ***limited himself*** to the production of the four devices listed above. Malibu Media's attorney is being completely disingenuous and, more specifically, misrepresenting to this Court what Raleigh was required to identify and/or produce during discovery in this case. Malibu Media's own attorney identified four devices which he wanted to inspect and Raleigh produced those devices. For Malibu Media's attorney to now come into this

Court and suggest that Raleigh is somehow lying, misrepresenting, or failing to produce certain devices is ludicrous.

It should also be noted, even though Raleigh identified the external hard drive in his Supplemental Answers to Malibu Media's discovery requests on October 2, 2014, Plaintiff's counsel apparently overlooked this disclosure and did not request the external hard drive. To facilitate discovery, Raleigh still forwarded the external hard drive to Malibu Media's expert, which kept the external hard drive for approximately 45 days before returning it to Raleigh. Despite having the external hard drive for 45 days, no one from Malibu Media analyzed the external hard drive.

In February of 2015, Malibu Media's attorney then contacted Raleigh's attorney and requested to examine the external hard drive, even though he had the external hard drive for approximately 45 days. Even though Raleigh's attorneys were under no obligation to allow inspection of this external hard drive, they consented and requested that Raleigh send the external hard drive to Malibu Media's experts. As this Court is well aware from Defendant's Motion for Summary Judgment, Malibu Media's expert witness, Patrick Page, examined the external hard drive and ***found no evidence of Malibu Media's pornography anywhere on the external hard drive.***

In addition, Malibu Media attempts to mislead this Court further, on page 5 of the Motion for Sanctions, by pointing out to the Court that Raleigh has *two external hard drives*. Plaintiff, however, was aware of both external hard drives, because Plaintiff's counsel himself caused Raleigh to have to purchase one of the external hard drives for the reasons that follow. (See **Exhibit B** to Doc. No. 80 – emails between Plaintiff's counsel and Defendant's counsel). After entry of the Protective Order, which was almost two months after the hearing on Plaintiff's Motion to Compel, Malibu

Media's attorneys still had not requested that Raleigh forward the hard drives to its experts, or the manner in which this would be accomplished. Raleigh's attorneys continuously pressed Malibu Media's attorneys to let them know how, and in what way, the devices should be sent to Malibu Media's experts. When Raleigh's attorneys did not receive a response, they instructed Raleigh to follow the very first instructions which were given by Malibu Media's attorneys, that is, to make a copy of the hard drives at issue and forward the copy to Malibu Media's experts. Raleigh did this, thus creating the "second" external hard drive at issue. (**Exhibit E** to Doc. No. 80).

Therefore, it is patently obvious that the second hard external hard drive does not contain any of Malibu Media's pornography. Moreover, and what is completely misleading by Plaintiff's counsel, ***it had possession of the "second" hard drive*** for approximately 45 days because Raleigh sent both external hard drives to Malibu Media's experts. However, what could only be described as a case of "Abbott and Costelloitis," Malibu Media's experts failed to even look at the external hard drives. Rather, they simply returned them to Raleigh.

In February of 2015, when Malibu Media's attorney realized his error, he requested that only one of the external hard drives be sent to his experts for review, the Western Digital "Time Machine" back up hard drive referenced above. Malibu Media's attorney chose not to examine the second hard drive because he knew that such an examination would be futile because the hard drive was only used to image Raleigh's laptop. It is simply outrageous for Malibu Media's attorneys to now come into Court and claim that Raleigh has lied in his discovery responses when he created this mess by not minding his files. Malibu Media's attorneys have liabled Raleigh's good name for the sake of trying to protect their client.

Additionally, Malibu Media claims that Raleigh failed to produce the contents of his "PlayStation 3," a video game console owned by Raleigh. Again, Raleigh refers this Court to the Protective Order, prepared by Plaintiff's counsel and entered with this Court by Plaintiff's counsel. That Order specifically delineates which devices were to be produced. Even though Plaintiff's counsel was well aware of Raleigh's PlayStation 3 at the time he prepared the Order, he did not include it as one of the devices to be reviewed. It is, again, misleading and deceptive to claim that Raleigh failed to produce something he was not obligated to produce.

### D. Raleigh Spoiled No Evidence In This Case, Which Plaintiff Knows.

Malibu Media's attorneys claim that, in regard to the Western Digital external hard drive, which Raleigh used as a "time machine backup," "all data prior to December 17, 2013, was permanently deleted." This is exactly what happens with a time machine backup once it is filled – it deletes the earliest data which had been stored on that device. The Court should note that Plaintiff does not are that information, between two points in time (for example, the point in time in which Malibu Media's smut was downloaded) was deleted. Rather, Malibu Media's allegation is clear: All data prior to a certain time was deleted. This is entirely consistent with the function of a time machine backup.

