## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT MICHIGAN

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Case No. 1:13-CV-360-RJJ |
| | ) | |
| v. | ) | |
| | ) | |
| JESSE RALEIGH, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT

### I.  INTRODUCTION

Defendant perjuriously denied owning and using a server.  His own pictures and tweets prove the falsity of this testimony.  Defendant also perjuriously denied owning an all-in-one computer.  Again, Defendant's own pictures prove the falsity of this testimony.  At first, Defendant perjuriously testified that he only had two MacBooks.  After Defendant's wife admitted owning a third MacBook; Defendant recanted part of his perjury by admitting the third laptop exists.  However, Defendant continues to perjuriously testify that the MacBook was not in use during the period of infringement.  Again, Defendant's own pictures prove his testimony is false.  Defendant also proffered perjurious testimony about the extent of his BitTorrent use.  And, again, his own computers prove his testimony is materially false.  So too does the evidence establishing that third party works matching his and his family's interests and hobbies.  The correlation is so exact that coincidence is impossible.  Significantly, the files which the evidence proves were downloaded were not turned over.  Defendant's computers are the most important pieces of evidence.

Someone using Defendant's IP address infringed six (6) of Plaintiff's copyrighted movies on five (5) different days in February of 2013.  CM/ECF 10-1.  Plaintiff's investigator recorded forty-nine (49) infringing transactions.   Additionally, Plaintiff's investigator recorded Defendant's IP address distributing three hundred thirty-five (335) third party works via BitTorrent over the nine (9) month period between and including July 23, 2012 and March 22, 2013.  As Defendant knows, Plaintiff alleged this infringement and BitTorrent use occurred using his computers.  To avoid handing over the smoking gun, Defendant has engaged in a pattern of suppressing and lying about the most critical evidence in the case.

Enough is enough.  Defendant is making a mockery of the judicial system.  He is indisputably perpetuating a fraud on the Court.  Terminating sanctions are needed.

## II.   FACTS[1]

### A. Defendant Intentionally Failed to Produce Relevant Computer Devices and Committed Perjury

#### 1.   Defendant Swore He Did Not Have A Server

Defendant's discovery response states: he "does not possess [] any [server] devices responsive to this request."  *See* Defendant's Responses to Plaintiff's Second Set of Request for Production.  When asked at his deposition, "[d]id you have any servers?" he testified "[n]o."  *See* Defendant's Dep. 30:24–25; 31:1.  And, again: "Q: No servers? A: No."  *Id.* at 41:23–24. Defendant lied under oath.

#### 2.   Defendant Has A Picture Of His Server And He Tweets About It

Defendant's DropBox contains a picture created in November of 2013 of the drives he uses.  Significantly, there is a one terabyte hard drive labelled "server backup."

---

[1] The following recitation of facts is derived from Plaintiff's expert, Patrick Paige's, report, attached hereto as Exhibit A.



Undisclosed
and
unidentified
"Server"

On December 27, 2014, Defendant tweeted that he was "looking at the timestamps of some files

on an old server of [his]."



Admission
that server is
Defendant's

Defendant testified he was working at Silversmith, Inc. in 2013.   Defendant's Dep.

44:16–19.   When asked about Silversmith's servers, Defendant stated they were all between 50

and 100 GB in size, which is one tenth of the size of the pictured server.    Defendant's Dep.

45:17–25.   Based hereon, Mr. Paige concludes "Defendant has a server and did not identify or

produce it.   Further, Defendant's testimony was materially and intentionally untruthful."   Paige

Report at ¶ 15.

### 3.   Defendant Swore He Did Not Have A Third MacBook Or Tablet

In response to Plaintiff's Interrogatory No. 4 seeking disclosure of all computer devices,

Defendant only listed two MacBook Laptops and two tablets (iPads).   Doubling down on

perjury, at his deposition, Defendant testified that in 2013 he only owned two MacBook Laptops and two iPads.  Defendant Dep. 26:10–13; 26:16–18; 27:20–21; 28:1–6.

### 4. Defendant Has A Picture Of His Third MacBook And Tablet And His Wife Admitted Their Existence

Defendant's DropBox contains a picture of **three** MacBook Laptops and **three** tablets. The picture file[2] was created in June of 2013.



The third MacBook and third tablet were not disclosed in discovery and never produced. At Mrs. Raleigh's deposition, attended by Defendant, Mrs. Raleigh first mentioned the third MacBook Laptop.  Mrs. Raleigh's Dep. 33:15–21.  Defendant later admitted they owned a third MacBook Laptop, but denied it existed in 2013.  Defendant's Dep. 26:10–23.  Plaintiff's discovery was served on Defendant on October 25, 2013.  Defendant produced his hard drives on December 3, 2014, March 6, 2015, August 25, 2015 and August 27, 2015.  Defendant never supplemented his response to include a third MacBook Laptop nor did he produce documents proving the purchase date of the third MacBook Laptop.

Defendant claims that "numerous people throughout the years" brought and used their own laptops in Defendant's home.  However, Defendant and his wife both refused to identify *any* specific person who did so.  *See* Defendant's Dep. 48:12–20; Mrs. Raleigh's Dep. 38:5–12.

