# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF MICHIGAN

MALIBU MEDIA, LLC,      )
                               )
       Plaintiff,       )    Civil Action Case No.: 1:13-cv-00360-RJJ
*v.*                           )    HON. ROBERT J. JONKER
                               )    MAG. JUDGE: HUGH W. BRENNEMAN
JESSE RALEIGH,      )
                               )
       Defendant.     )
_____)

**NICOLETTI & ASSOCIATES, PLLC**
PAUL J. NICOLETTI [P-44419]
Attorney for Plaintiff
33717 Woodward Avenue, Ste. #433
Birmingham, MI 48009
Landline: (248) 203-7800
eFax: (248) 928-7051
pauljnicoletti@gmail.com
http://www.nicolettilawplc.com

**BLANCO WILCZYNSKI, PLLC**
Derek S. Wilczynski [P-57079]
Attorneys for Defendant
2095 East Big Beaver, Suite 400
Troy, MI 48083
(248)519-9000
Fax: (248) 519-9001
dsw@blancopc.com

**LINCOLN G. HERWEYER, P.C.**
LINCOLN G. HERWEYER [P-55742]
Co-Counsel for Defendant
35054 Twenty-Three Mile Road, Suite 115
New Baltimore, MI 48047
(586)716-1562
Fax: (586) 716-1867
lgherweyer@netscape.net

## DEFENDANT'S RESPONSE TO PLAINTIFF,
## MALIBU MEDIA'S, MOTION FOR SANCTIONS

NOW COMES, Defendant, Jesse Raleigh, by and through and his Attorneys, BLANCO WILCZYNSKI, PLLC, and as his Response to Plaintiff, Malibu Media's, Motion for Sanctions, states unto this Honorable Court as follows:

## INTRODUCTION

Plaintiff, Malibu Media, LLC ("Malibu Media"), has filed a Motion for Sanctions. Plaintiff's Motion should be denied because there is no basis in fact for any of Plaintiff's allegations. As the Court will see, Malibu Media has manufactured a Motion to Dismiss to cover up the fact that it has conducted multiple searches of the Defendant, Jesse Raleigh's ("Raleigh") digital devices and has found no evidence of wrongdoing on the part of Raleigh. Malibu Media has examined each and every electronic device it requested from Raleigh and its own expert prepare multiple reports concluding that that those devices did not have any of Malibu Media's pornography on them.

Second, each allegation of discovery abuse made by Malibu Media is baseless and was actually caused by Malibu Media itself. For example, the first allegation is that Raleigh failed to disclose that he had a server in his home. However, that allegation simply is not true and is something that Malibu Media had knowledge of when it took Raleigh's deposition. The server identified in the photograph attached by Malibu Media does not belong to Raleigh. It belongs to his employer. However, Malibu Media failed to ask Raleigh questions regarding that server or ask him questions about the "evidence" it now claims to establish that Raleigh did not have a server.

It is clear that Malibu Media has played discovery games because none of its copy written material was found on any of Raleigh's devices. Malibu Media knows that Raleigh will be asking for sanctions allowable under the United State Copyright Act and is trying to avoid those sanctions by smearing Raleigh's good name.

Third, the report generated by Patrick Paige does not meet the *Daubert* Test for foundation and/or reliability under FRE 701, 702, 703 and will be the subject of another Motion which Defendant anticipates will be filed before Christmas. However, at this

point, Patrick Paige's report should be given no weight by this Court because (a) it impermissibly draws conclusions on fact issues this Court is asked upon to decide; and (b) is not supported by the evidence in this case.

Finally, Raleigh's counsel has prepared, and Raleigh will sign, an Affidavit to rebut each of the allegations made by Malibu Media.[1]  Raleigh did not commit the discovery violations alleged by Malibu Media and sanctions are not applicable in this case.  However, because Malibu Media has abused the discovery process and has accused Raleigh of discovery violations which clearly do not exist, Malibu Media, an its attorneys, should be sanctioned by this Court.  During the course of this case, Malibu Media has consistently and systematically violated this Court's Orders, ignored the discovery which has been produced, failed to ask Raleigh questions at his deposition which would have clarified all of the "issues" it now raises in its Motion for Sanctions, and has done so for the purpose of avoiding sanctions because Raleigh did not download any of Malibu Media's copy written materials.