## LEGAL ARGUMENT

Because Plaintiff's claims for sanctions is entirely factual, Defendant will refrain from regurgitating the same statutes, Court Rules, and case law relied on by Plaintiff's counsel. The simple fact of the matter is that the only sanctions warranted here are against Plaintiff, and Plaintiff's counsel, for their consistent misrepresentation of the

record in this case.

Moreover, sanctions are warranted against Plaintiff and Plaintiff's counsel, ***because they caused the events complained about in their Motion. For example, Plaintiff claims that Raleigh did not produce all of the devices in his possession.*** However, Plaintiff's counsel himself prepared the Protective Order, which all parties agreed would govern the production of devices in this case. Plaintiff's counsel, with that Protective Order, only requested that four devices be produced.

In addition, the Court should, again, take note of the fact that Plaintiff's counsel has also accused Raleigh, throughout its Motion for Sanctions, of "illegally" downloading certain material. Claiming that someone is doing something "illegally" is a very strong accusation, with not just civil, but criminal, implications as well. It is not something which should be thrown around lightly in a civil case for copyright infringement in which an analysis of ***four devices*** has led to the conclusion that the Defendant did not illegally possess any of the Plaintiff's copyrighted materials.

Nonetheless, without reference to any statute, regulation, case law, or constitutional authority, Plaintiff's counsel has consistently accused Raleigh of "illegal" activity. This has been a consistent pattern and practice of Plaintiff's counsel throughout this case. For example, Plaintiff's counsel accused Raleigh of providing "boiler plate" responses to his Interrogatories when, in fact, a review of those Interrogatories (attached as ***Exhibit A*** to Plaintiff's Motion) indicates that, while Raleigh placed appropriate objections to most of the Interrogatories, nonetheless, provided significant and detailed information after making those objections. (In fact, Raleigh provided a hand drawn sketch of the apartment in which he lived at the time to satisfy Plaintiff's request for a layout of that apartment, hardly a "boiler plate"

response).

The truth of the matter is that Plaintiff's counsel's own missteps, in failing to read Raleigh's Interrogatory and Request to Produce Answers with any detail, failed to follow up on the Supplemental Answers required by Raleigh, and by limiting production of information from Raleigh to four devices in his Protective Order, has simply dropped the ball in monitoring and overseeing this case. Despite this, even if Plaintiff's counsel had been more diligent in following through on discovery issue in this case, it still would have led to the same result – Raleigh does not possess any of Malibu Media's pornography and never has.

In closing, it is Malibu Media, and Malibu Media's attorneys, who should be sanctioned for their flagrant abuse of both the discovery process and the judicial system in this case. Malibu Media's case against Raleigh is only one of thousands of cases that are filed across the country against what are initially "John Doe" Defendants in an attempt to shake them down for money under the threat of exposing them as individuals who look at pornography on the internet. However, Malibu Media chose to tango the wrong Defendant when they persisted in their case against Raleigh. Raleigh has been forced to spend thousands of dollars, and devote countless hours, to defending himself against this despicable shakedown artist. The Court has an opportunity to put a stop to this. Raleigh's Motion for Summary Judgment is currently pending and should end this case. This Court should also deny Malibu Media's frivolous Motion for Sanctions against Raleigh and, in turn, order that sanctions be imposed against both Malibu Media and its attorneys for (a) accusing Raleigh of "illegal" activity without citation to any statute, regulation, case law, or constitutional section; (b) misrepresenting the record against Raleigh, in particular, the fact that Raleigh disclosed all of the storage

devices at issue, yet Malibu Media's counsel only requested that four of them be produced; and (c) smearing Raleigh's good name in an open Court pleading.

## CONCLUSION

For the foregoing reasons, Defendant, Jesse Raleigh, respectfully requests that this Court enter an Order Denying Plaintiff's Motion for Sanctions and awarding sanctions against both Malibu Media and its attorney.

Respectfully submitted,

**BLANCO WILCZYNSKI, P.L.L.C.**

/s/Derek S. Wilczynski
DEREK S. WILCZYNSKI [P-57079]
Attorneys for Defendant
LINCOLN G. HERWEYER [P-55742]
Co-Counsel for Defendant

Dated: May 8, 2015

***PROOF OF SERVICE***

The undersigned certifies that a copy of the foregoing document was served upon all counsel at their above-captioned addresses on the 8th day of May***, 2015*** via:

_____ U.S. Mail _____ Express Delivery
_____ Facsimile _____ Hand Delivery
_____ Email ■ Other ***ECF***

and declares under penalty of perjury that this statement is true to the best of her information, knowledge and belief.

/s/Freda A. Noble
***FREDA A. NOBLE***

*s:\cases - opened\internet trolling cases\raleigh, jesse\pleading\plf's mtion for sanctions\050715 def's response to plf's mot for sanctions.dsw.fan.docx*