---

[2] Note: This image was cropped to protect the identities of the children in the image.

The above picture does not show any guests. The MacBook appears to be identical to the other MacBooks favored by Defendant. Based on all of the evidence, Mr. Paige opined "it is likely that the MacBook in the photo belonged to Defendant, was in use during the period of recorded infringement, and was likely intentionally suppressed." Paige Report at ¶ 23.

### 5. Defendant Swore He Did Not Have An All-In-One Computer

At his deposition, Defendant testified that in 2013 he did not own any other desktops or computer devices aside from those disclosed and produced in discovery. He also specifically denied owning an "all-in-one" computer, which he would "classify as a desktop." Defendant's Dep. 31:12.

> Q: No all-in-one computers?
> A: No…

Defendant's Dep. 31:14–15

> Q: Okay. One of those things that looks like a monitor in my mind that -- do you know what I'm talking about?
> A: Yeah…

Defendant's Dep. 32:19–21.

> Q: Do you ever recall while you were living in that quadruplex anybody bringing over additional desktop computers?
> A: Desktop computers, no.

Defendant's Dep. 48:7–10.

### 6. Defendant Has A Picture Of His All-In-One Computer

Defendant's DropBox contains a picture of an AOC "All-In-One" PC. The picture, titled "Working at Home," was created in November of 2012.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]



Defendant's Vizio Television

Defendant's All-In-One Computer

This AOC "All-In-One" was not disclosed in discovery and never produced.

### 7.   Defendant Swore He Did Not Have Additional Cloud Storage Devices

Defendant testified that aside from his DropBox and iCloud accounts, he did not have any other cloud storage devices.  Defendant's Dep. 58:10–19.

### 8.   Defendant Has Numerous Undisclosed Cloud Storage Devices

Patrick Paige located numerous Google Drive account URLs ("Uniform Resource Locators" also known as web addresses) on Defendant's laptops.  Defendant did not ever disclose or produce the contents of his Google Drive account.

On Defendant's MacBook Laptop No. 1, Patrick Paige discovered the existence of folders which contained additional storage locations within Defendant's home network. Specifically, he located a folder titled "PSF" from which Defendant consistently accessed files. This storage location was not disclosed in discovery nor its contents produced.  Based on all of the foregoing, Mr. Paige concluded "Defendant intentionally failed to identify and produce all of

his computer devices.  Malibu's works could be on any of the suppressed devices."  Paige Report at ¶ 31.

### B. Defendant Uses BitTorrent And Committed Perjury Regarding The Extent Of His BitTorrent Use

In response to Plaintiff's Interrogatory No. 20, Defendant swore he "does not download torrents that are not opensource software and legally distributed."  *See also* Defendant's Responses to numbers 14, 16, and 21 specifying only specific uses of BitTorrent and excluding music, movies, and others files.  Computer records on Defendant's hard drives prove Defendant's responses are perjurious.  A search across all of Defendant's produced Hard Drives yields numerous files related to BitTorrent use.  First, the BitTorrent client "uTorrent" is installed on a Windows XP virtual machine on Defendant's Macbook Laptop No. 1.  Paige Decl., ¶ 34.  Computer records show that the uTorrent.exe file was first created on January 3, 2011.  *Id.* Within the Windows XP virtual machine, Mr. Paige located the uTorrent protocol LNK file on the start menu for the computer user "Jesse." *Id.* at ¶ 35.

Next, a search for the term "torrent" on Defendant's MacBook Laptop No. 1 yields numerous results, some of which are text files within the folder "Chinga_La_Migra_Dos."  This folder and its contents relate to a hacking event that took place in 2011.  The folder contains sensitive files released by hacker(s) containing individuals' personal information including social security numbers, driver's license numbers, account passwords, etc.  Further, on Defendant's MacBook Laptop No. 1, Mr. Paige located "NFO" files in connection with the movie file "Lost Highway 1997 720p BRRip x264 RmD (HDScene Release).mkv."  "An NFO file is basically pirated information which pertains to software or a program that is released and distributed by any organized group without the knowledge or permission of the creator or owner of the

software."[3]   The NFO files establish that the Lost Highway movie file was an unauthorized

pirated copy.  *Id.* at ¶¶ 36-38.

The BitTorrent client "uTorrent" was also installed on Defendant's MacBook Laptop No.