Even more disturbing, Malibu Media's motion refers to Raleigh's deposition as well as Raleigh's answers to Malibu Media's discovery.  Malibu Media, however, did not attach the deposition nor the discovery answers but, instead, is requiring this Court to take at face value the representations made in those documents.  This is particularly troubling for two reasons.  First, many of the "quotations" contain brackets indicating that words have either been altered or omitted.  Second, absent these attachments, both the Court, as well as the Defendant, cannot refer to these documents for their accuracy.  Raleigh has attached, as **Exhibit 1**, a copy of the emails sent to Plaintiff's counsel asking

---

[1] Due to the Thanksgiving holiday, and computer issues regarding the metadata for the photographs referenced in Malibu's Media's motion, Raleigh's Affidavit will have to be filed separately, after this Response. In the interim, Raleigh has attached an email prepared with his rebuttal to each of the "allegations" made by Malibu Media, as **Exhibit 2**.

for these documents to be produced. No response was received. Plaintiff has intentionally denied Defendant, as well as this Court, the source documents for the "quotations" at issue.

Finally, it is absolutely stunning how, despite the fact that it has the burden of proof, Malibu Media has failed to explain the terminology at issue, as well as the technological basis for its allegations. For example, there is no definition of BitTorrent in Malibu's Motion. In addition, Patrick Paige's report takes no steps to educate the Court as to the technological implications of the analysis he has conducted or the conclusions he has drawn. Also, Malibu Media has accused Raleigh, in section "B" of its motion of illegally downloading ("BitTorrenting") material without any reference to a case, statute, rule, or regulation establishing that what they have accused Raleigh of is, in fact, illegal. Rather, Malibu Media's attorneys have relied on their expert, Patrick Paige, to state, without attribution, that what Raleigh did was illegal (he calls it an "unauthorized pirated copy").

This is stunning because Malibu Media is using Patrick Paige to be the judge, jury, and executioner in this case. Malibu's lawyers have turned jurisprudence on its head by essentially deputizing Mr. Paige to make a determination as to Raleigh's "guilt." This is, unfortunately, akin to a police officer telling a jury that it believes that a criminal defendant is guilty. As this Court knows, it is a violation of the Rules of Evidence for a police officer to testify as to a defendant's guilt, and the same is true about Patrick Paige here.

Accordingly, Defendant, Jesse Raleigh, respectfully requests that this Court denies Malibu Media's Motion for Sanctions and, instead, enters an Order granting sanctions to Raleigh for having to respond to Malibu Media's frivolous Motion.

## REBUTTAL TO MALIBU MEDIA'S ALLEGED FACTS

### A. Defendant Did Not Intentionally Fail To Produce Relevant Computer Devices Or Commit Perjury.

### 1. Malibu Media Did Not Ask Raleigh If He Had A Server.

Raleigh responded to Malibu Media's discovery requests by stating "he does not possess any devices responsive to this request." See **Exhibit 3,** Raleigh's Responses to Plaintiff's Second Set of Requests for Production of Documents. This is true. Raleigh does not own or possess a server which would be responsive to this request. Malibu Media had possession of this discovery request, as well as the Drop Box picture identified on page 3 of its Motion for Sanctions at the time of Raleigh's deposition. However, despite having this information, Malibu Media's attorney did not ask Raleigh to explain the picture on page 3 of the Motion. As will be explained in the next section, the server identified on page 3 of Malibu Media's Motion does not belong to Raleigh.

### 2. The Server Identified Does Not Belong To Raleigh.

According to Raleigh, see **Exhibit 2,** email from Jesse Raleigh, the server in question is not his but, rather, belongs to Modustri, LLC, located at 38 Commerce Avenue, SE, Grand Rapids, Michigan. Metadata in the image EXIF tags shows it to have been taken at the GPS coordinates of Modustri's offices at 5:52 p.m. on November 8, 2013.

According to Raleigh, tweets referencing, "old log files" are referring to a file named logs.tar.bz2 which resided in the home directory of the "jr" user in the MacBook Pro imaged by Malibu Media. In other words, those logs were furnished for discovery.

### 3. Raleigh Does Not Have A "Third Macbook Or Tablet."

Raleigh does not have as third MacBook tablet. See the following section.