2.  Additionally, Defendant's MacBook Laptop No. 2 contains the following .torrent files:

- "cablegate-201011290900.7z.torrent"; – a torrent file related to the United States diplomatic cables leak, widely known as "Cablegate";
- "Chinga La Migra.torrent" – a torrent file related the publication of hundreds of Arizona law enforcement classified documents;
- "Chinga_La_Migra_Dos.torrent" – a torrent file related to the publication of hundreds of Arizona law enforcement classified documents;
- "MMM_Booz_Allen.torrent" – a torrent file related to the publication of ninety thousand military email addresses and passwords;
- "cablegate-201108300212.7z.torrent" – a torrent file related to the United States diplomatic cables leak, widely known as "Cablegate"

Defendant's MacBook Laptop No. 2 contains .torrent files for the following copyrighted works:

- "Zenith.Part.1.2011.720p.x264-VODO.torrent" – a torrent file located on the MacBook Laptop No. 2 for the copyrighted movie "Zenith."
- "THE METEORS - [ WWW.PunksAndSkins.COM ] - 13 ALBUMS.torrent" – a torrent file located on the MacBook Laptop No. 2.
- "Demented Are Go.torrent" – a torrent file located on the MacBook Laptop No. 2 of music by a British band;
- "American Survival Guide Magazine.torrent"

At his deposition, and after being notified that computer files prove Defendant used BitTorrent to

download copyrighted works, Defendant retreated from his prior perjurious statements by

testifying that he used BitTorrent to download open-source software, music by the band The

Meteors, and some old magazines.  In short, the specific files listed in Plaintiff's first Motion for

Sanctions.  However, Defendant's deposition testimony was *again* false.  Indeed, Mr. Paige

discovered *numerous* copyrighted music files in Defendant's DropBox which contain torrent

metadata:

- "05 The Rape Over.mp3"

---

[3] http://www.openthefile.net/extension/nfo (Last Accessed on September 30, 2015)

- "06 - I Got Bass.mp3"
- "06 - Walk this way.mp3" By Aerosmith
- "06 Drive Slow (ft. Paul Wall & Glc).mp3"
- "06 Hate that I love You (Feat. Ne-Yo).mp3"
- "06 Metal Hear.mp3"
- "06 Nothing's The Same.mp3"
- "06 Silver.mp3"
- "07 – Dude (Looks Like A Lady).mp3" By Aerosmith
- "07 – Girls Love Me feat. Rick Ross.mp3"
- "07 Bedstudy Parade & Funeral March.mp3"
- "07 Civilize The Universe.mp3"
- "07 Hell is High.mp3"
- "07 My Way Home (ft. Common).mp3" By Kanye West
- "07 Say it.mp3"
- "07 Sex Is Not The Enemy.mp3" By Garbage
- "07 What else is there.mp3"
- "08 – Blown feat T-Pain.mp3"
- "08 – Rag Doll.mp3" By Aerosmith
- "05 – Arab Money (Street Runnaz Remix) feat. Rick Ross, T-Pain, Akon & Lil Wayne 19884011e4a90.mp3"
- "06 – I Got Bass19883011e4a90.mp3"

*Id.* at ¶¶ 39-43.

Defendant's DropBox also contained files with torrent metadata:

- "Interactive Data Visualization for the Web14b0052a561.pdf"
- "JavaScript Programmers Reference13b0052a561.pdf"
- "Killer UX Design631e0052a561.pdf"
- "Learning iOS Programmingcc0052a561.pdf"
- "Professional Nodea30052a561.pdf"
- "Python for Kids63080052a561.pdf"
- "The Principles of Object – Oriented JavaScript63050052a561.pdf"

*Id.* at ¶ 44.

At the time Plaintiff's first Motion for Sanctions was filed, the contents of Defendant's DropBox had not been produced. Mr. Paige also located several BitTorrent website URLs pertaining to the websites "The Pirate Bay," "Kickass Torrents," and "Torrentazos." These websites are notorious indexers of copyrighted works. *Id.* at ¶¶ 39-45.

9

### C. The Creation of the Volume on Defendant's Western Digital Hard Drive Erased All Data Prior to December 17, 2013

Mr. Paige identified USB devices which were plugged into both of Defendant's MacBook Laptops. *Id.* at ¶ 46. He discovered that a Western Digital MyBook Essentials External Hard Drive ("Western Digital Hard Drive") serial number "574D415A4139303734343136" was initially not produced. *Id.* at ¶ 47. He then conducted a keyword search across both MacBook Laptops for the Western Digital Hard Drive's serial number - "574D415A4139303734343136." *Id.* at ¶ 48. The results of this search prove that the Western Digital Hard Drive was plugged into both the MacBook Laptop No. 1 and MacBook Laptop No. 2 numerous times between October 2011 and December 2014. *Id.* In other words, Defendant has been using the Western Digital Hard Drive in connection with his MacBook Laptops for the past five years. *Id.*

On March 6, 2015, Defendant produced his Western Digital Hard Drive. Mr. Paige discovered that it contained a FileVault2 encrypted volume. *Id.* at ¶ 49. Examination revealed that the drive was used as a "backup drive" through use of the software "Time Machine." *Id.* at ¶ 50. Time Machine is backup software which keeps all the backups stored until the disk (on which the backup is stored) becomes full. *Id.* at ¶ 51. Once the disk is full, the oldest backups are deleted. *Id.*

During his deposition, Defendant testified that his Western Digital Hard Drive "was purchased specifically to be a backup drive." And, that it "was only ever used for that purpose" Defendant's Dep. 77:12–14. However, the FileVault2 encrypted volume on the Western Digital was *created* on December 17, 2013. Notably, Defendant's responses to Plaintiff discovery were due on November 27, 2013. At that time, Defendant was required to produce his hard drives to Plaintiff. Creation of the FileVault2 encrypted volume *erased all data* that existed on the hard

10

drive prior to December 17, 2013.  *Id.* at ¶¶ 52-54.  And, its subsequent use caused all data to be unrecoverable.  *Id.*  Plaintiff's works could have been on the drive prior to creation of the FileVault2 encrypted volume.  *Id.* at ¶ 55.