### 4.   Raleigh Does Not Have A Picture Of A Third Macbook Or Tablet.

According to Malibu Media, Raleigh's Dropbox contains a picture of three MacBook lap tops and three tablets.  Even though Malibu Media had the picture identified on page 4 at the time of Raleigh's deposition, Malibu Media's attorneys never questioned him about the MacBooks contained in the pictures.

Again, Raleigh refers to his email, attached as **Exhibit 2**.  The additional MacBook and tablets belong to guests who were present in the Raleigh household at the time the picture was taken.  Interestingly, even though Malibu Media claims that it "cropped" the picture to protect the identities of the children in the image, had Malibu Media not cropped the photograph, they would have learned that one of the children present in the picture owned the MacBook and/or tablet.  Raleigh has provided the relevant pictures, contained in **Exhibit 2,** to illustrate this.[2]

### 5.   Raleigh Swore He Did Not Have It All On One Computer.

See next section.  Raleigh does not have it all on one computer.

### 6.   The Picture In Question Is Not Of An All In One Computer.

Raleigh's Dropbox does not contain a picture of an AOC "all in one" PC.  Rather, the device pictured is a USB powered portable monitor, with a serial number of CZSB9HA000205.  See **Exhibit 2**.  Raleigh still possesses this device and would produce it if necessary.  However, it has not been requested.

### 7.   Raleigh Does Not Have Additional Cloud Storage Devices.

Raleigh does not have additional cloud storage devices.  See next section.

---

[2] Malibu Media and its attorneys attempt to smear Raleigh's name by referencing the fact that neither he nor his wife wanted to identify individuals who were guests at their house.  The fact that Malibu would continuously disregard the Protective Order entered in this case and potentially expose Raleigh's friends and family to Court filings is the very reason why they did not want to disclose the names of the individuals involved.  However, faced with a Motion for Sanctions, Malibu Media has put Raleigh in the position where he has no choice but to proceed accordingly.

**8.    Raleigh Does Not Have Numerous Undisclosed Cloud Storage Devices.**

Despite Malibu Media's allegations to the contrary, Raleigh does not have additional cloud storage devices.  Rather, clicking links to other individuals' shared files creates the history that is described in Malibu Media's expert witness' report.  This "share" existed wholly within Raleigh's MacBook #1 and did not represent a physical LAN or share but, rather, a "virtual machine."  The virtual machine was provided with RALIEGH's original Responses to Malibu Media's Discovery Requests.  (See, **Exhibit 2**).

**B.    Raleigh Did Not Commit Perjury Regarding The Extent Of His BitTorrent Use.**

Malibu Media claims that Raleigh uses BitTorrent and committed perjury regarding the extent of the BitTorrent use.  This is simply not true.  This  statement  is misleading at best and intentionally deceptive at worst.  By using the qualifier, "***he only***," Malibu Media makes it appear as though Raleigh absolutely limited his discovery response stating that he *exclusively* used BitTorrent to download Linux installation ISO images.

A closer look at the Interrogatory Response, attached as **Exhibit A** to Plaintiff's first Motion for Sanctions [D.E. 81] (and, for the sake of judicial economy, will not be reattached here), shows that Raleigh went beyond the scope of the Interrogatory being asked to indicate ***an example*** of *when* he uses BitTorrent to state *how* he uses BitTorrent.  The answer to the Interrogatory was not to state *exclusive* use of BitTorrent to download Linux installation ISO images but, rather, to indicate an instance of under what circumstances he uses them.  For Plaintiff to claim otherwise ignores the plain language of the Answer to the Interrogatory given by Raleigh and attempts to twist and

bend an example given by Raleigh for Plaintiff's own nefarious purpose, to libel Raleigh in open Court.

Additionally, Plaintiff claims that Raleigh committed perjury by swearing that he only legally purchased content despite having content on his devices which **_Plaintiff believes_** were illegally obtained.   However, as can be seen from The Affidavit signed by Raleigh as **Exhibit A** to Doc. No. 80, Raleigh did not illegally download any of that content.   Rather, this material was given to Raleigh on a thumb drive and was not illegally downloaded, or "BitTorrented", at any time by Raleigh.   Malibu Media is clearly making a leap of logic (claiming that Raleigh illegally downloaded something which was given to him) again, for the sole purpose of smearing Raleigh's name.