### D. Defendant's Intentional Failure to Produce Relevant Devices and the Other Evidence Make it Likely That Defendant is the Infringer

In reviewing all the evidence in this case, Mr. Paige discovered significant correlations between Plaintiff's Additional Evidence on the one hand, and Defendant's hard drives, the deposition transcripts, and other public information about Defendant on the other hand.  The correlations, as further discussed below, are too substantial to be coincidental.  Indeed, they precisely match Defendant's interests and hobbies, along with those of his wife and children.

#### 1. Defendant's Interests in Survivalist and Military Media Correlates to the Additional Evidence

On Defendant's YouTube page [https://www.youtube.com/user/dravine], Defendant subscribed to the channels "The Modern Survivalist," "six pack shortcuts," and "sigma 3 survival school."  Defendant also produced in discovery a list of phone applications he possesses one of which is titled "SAS Survival Guide."  Defendant further testified that he possesses the book "The Ultimate Guide to U.S. Army Survival Skills, Tactics and Techniques" and that he may be in possession of the e-books "The Survival Handbook, Essential Skills for Outdoor Adventure" and "Kettlebell training for athletes develop explosive power and strength for martial arts."  Defendant's Dep. 90:13–25.

Defendant's survivalist and military interest correlates to the third party works Excipio logged someone using Defendant's IP address infringe along with Plaintiff's works.  Specifically, in addition to Plaintiff's copyrighted works, Defendant's IP address was logged downloading the following: "The Ultimate Guide to U.S. Army Survival Skills, Tactics, and

Techniques," "The Survival Handbook - Essential Skills for Outdoor Adventure," "Kettlebell Training for Athletes Develop Explosive Power and Strength for Martial Arts, F," and "The Pocket Outdoor Survival Guide - The Ultimate Guide for Short-Term Survival." Mr. Paige also located the torrent file "American Survival Guide Magazine.torrent" on Defendant's MacBook Laptop No. 2. However, Defendant did not produce a computer with these torrent and media files.

### 2. Defendant's Interests in PlayStation Games Correlates to the Additional Evidence

Plaintiff's Additional Evidence lists a PlayStation 3 game titled "Dead Space 3." Defendant owns a PlayStation 3. And, Defendant testified that he has played Dead Space 3. Defendant's Dep. 91: 9–11. Examination of Defendant's PlayStation 3 revealed that Defendant played the games "Resident Evil 5" and "Resident Evil 6" which Defendant also confirmed at his deposition. Defendant's Dep. 92:15–18. Plaintiff's Additional Evidence lists the game "Resident Evil 6 Full For PC + Crack" as downloaded on February 1, 2013. However, Defendant did not produce the torrented copy of Resident Evil 6 that his IP address was logged downloading and distributing.

### 3. Defendant's Interests in Obtaining Linux Software Through BitTorrent Correlates to the Additional Evidence

Defendant admits to using BitTorrent for linux purposes and to download ISO images. *See* Defendant's Response to Plaintiff's Interrogatory No. 14. Plaintiff's Additional Evidence lists "linuxmint-13-kde-dvd-64bit.iso" which is a linux related download. However, this was not found on any computer Defendant produced.

### 4. Defendant's Interests in Aqua Teen Hunger Force Correlates to the Additional Evidence

Defendant's Deviant Art website [http://dravine.deviantart.com/] states that his favorite cartoon character is "Shake" from the television show "Aqua Teen Hunger Force."  Defendant also testified that he watches "Aqua Teen Hunger Force."  Defendant's Dep. 91:12–14.  The television show "Aqua Teen Hunger Force" was repeatedly downloaded and distributed via BitTorrent by someone using Defendant's IP address:

| Date | Torrent File Name |
|------|-------------------|
| 09/07/2012 | [ www.TorrentDay.com ] - Aqua.Teen.Hunger.Force.S09E09.HDTV.x264-2HD |
| 08/28/2012 | Aqua.Teen.Hunger.Force.S09E10.Totem.Pole.480p.WEB-DL.AAC2.0.H264 |
| 08/07/2012 | [ www.TorrentDay.com ] - Aqua.Teen.Hunger.Force.S09E07.Fightan.Titan.HDTV.x264-FQM |
| 07/30/2012 | {www.scenetime.com}Aqua.Teen.Hunger.Force.S09E06.HDTV.XviD-AFG |
| 07/24/2012 | [ www.TorrentDay.com ] - Aqua.Teen.Hunger.Force.S09E05.The.Granite.Family.HDTV.x264-FQM |
| 07/23/2012 | Aqua.Teen.Hunger.Force.S09E04.Rocket.Horse.Jet.Chicken.HDTV.x264-FQM.mp4 |
| 07/23/2012 | [ www.TorrentDay.com ] - Aqua.Teen.Hunger.Force.S09E03.HDTV.XviD-AFG |
| 07/23/2012 | [ www.TorrentDay.com ] - Aqua.Teen.Hunger.Force.S09E01.HDTV.XviD-AFG |
| 07/23/2012 | [ www.TorrentDay.com ] - Aqua.Teen.Hunger.Force.S09E02.HDTV.XviD-AFG |