In addition, Raleigh would note that none of the allegations made by Malibu Media with regard to Raleigh's BitTorrent use is four files that are copy written by Malibu Media.   Moreover, it is worth noting that Defendant, Raleigh, has engaged in a career in information technology and uses his computer constantly for this purpose. The fact that there are random files and folders does not mean that Raleigh engaged in "illegal" bitTorrent.   Malibu Media's argument in this regard is severely lacking. Moreover, this exact argument was made in Malibu Media's previous Motion for Sanctions.    This argument is nothing more than an attempt to cast dispersions on Raleigh by smearing his name.

Further, this argument was also made by Plaintiff in its previous Motion for Sanctions. [D.E. 81] and responded to by Raleigh. [D.E. 84]. As Raleigh argued at that time, he did not commit perjury with regard to his BitTorrent use.   Moreover, this Court has already ruled that sanctions were not appropriate. [D.E. 86].

C. **Data Was Not Erased Raleigh's Western Digital Hard Drive Prior To December 17, 2013.**

Malibu Media claims that Raleigh erased data prior to December 17, 2013. This is simply incorrect. Raleigh has attached a screenshot from the provided drive showing files dating back to 2010. See **Exhibit 2**.

It is also worth noting that Malibu Media had this hard drive on two occasions and, due to its own incompetence (see D.E. 84), simply did not make an attempt to copy it when it first had the hard drive. Thus, Malibu Media is responsible for complicating this matter even further.

As this Court is well aware, the parties eventually agreed to a Protective Order in this case. That Protective Order was entered on ***October 27, 2014***. [Doc. No. 47]. ***The Order was prepared by Malibu Media's attorneys, reviewed by Raleigh's attorneys, and mutually agreed upon by the parties***. Significantly, the Order specifically lists the devices requested by Malibu Media, and is *limited* to the following devices:

(a) Two Apple Mac Book Pros;

(b) An original iPad; and

(c) An iPad 2.

Notably absent from this is any request for an external hard drive, ***even though one had been disclosed to Plaintiff's counsel well before the Protective Order had been entered.***

In other words, even though he drafted the Protective Order, sent it to Raleigh's counsel for review, accepted the changes requested by Raleigh's counsel, and submitted the Protective Order for entry with the Court, Malibu Media's attorney ***limited***

*himself* to the production of the four devices listed above. Malibu Media's attorney is being completely disingenuous and, more specifically, misrepresenting to this Court what Raleigh was required to identify and/or produce during discovery in this case. Malibu Media's own attorney identified four devices which he wanted to inspect and Raleigh produced those devices. For Malibu Media's attorney to now come into this Court and suggest that Raleigh is somehow lying, misrepresenting, or failing to produce certain devices is ludicrous.

It should also be noted, even though Raleigh identified the external hard drive in his Supplemental Answers to Malibu Media's discovery requests on October 2, 2014, Plaintiff's counsel apparently overlooked this disclosure and did not request the external hard drive. To facilitate discovery, Raleigh still forwarded the external hard drive to Malibu Media's expert, which kept the external hard drive for approximately 45 days before returning it to Raleigh. Despite having the external hard drive for 45 days, no one from Malibu Media analyzed the external hard drive.

In February of 2015, Malibu Media's attorney then contacted Raleigh's attorney and requested to examine the external hard drive, even though he had the external hard drive for approximately 45 days. Even though Raleigh's attorneys were under no obligation to allow inspection of this external hard drive, they consented and requested that Raleigh send the external hard drive to Malibu Media's experts. As this Court is well aware from Defendant's Motion for Summary Judgment, Malibu Media's expert witness, Patrick Page, examined the external hard drive and ***found no evidence of Malibu Media's pornography anywhere on the external hard drive.***

In addition, Malibu Media attempts to mislead this Court further, on page 5 of the Motion for Sanctions, by pointing out to the Court that Raleigh has *two external*

*hard drives*.   Plaintiff, however, was aware of both external hard drives, because Plaintiff's counsel himself caused Raleigh to have to purchase one of the external hard drives for the reasons that follow.   (See **Exhibit B** to Doc. No. 80 – emails between Plaintiff's counsel and Defendant's counsel).    After entry of the Protective Order, which was almost two months after the hearing on Plaintiff's Motion to Compel, Malibu Media's attorneys still had not requested that Raleigh forward the hard drives to its experts, or the manner in which this would be accomplished.   Raleigh's attorneys continuously pressed Malibu Media's attorneys to let them know how, and in what way, the devices should be sent to Malibu Media's experts.   When Raleigh's attorneys did not receive a response, they instructed Raleigh to follow the very first instructions which were given by Malibu Media's attorneys, that is, to make a copy of the hard drives at issue and forward the copy to Malibu Media's experts.   Raleigh did this, thus creating the "second" external hard drive at issue. (**Exhibit E** to Doc. No. 80).