### 5. Defendant's Interests in Upcycling Clothing Correlates to the Additional Evidence

Defendant's personal website [http://www.jraleigh.com] states that Mrs. Raleigh has an interest in "up cycling clothing."   At her deposition, Mrs. Raleigh defined "up cycling" as "taking one piece of clothing or article and turning it into something else."  Mrs. Raleigh's Dep. 48:1–6.  She also confirmed that she upcycles clothing.  *Id.*  Plaintiff's Additional Evidence lists "1000 Ideas for Creative Reuse - Remake, Restyle, Recycle, Renew –Mantesh" which is "a cutting edge collection of the most inventive work being made with re-used, upcycled, and already existing materials."[4]  However, no computer was produced which has this .torrent file or its corresponding media file.

---

[4] http://www.amazon.com/1000-Ideas-Creative-Reuse-Restyle/dp/1592535402 (Last Accessed on October 2, 2015)

### 6. Defendant's Interests in Children's Movies Correlates to the Additional Evidence

Mr. and Mrs. Raleigh have two young boys. Mrs. Raleigh testified that no other children resided within their quadruplex during the period of recorded infringement. Mrs. Raleigh's Dep. 13:2–11; 13:14–25; 14:1–5. Plaintiff's Additional Evidence lists numerous media content specifically targeted at children. Below is a list of such content.

- "Finding Nemo (2003)";
- "Toy Story 3 (2010) [1080p]";
- "The Amazing Spiderman (2012) [1080p]";
- "The Avengers (2012) [1080p]";
- The Movie "Arthur Christmas";
- "Captain.America.2.Jaybob.DVDRip";
- "Dragon.Hunters.2008.720p.BluRay.DTS.x264-PIS [PublicHD]";
- "Sammy s Adventures 2 2012.French DVDRip XviD READNFO-ICE"; and
- "How to Train your Dragon (2010) [1080p] {5.1}"

Defendant failed to produce a computer with the .torrent or media files for any of these children's movies.

### 7. Defendant's Interests in Medical Diagnosis Media Correlates to the Additional Evidence

Defendant produced a list of software applications installed on his phone. One application is titled "Medical Encyclopedia." Plaintiff's Additional Evidence lists "Current Medical Diagnosis and Treatment 2013 (gnv64).pdf."

### 8. Defendant's Interests in Cooking Correlates to the Additional Evidence

Defendant also possesses phone applications entitled "How to Cook Everything" and "Betty Crocker." Defendant also tweeted that he intended on writing a "Family Cookbook with all the recipes [he] [loves]":



**Jesse Raleigh** @dravine · Jan 3
But today, I'm using it differently, decided to start a new project this year and write a Family Cookbook with all the recipes I love :)

This matches Plaintiff's Additional Evidence which lists "Mastering the Art of French Cooking.pdf" and "631_Mackenzies_Ten_Thousand_Receipts."

### 9. Defendant Did Not Turn Over the Computers on Which These Impossibly Coincidental BitTorrent Files Are Stored

The possibility that these correlations are the coincidental BitTorrent infringements of a neighbor with the exact same interests as Defendant who happened to use Defendant's Internet is near absolute zero. Since Plaintiff's Additional Evidence correlates to Defendant and his family's interests, hobbies, and activities, Mr. Paige would have expected to find torrent files correlating to the Additional Evidence on at least one of the computers or data storage devices that Defendant produced. No such evidence was located. Consequently, this bolsters Mr. Paige's conclusion that Defendant has failed to identify and produce all of the computer and data storage devices in his home. Further, that the suppressed devices contain files downloaded and distributed via BitTorrent, like Plaintiff's movies.

## III.   ARGUMENT

This case involves three types of malfeasance: (1) perjury, (2) suppression of evidence, and (3) spoliation of evidence. This Court may impose different sanctions for such misconduct including: an award of attorneys' fees or costs, fines, mandatory or permissive adverse inferences, contempt, or terminating sanctions. When—as here—a defendant egregiously abuses the legal process, terminating sanctions are the most appropriate.

### A. Sanctions are Warranted for Defendant's Perjury

Severe sanctions are warranted because Defendant blatantly lied about the extent and nature of his BitTorrent use and the number of computer devices he has or had in his home. This Court has the inherent authority to sanction a party for perjury. Indeed, the Supreme Court held "[f]alse testimony in a formal proceeding is intolerable," and courts "must neither reward nor condone such a 'flagrant affront' to the truth-seeking function of adversary proceedings." *ABF Freight Sys., Inc. v. N.L.R.B.,* 510 U.S. 317, 323, 114 S.Ct. 835, 127 L.Ed.2d 152 (1994) (citation omitted). "'A primary aspect of [the federal court's inherent authority] is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Lee v. Sass*, 2006 WL 799176, at *1 (E.D. Mich. 2006) (sanctioning a party for suborning perjury); *see also Vaughan v. Brigham*, 2011 WL 2633369, at *5 (E.D. Ky. July 5, 2011) (sanctioning perjury); *Nichols v. Klein Tools, Inc.*, 949 F.2d 1047, 1049 (8th Cir. 1991) (sanctioning perjury). "[I]nherent power sanctions require[] a finding of bad faith." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002). Not "a mere mistake." *Wolfe v. GC Servs. Ltd. P'ship-Delaware*, 2009 WL 230637, at *7 (E.D. Mich. 2009).