Therefore, it is patently obvious that the second hard external hard drive does not contain any of Malibu Media's pornography.   Moreover, and what is completely misleading by Plaintiff's counsel, ***it had possession of the "second" hard drive*** for approximately 45 days because Raleigh sent both external hard drives to Malibu Media's experts.   However, what could only be described as a case of "Abbott and Costelloitis," Malibu Media's experts failed to even look at the external hard drives.   Rather, they simply returned them to Raleigh.

In February of 2015, when Malibu Media's attorney realized his error, he requested that only one of the external hard drives be sent to his experts for review, the Western Digital "Time Machine" back up hard drive referenced above.   Malibu Media's attorney chose not to examine the second hard drive because he knew that such an

examination would be futile because the hard drive was only used to image Raleigh's laptop.  It is simply outrageous for Malibu Media's attorneys to now come into Court and claim that Raleigh has lied in his discovery responses when he created this mess by not minding his files.  Malibu Media's attorneys have liabled Raleigh's good name for the sake of trying to protect their client.

Additionally, Malibu Media claims that Raleigh failed to produce the contents of his "PlayStation 3," a video game console owned by Raleigh.  Again, Raleigh refers this Court to the Protective Order, prepared by Plaintiff's counsel and entered with this Court by Plaintiff's counsel.  That Order specifically delineates which devices were to be produced.  Even though Plaintiff's counsel was well aware of Raleigh's PlayStation 3 at the time he prepared the Order, he did not include it as one of the devices to be reviewed.  It is, again, misleading and deceptive to claim that Raleigh failed to produce something he was not obligated to produce.

>  **D.    Raleigh Did Not Fail To Produce Relevant Evidence But, Rather, It Is Clear That Malibu Media Engaged In A Systematic Practice Of Attempting To Smear Raleigh's Name When It Realized That Raleigh Did Not Download Or Possess The Copy Written Material. (including subset 1-9)**

Malibu Media claims that Raleigh's "failure" to produce relevant evidence makes it likely that he is the "infringer."  This is simply not true.  First, such an allegation defies logic.  Malibu Media examined the following devices produced by Raleigh:

- Two laptops,

- Two iPads, and

- Western Digital Hard Drive.

None of these devices contained any copy written materials with the rights of which were held by Malibu Media.   Moreover, Malibu Media's search of Raleigh's devices did not even lead to the conclusion that Raleigh deleted any BitTorrented material, whether Malibu Media copy written material or other bitTorrented material. As indicated by Raleigh's Affidavit, had Raleigh deleted any copy written material, there would have been a trail on his devices which would have lead Malibu Media's expert to conclude that the material was on Raleigh's devices at some point.

Even more troubling is the report generated by Patrick Paige itself.  (**Exhibit 2** to Malibu's Motion).  Even without any technical knowledge or expertise, it is clear that Mr. Paige makes significant "leaps and logic" to conclude that it is more likely than not that Raleigh had downloaded the copy written material.  Even though there is no evidence whatsoever that Raleigh ever had the copy written material, let alone deleted it, Mr. Paige concludes, from what he perceives to be Raleigh's actions, that Raleigh must have downloaded the copy written material.  Mr. Paige's conclusions, however, are completely faulty.  They are similar to a police detective telling a suspect, "I know all of the forensic evidence shows you did not commit the crime.  But, however, since a crime was committed, you must have done it simply because I have no other suspects."