Here, Defendant perjured himself in not *one*, not *two*, not *three*, but <u>*four*</u> separate interrogatories. *See* p. 6 *supra*. He also intentionally perjured himself by testifying he: (a) had no servers, (b) did not own an all-in-one computer, (c) had no cloud storage devices aside from his DropBox and iCloud accounts, and (d) only used BitTorrent for limited purposes. Defendant's perjury was no mistake. As more fully discussed below, when—as here—a defendant purposefully abuses the judicial process, terminating sanctions are appropriate. *See* pages 19-21, *infra*.

**B. Sanctions are Warranted for Defendant's Suppression of Evidence**

1. Mandatory Sanctions are Warranted Under Rule 26(g).

Under Fed. R. Civ. P. 26(g)(1)(B)(i)-(ii), by signing discovery responses, the party certifies the response is "complete" and does not "cause unnecessary delay." If this rule is violated "without substantial justification, the court . . . _must_ impose an appropriate sanction[.]" Fed. R. Civ. P. 26(g)(3). Here, Defendant's vague non-answers prevented Plaintiff from obtaining material evidence and subsequently required prolonging discovery so that Plaintiff could further prove Defendant's malfeasance. *See* Order, CM/ECF 86, p. 3 ("And the Court now finds itself after the Magistrate Judge's denial of extended discovery with both a dispositive motion and a substantive sanctions motion that *cannot be fairly resolved without re-opening discovery* to permit both sides to exhaust the new leads and respond to the charges leveled by each side against the other.") *See also* Plaintiff's Motion to Compel, CM/ECF 88, p.1 ("to date, not all have been produced. Further, examination . . . revealed the existence of several *other* relevant devices . . . none of these have been produced. Now Defendant incorrectly claims that the devices at issue were never requested . . .") (Motion subsequently resolved between the parties). Accordingly, sanctions under Rule 26(g) *must* be imposed. *See U.S. ex rel. Scott v. Metro. Health Corp.*, 2005 WL 2405961, at *11 (W.D. Mich. 2005) (sanctioning party for non-disclosure).

2. Sanctions Are Warranted Under Rule 26(e) and Rule 37.

"Compliance with Rule 37 includes complete and timely supplementation of disclosures and responses in accordance with Rule 26(e)." *In re Telxon Corp. Sec. Litig.*, 2004 WL 3192729, at *19 (N.D. Ohio 2004). Rule 26(e) requires a party to "supplement or correct" a response to "an interrogatory, [or] request for production[.]" Rule 37(c)(1) provides: "If a party

17

fails to provide information . . . as required by Rule 26(a) or (e), . . . the court . . . may impose . . . sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)."[5]   Here, there is no question Defendant repeatedly failed to "supplement or correct" his perjurious interrogatory and production responses.   Indeed, to date Defendant has still not amended, for example, his interrogatory responses to identify his third MacBook, third tablet, or AOC all-in-one computer. Neither has he amended his responses to Plaintiff's interrogatories to correct the extent of his BitTorrent use.   The sheer volume of non-disclosures and production belies any claim these were simple mistakes.  *See* pages 2-6, *supra*.

### C.  <u>Sanctions Are Warranted For Defendant's Spoliation</u>

#### 1.  <u>Defendant Spoiled Evidence</u>

Defendant purposefully deleted the contents of his WD Hard Drive.  Spoliation sanctions are merited when: "First, the party with control over the evidence . . . had an obligation to preserve it at the time it was destroyed. Second, the accused party . . . destroyed the evidence with a culpable state of mind.  And third, the destroyed evidence [is] relevant to the other side's claim or defense."  *Byrd v. Alpha Alliance Ins. Corp.*, 518 F. App'x 380, 383-84 (6th Cir. 2013). Here, all three factors are met.

#### (a)  <u>Defendant Controlled the Evidence and Had a Duty to Preserve It.</u>

First, it is undisputed that Defendant controlled the hard drive.  Second, "it is beyond question that a party to civil litigation has a duty to preserve relevant information, including ESI, when that party has notice that the evidence is relevant to litigation[.]" *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008).  Here, Plaintiff filed its lawsuit on April 1, 2013 [CM/ECF 1] and

---

[5] Sanctions under Rule 37(b)(2)(A)(i)-(vi) may include:  (i) directing . . . facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party[.]"

served Defendant on July 21, 2013 [CM/ECF 15].  It is irrefutable that as of July 21, 2013 *at the latest*, Defendant had a duty to preserve relevant evidence.