Malibu Media finds itself in a precarious position.  It has continuously prosecuted Raleigh in this case even though there has been *no evidence whatsoever* to connect him with the infringement of Malibu Media's copy written material.  Malibu Media has bumbled its way through several rounds of discovery, several generously granted extensions of time by this Court, and numerous Motions all to end up in a position where it simply does not have any evidence whatsoever with which to support its case. Moreover, as indicated above, the conclusions Malibu Media draws with regard to

Raleigh's testimony and Answers to written discovery are simply not supported by the fact and, moreover, anyone with basic IT skills could see that.

Second, Malibu Media has engaged in a deceptive practice of discovery designed to make it appear as though Raleigh is the infringer when, in fact, the actual evidence in this case does not support Malibu's position and, further, ***Malibu Media failed to ask Raleigh questions at his deposition regarding the subject of Malibu Media's Motion.*** For example, Malibu Media claims that Raleigh committed perjury with regard to having, or not having, a server. At the time it took Raleigh's deposition, Malibu Media had access to all of the data and information it had presented to the Court in this Motion. This included all of the data, and metadata, contained on Raleigh's devices, as well as access to his Dropbox account. Despite this, Malibu Media did not ask Raleigh one question regarding the picture identified on page 3 of its Motion. Had Malibu Media's attorneys done so, they would have learned that the server in question was not Raleigh's server but, rather, a server belonging to Raleigh's employer, which was easily verified by the time and location stamp on the picture itself. Clearly, the server in question is the property of Modustri, LLC, Raleigh's employer.

In addition, Malibu Media claims that Raleigh failed to disclose ownership of an additional laptop. Again, despite having access to this picture at the time of Raleigh's deposition, Malibu Media's attorneys did not ask Raleigh any questions regarding the picture. Based on the time and location stamp for this picture, as well as Raleigh's Affidavit, it is clear that there is a simple explanation for the number of laptops in the picture. While two laptops belonged to Raleigh (and were disclosed by Raleigh), the remaining laptop does not belong to Raleigh. Further, the children in the picture are a

good indicator that this picture was not taken with only Raleigh's property depicted in it but, rather, friends of Mr. and Mrs. Raleigh.

The most troubling aspect of Malibu Media's misrepresentations to this Court are that (a) they would have been easily avoided had Malibu Media's attorneys simply asked Raleigh questions about the pictures identified in its motion; and (b) it was clearly done in an attempt to "frame" Raleigh. At the time Malibu Media's attorneys took Raleigh's deposition, Patrick Paige had examined Raleigh's devices on multiple occasions and had prepared two reports concluding that the copy written material alleged to be infringed by Malibu Media was not on any of Raleigh's devices. Malibu Media's attorneys knew, from conversation with Raleigh's attorneys, that he would be seeking sanctions in the form of attorney fees pursuant to the United States Copy Right Act. Malibu Media's attorneys were clearly engaging in desperate attempts to avoid paying those attorney fees.

Had Malibu Media's attorneys simply litigated this case, Raleigh's attorneys would not have such strenuous objections or be asking for sanctions in this response. However, Malibu Media's attorneys have used and abused, the legal process in this case to make it appear as though, and accuse Raleigh of committing perjury and misrepresenting evidence to the Court when, in fact, it is Malibu Media's attorneys who are doing that. This is a serious violation of not only the Court system, but the public trust in general. Moreover, this appears to be the standard in practice of Malibu Media's attorneys throughout the country. A quick review of situations reported on the internet show that Malibu Media has filed over 40% of all copyright cases (and, as of September, over 4,000 lawsuits). Malibu's slash and burn model is strikingly similar to the tactics taken by the infamous Prenda law firm, who were sanctioned for violations and abuses

15

in other copyright cases.   (See https://en.wikipedia.org/wiki/Prenda_Law).   In addition, Paul Nicoletti, Malibu Media's local counsel in this case, has been indicted in the United States District Court for the Eastern District of Michigan for bank fraud, conspiracy, and attempt to commit fraud.   (See Case No. 15-cr-20382-VAR-MKM, United States District Court for the Eastern District of Michigan).