(b) <u>Defendant Destroyed the Evidence with a Culpable State of Mind</u>

The Sixth Circuit explains this element "may be satisfied by showing *only* that 'the evidence was destroyed "knowingly, even if without intent to breach a duty to preserve it, or negligently." *E.E.O.C. v. JP Morgan Chase Bank, N.A.*, 295 F.R.D. 166, 175 (S.D. Ohio 2013) (quoting *Beaven*, 622 F.3d 540, 553 (6th Cir. 2010)).  "In sum, 'a court need not find bad faith or intentional misconduct before sanctioning a spoliator.'" *Chrysler Realty Co., LLC v. Design Forum Architects, Inc.*, 2009 WL 5217992, at *4 (E.D. Mich. 2009) (citation omitted).

Here, computer data conclusively establishes:  (1) Defendant's MacBooks' logs show that the Western Digital hard drive was connected to one or the other of them between 2011 and 2014 (Paige Decl., ¶ 48); (2) the Western Digital hard drive was used during the *same time* Plaintiff's copyrighted works were infringed; (3) all data created prior to December 17, 2013 was deleted from the drive; and (4) only Defendant possessed the drive.  Logic compels the conclusion: Defendant erased the drive around December 17, 2013—two weeks *after* his initial discovery was due.  The period of recorded infringement preceded December 17, 2013.  Plaintiff's works could have been on this drive.  Defendant claims he "is sophisticated enough that, had he wanted to engage in the downloading or uploading of copyrighted material, he could have done so without leaving footprints…" [CM/ECF 29, p. 5].  Defendant is wrong.  His spoliation is obvious.  Nevertheless, his assertion evinces his intent.

(c) <u>The Evidence was Relevant</u>

The contents of a computer hard drive are *extremely* relevant to a copyright case involving movies illegally downloaded online.  Indeed, your Honor correctly recognized that

"[f]orensic analysis of computer materials is … critical to the development of the case[.]" *See* CM/ECF86, P. 1; *See, e.g.*, *Capitol Records, Inc. v. Alaujan*, No. 03-cv-11661, 2009 WL 1292977, *1 (D. Mass. May 6, 2009) ("[T]he computer itself is at the heart of the litigation … it is, in effect, an instrumentality of the alleged copyright infringement – it is plainly relevant under Fed. R. Civ. P. 26(b)."); *Arista Records, L.L.C. v. Tschirhart*, 241 F.R.D. 462, 465 (W.D. Tex. 2006) ("The best proof of whether [defendant infringed] would be to examine her hard drive which would show, among other things, the existence of any P2P file-sharing programs and the presence of plaintiffs' copyrighted sound recordings."); *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 111 (E.D. Pa. 2005) (concluding that "the computer's memory was relevant to the litigation" in a similar peer-to-peer copyright infringement case). *See also MPCA King of Spades v. TEC 2 Broadcasting, Inc.*, No. 1:11-cv-00080, 2012 WL 1203372 (W.D. Va. April 10, 2012) ("The plaintiff requests to enter the defendants' premises to make a complete forensic copy of any computer hard drive or electronic storage medium used by the defendants…. While the examination the plaintiffs seek is extraordinary, it is important to remember that the information sought to be recovered—what songs have been played and when—is at the heart of this litigation.").

### 2. At Minimum, Plaintiff is Entitled to An Adverse Inference.

A "federal court's inherent powers include broad discretion to craft proper sanctions for spoliated evidence." *Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir. 2009). In the Sixth Circuit, the severity of a sanction increases along with the severity of a party's fault. *Id.* at 652–53. "[A]n adverse inference for evidence spoliation is appropriate if the Defendants 'knew the evidence was relevant to some issue at trial and ... [his culpable] conduct resulted in its loss or destruction.'" *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (citation

omitted).   "'The sanction [of an adverse inference] should be available even for [ ] negligent destruction[.]"   *Id.* at 555. (citation omitted).   Defendant almost certainly spoiled evidence on purpose; however, *at minimum*, Defendant did so negligently.   Accordingly, Plaintiff is entitled to an adverse inference.   However, as explained more fully below, terminating sanctions are more appropriate.

### D.   Here, Default is Proper For Defendant's Perjury, Suppression, and Spoliation

The factors the Sixth Circuit considers when issuing a default under Fed. R. Civ. P. 37 or under the Court's inherent authority for perjury or spoliation are "largely the same." *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1094, at n.1 (6th Cir. 1994).   "(1) [W]hether the party's failure . . . is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced. . . ; (3) whether the [defaulted] party was warned . . . ; and (4) whether less dramatic sanctions were imposed or considered[.]"   *Stamtec, Inc. v. Anson*, 195 F. App'x 473, 479 (6th Cir. 2006) (affirming default).   Here, the factors weigh heavily in favor of default.

First, willfulness "is any conscious or intentional" act, and fault is "gross negligence[.]"   *In re Connolly N. Am., LLC*, 376 B.R. 161, 183 (Bankr. E.D. Mich. 2007) (citation omitted). Here, Defendant's repeated perjury, suppression, and blatant spoliation prove his conduct was willful—this was not a single mistake.   However, *at minimum*, he was grossly negligent.   Either way, this factor is satisfied.