In response to Malibu Media's previous Motion for Sanctions [D.E. 81], Raleigh has argued for sanctions against Malibu Media [D.E. 84] and has implored this Court that Malibu Media's attorneys' abusive behavior must stop.   The Court responded by noting that the parties were engaged in vigorous discovery and litigation and granted the parties latitude in the language used in their Motions and Responses.   However, discovery has ended in this case.   Malibu Media has conducted lengthy and exhaustive discovery and has found no evidence whatsoever of wrongdoing on the part of Raleigh. Moreover, Malibu Media has misrepresented, to this Court, the evidence that it has collected in this case.   Failing to ask Raleigh questions regarding the server or the picture of the server on page 3, or the picture of the laptops on page 4, is a misrepresentation because Malibu Media knew that the answers to those questions would be simple and straightforward and would disprove the theory they are so desperately clinging to smear Raleigh's name.   It was a vain attempt to make Raleigh appear to be a "bad guy" or infringer.   However, Raleigh respectfully requests that this Court take a good, hard look at the evidence in this case. Malibu Media's argument should fall on deaf ears.

Nonetheless, for all of the reasons raised by Malibu Media in its motion, it is actually Malibu Media, not Raleigh, which should be sanctioned in this case.   Malibu Media has accused Raleigh of committing the crime of perjury despite (a) not knowing

all of the fact which would allegedly support a perjury allegation and (b) failing to ask Raleigh questions which, had they been asked, would have exonerated him.  Malibu Media also accused Raleigh of destroying evidence which it is clear that the evidence still exists (see **Exhibit 2** regarding the Western Digital hard drive).  Third, Malibu Media has never sent a request to Raleigh asking that he preserve evidence in a specific manner.  This is important, for example, because Raleigh was accused of downloading Malibu Media's pornography, yet Malibu Media has demanded that he produce every device in his house (including his wife's, who is not a party to this lawsuit) for examination, including the Western Digital backup hard drive – a device which, by its very nature, will "delete" the oldest data when it backs up new data.

Malibu never offered to compensate Raleigh for use of his devices, or buy him a new hard drive to preserve the "evidence" it now erroneously claims was destroyed.  It is important to note that all of this was done with not even the bare minimum of evidence against Raleigh at the time the complaint was filed.  Malibu Media accused Raleigh of infringing its copyrights simply because Raleigh's internet service provider was the conduit for whoever downloaded the pornography.  Yet, it is undisputed that Raleigh's internet connection was not password protected.  It is also not disputed that Raleigh is in the information technology field, as are his friends.  Anyone could have downloaded Malibu's porn.  There is no evidence connecting this "infringement" to Raleigh.

Despite this, Raleigh has been put on the defensive, with Malibu Media's incredulous argument that Raleigh has failed to identify the individuals who downloaded Malibu's smut.  Raleigh does not have that burden.  Rather, Malibu has the burden of establishing that Raleigh infringed its copywritten material.  It has not done so.

Instead, Malibu has violated the Federal Rules of Civil Procedure by not attaching the materials to which it referred in its motion. It has misrepresented, affirmatively (not conditionally) and erroneously, that Raleigh failed to produce evidence, destroyed evidence, and perjured himself, when (a) the facts do not support it and (b) Malibu Media's lawyers intentionally failed to ask Raleigh about the items raised in their motion because they knew that Raleigh would point out that they were simply wrong about it.

## **<u>CONCLUSION</u>**

For the reasons stated above, Defendant Jesse Raleigh respectfully requests that the Court deny Plaintiff's motion and, instead, award sanctions to Raleigh for having to respond this frivolous motion.

Respectfully submitted,

**BLANCO WILCZYNSKI, P.L.L.C.**

/s/ *Derek S. Wilczynski*
DEREK S. WILCZYNSKI [P-57079]
Attorneys for Defendant
LINCOLN G. HERWEYER [P-55742]
Co-Counsel for Defendant

Dated:  December 9, 2015

---

### ***<u>PROOF OF SERVICE</u>***

The undersigned certifies that a copy of the foregoing document was served upon all counsel at their above-captioned addresses on the ***NINTH*** day of ***DECEMBER, 2015,*** via:

| | |
|---|---|
| _____ U.S. Mail | _____ Express Delivery |
| _____ Facsimile | _____ Hand Delivery |
| ■ *EMAIL* | _____ Other |

and declares under penalty of perjury that this statement is true to the best of her information, knowledge and belief.

/s/ *Freda A. Noble*

18

| *FREDA A. NOBLE* |
| --- |

*s:\cases - opened\internet trolling cases\Raleigh, jesse\pleading\120715 response to plaintiff's motion for sanctions.dsw.fan.docx*