Second, Defendant's conduct severely prejudiced Plaintiff.   It goes without saying that there can be no more severe prejudice to a party than the loss of relevant information.   *See Beaven*, 622 F.3d at 555 (6th Cir. 2010) (spoliation "'severely compromised' the Plaintiffs' case by depriving the Plaintiffs of the most relevant piece of evidence to prove their claims.")   Indeed, "the prejudice to [plaintiff] is clear. [] Plaintiff's expert indicated that Malibu Media's

21

copyrighted content could have been among the files that were deleted . . . such that the deletion would naturally impair Plaintiff's ability to prove its underlying claim of illegal copying." *Malibu Media, LLC v. Tashiro*, No. 1:13-CV-00205-WTL, 2015 WL 2371597, at \*36 (S.D. Ind. May 18, 2015) (entering terminating sanctions against defendants who spoiled evidence, committed perjury, and suppressed computer devices) *report and recommendation adopted,* No. 1:13-CV-205-WTL-MJD, 2015 WL 3649359 (S.D. Ind. June 11, 2015). Further, "Plaintiff suffered extensive prejudice in bringing the instant motion and pursuing evidence that Defendants should have long ago disclosed." *Id.* Defendant's delayed production of his hard drives until *after* the discovery deadline and his continued suppression of other devices wasted significant resources and time, all to the prejudice of Plaintiff.

Third, while formal notice of default has not been given to Defendant, this factor is not dispositive. "[T]his factor seems less relevant in a case such as this, where the conduct at issue . . . [is] in contravention of basic notions of fairness and professional responsibility. A party does not need formal notice to know that spoliation of evidence and misrepresentations may lead to [default]." *Fharmacy Records v. Nassar*, 379 F. App'x 522, 527 (6th Cir. 2010). Regardless, Defendant knew of Plaintiff's intent to seek terminating sanctions at least as early as April 24, 2015 when Plaintiff's first Motion for Sanctions was filed. And, thereafter, Defendant *continued* perjuring himself and he is <u>*still*</u> suppressing evidence.

Last, Defendant's repeated discovery abuses and flagrant disregard for the judicial process demonstrate the futility of any lesser sanction. Regarding the Western Digital Hard Drive, the damage is done. Material evidence was permanently destroyed. And, Defendant's pattern of perjury, suppression, and spoliation makes clear he will not participate fairly or honestly in this litigation going forward. Under these circumstances a permissive adverse

inference would only encourage future would-be-spoliators and would give Defendant an opportunity to further commit perjury aimed at deceiving this Court or the jury.  Fairness and good policy demand Defendant be defaulted.  This point was elegantly stated in another *Malibu* case involving similar misconduct:

> [A] sanction short of default would not appropriately address the goals of deterrence and punishment.  An adverse inference, for instance, would help redress the prejudice that Plaintiff has suffered . . . [b]ut such a sanction would allow the case to continue to trial and would thus allow Defendants to press their case to this Court.  In light of their misconduct, Defendant[] should not be allowed to do so . . . Where, as here, a party instead makes a mockery of the judicial process, that party forfeits continued access to that process . . . Similarly, a monetary sanction would help redress the prejudice . . . and would help punish the offender[], but it would not adequately protect the judiciary.  Such a sanction would allow Defendants to continue to assert the protections of the judicial system against Plaintiff's claim despite Defendant['s] continued abuse of that very system.  Moreover, such a sanction would send a message that the Court is willing to accept perjury so long as parties are willing to write a check.  This the Court will not do . . . Finally, the Court notes that, even if default is a "draconian" sanction . . . courts have frequently determined that default is appropriate in cases in which parties have exhibited extensive patterns or repeated incidents of misconduct.

*Malibu Media, LLC v. Tashiro*, No. 1:13-CV-00205-WTL, 2015 WL 2371597, at *37 (S.D. Ind. May 18, 2015) *report and recommendation adopted,* No. 1:13-CV-205-WTL-MJD, 2015 WL 3649359 (S.D. Ind. June 11, 2015).  The same rationale applies here with equal force.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court enter a default judgment against Defendant for his misconduct, or any other such relief this Court deems just.

Dated:  November 25, 2015

Respectfully submitted,

LIPSCOMB, EISENBERG & BAKER, PL

By:    /s/ *Jessica Fernandez*
Jessica Fernandez, Esq.
Lipscomb, Eisenberg & Baker, PL
2 South Biscayne Blvd, Suite 3800
Miami, Florida 33131
Phone No. (786) 431-2228
Fax No. (786) 431-2228
Email Address: Jfernandez@lebfirm.com
*Attorneys for Plaintiff*

## GOOD FAITH CERTIFICATION

Plaintiff, by and through undersigned counsel, pursuant to Fed. R. Civ. P. 37(a)(1), hereby certifies that on November 25, 2015, undersigned conferred with defense counsel through e-mail in a good faith effort to resolve the issues raised in this motion and defense counsel advised that he would not consent to the relief requested herein.

By:    /s/ *Jessica Fernandez*

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:    /s/ *Jessica Fernandez*