*EXHIBIT*

*3*

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MALIBU MEDIA, LLC, | ) |
|     Plaintiff, | ) ) |
| v. | ) Civil Action Case No.: 1:13-cv-00360-RJJ |
| | ) HON. ROBERT J. JONKER |
| JESSE RALEIGH, | ) MAG. JUDGE: HUGH W. BRENNEMAN |
| | ) |
|     Defendant. | ) |
| | ) |

**NICOLETTI & ASSOCIATES, PLLC**
PAUL J. NICOLETTI [P-44419]
Attorney for Plaintiff
33717 Woodward Avenue, Ste. #433
Birmingham, MI 48009
Landline: (248) 203-7800
eFax: (248) 928-7051
pauljnicoletti@gmail.com
http://www.nicolettilawplc.com

**BLANCO WILCZYNSKI, PLLC**
Derek S. Wilczynski [P-57079]
Attorneys for Defendant
2095 East Big Beaver, Suite 400
Troy, MI 48083
(248)519-9000
Fax: (248) 519-9001
dsw@blancopc.com

**LINCOLN G. HERWEYER, P.C.**
LINCOLN G. HERWEYER [P-55742]
Co-Counsel for Defendant
35054 Twenty-Three Mile Road, Suite 115
New Baltimore, MI  48047
(586)716-1562
Fax: (586) 716-1867
lgherweyer@netscape.net

*DEFENDANT'S RESPONSE TO PLAINTIFF,*
*MALIBU MEDIA'S, MOTION FOR SANCTIONS*

NOW COMES, Defendant, JESSE RALEIGH, by and through and his Attorneys, BLANCO WILCZYNSKI, PLLC, and as his Response to Plaintiff, MALIBU MEDIA's, Motion for Sanctions, states unto this Honorable Court as follows:

**INTRODUCTION**

Plaintiff, MALIBU MEDIA, LLC (MALIBU MEDIA"), has filed a Motion for Sanctions. Plaintiff's Motion should be denied because there is no basis in fact for any of Plaintiff's allegations. As the Court will see, MALIBU MEDIA has manufactured a Motion to Dismiss to cover up the fact that it has conducted multiple searches of the Defendant, JESSE RALEIGH's ("RALEIGH") digital devices and has found no evidence of wrongdoing on the part of RALEIGH. To begin with, RALEIGH's devices do not contain any of the copy written material which is the subject of this lawsuit.

Second, each allegation of discovery abuse made by MALIBU MEDIA is baseless and was actually caused by MALIBU MEDIA itself. For example, the first allegation is that RALEIGH failed to disclose that he had a server in his home. However, that allegation simply is not true and is something that MALIBU MEDIA had knowledge of when it took RALIEGH's deposition. However, MALIBU MEDIA failed to ask RALEIGH questions regarding his server or ask him questions about the "evidence" it now claims to establish that RALEIGH did not have a server.

It is clear that MALIBU MEDIA has played discovery games because none of its copy written material was found on any of RALEIGH's devices. MALIBU MEDIA knows that RALEIGH will be asking for sanctions allowable under the United State Copyright Act and is trying to avoid those sanctions by smearing RALEIGH's good name.

Third, the report generated by Patrick Page does not meet the Daubert Test for foundation and/or reliability under FRE 701, 702, 703 and will be the subject of another Motion. However, at this point, Patrick Page's report should be given no weight by this Court because (a) it impermissibly draws conclusions on fact issues this Court is asked upon to decide; and (b) is not supported by the evidence in this case.

2

Finally, RALEIGH himself has signed an Affidavit with regard to each of the allegations made by MALIBU MEDIA. RALEIGH did not commit the discovery violations alleged by MALIBU MEDIA and sanctions are not applicable in this case. However, because MALIBU MEDIA has abused the discovery process and has accused RALEIGH of discovery violations which clearly do not exist, MALIBU MEDIA, an its attorneys, should be sanctioned by this Court. During the course of this case, MALIBU MEDIA has consistently and systematically violated this Court's Orders, ignored the discovery which has been produced, failed to ask RALEIGH questions at his deposition which would have clarified all of the "issues" it now raises in its Motion for Sanctions, and has done so for the purpose of avoiding sanctions because RALEIGH did not download any of MALIBU MEDIA's copy written materials.

Accordingly, Defendant, JESSE RALEIGH, respectfully requests that this Court denies MALIBU MEDIA's Motion for Sanctions and, instead, enters an Order granting sanctions to RALEIGH for having to respond to MALIBU MEDIA's frivolous Motion.

## REBUTTAL TO MALIBU MEDIA'S ALLEGED FACTS

A. Defendant did not intentionally fail to produce relevant computer devices or commit perjury.

1. MALIBU MEDIA did not ask RALEIGH if he had a server.

RALEIGH responded to MALIBU MEDIA's discovery requests by stating "he does not possess any devices responsive to this request." See ***Exhibit ___***, RALEIGH's Responses to Plaintiff's Second Set of Requests for Production of Documents. This is true. RALEIGH does not own or possess a server which would be responsive to this request. MALIBU MEDIA had possession of this discovery request, as well as the Drop Box picture identified on page 3 of its Motion for Sanctions at the time of RALEIGH's

3

deposition. However, despite having this information, MALIBU MEDIA's attorney did not ask RALEIGH to explain the picture on page 3 of the Motion. As will be explained in the next section, the server identified on page 3 of MALIBU MEDIA's Motion does not belong to RALEIGH.

2. RALEIGH does not have a picture of "his" server.

According to RALEIGH, see ***Exhibit*** ___, Affidavit of Jesse Raleigh, the server in question is not his but, rather, belongs to Modustri, LLC, located at 38 Commerce Avenue, SE, Grand Rapids, Michigan. Metadata in the image EXIF tags shows it to have been taken at the GPS coordinates of Modustri's offices at 5:52 p.m. on November 8, 2013.

According to RALEIGH, tweets referencing, "old log files" are referring to a file named logs.tar.bz2 which resided in the home directory of the "jr" user in the MacBook Pro imaged by MALIBU MEDIA. In other words, those logs were furnished for discovery.

3. RALEIGH does not have a "third MacBook or tablet."

RALEIGH does not have as third MacBook tablet. See the following section.

4. RALEIGH does not have a picture of a third MacBook or tablet.

According to MALIBU MEDIA, RALEIGH's Dropbox contains a picture of three MacBook lap tops and three tablets. Even though MALIBU MEDIA had the picture identified on page 4 at the time of RALEIGH's deposition, MALIBU MEDIA's attorneys never questioned him about the MacBooks contained in the pictures. Again, RALEIGH refers to his Affidavit, attached as ***Exhibit*** ___. The additional MacBook and tablets belong to guests who were present in the RALEIGH household at the time the picture was taken. Interestingly, even though MALIBU MEDIA claims that it "cropped" the

4

picture to protect the identities of the children in the image, had MALIBU MEDIA not cropped the photograph, they would have learned that one of the children present in the picture owned the MacBook and/or tablet. RALEIGH has provided the relevant pictures, attached as ***Exhibit*** ___, to illustrate this.[1]

5. RALEIGH swore he did not have it all on one computer.

See next section. RALEIGH does not have it all on one computer.

6. The picture in question is not of an all in one computer.

RALEIGH's Dropbox does not contain a picture of an AOC "all in one" PC. The device pictured is a USB powered portable monitor, with a serial number of CZSB9HA000205. RALEIGH still possesses this device and would produce it if necessary. However, it has not been requested.

7. RALEIGH does not have additional cloud storage devices.

RALEIGH does not have additional cloud storage devices. See next section.

8. RALEIGH does not have numerous undisclosed cloud storage devices.

Despite MALIBU MEDIA's allegations to the contrary, RALEIGH does not have additional cloud storage devices. Rather, clicking links to other individuals' shared files creates the history that is described in MALIBU MEDIA's expert witness' report. This "share" existed wholly within RALEIGH's MacBook #1 and did not represent a physical LAN or share but, rather, a "virtual machine." The virtual machine was provided with RALIEGH's original Responses to MALIBU MEDIA's Discovery Requests.

B. RALEIGH did not commit perjury regarding the extent of his bitTorrent use.

---

[1] MALIBU MEDIA and its attorneys attempt to smear RALEIGH's name by referencing the fact that neither he nor his wife wanted to identify individuals who were guests at their house. The fact that MALIBU would continuously disregard the Protective Order entered in this case and potentially expose RALEIGH's friends and family to Court filings is the very reason why they did not want to disclose the names of the individuals involved. However, faced with a Motion for Sanctions, MALIBU MEDIA has put RALEIGH in the position where he has no choice but to proceed accordingly.

5

At the outset, RALEIGH would note that none of the allegations made by MALIBU MEDIA with regard to RALEIGH's bitTorrent use is four files that are copy written by MALIBU MEDIA. Moreover, it is worth noting that Defendant, RALEIGH, has engaged in a career in information technology and uses his computer constantly for this purpose. The fact that there are random files and folders does not mean that RALEIGH engaged in "illegal" bitTorrent. MALIBU MEDIA's argument in this regard is severely lacking. Moreover, this exact argument was made in MALIBU MEDIA's previous Motion for Sanctions. This argument is nothing more than an attempt to cast dispersions on RALEIGH by smearing his name.

C. Data was not erased RALEIGH's Western Digital hard drive prior to December 17, 2013.

MAILBU MEDIA claims that RALEIGH erased data prior to December 17, 2013. This is simply incorrect. RALEIGH has attached a screenshot from the provided drive showing files dating back to 2010. See ***Exhibit*** ___.

It is also worth noting that MALIBU MEDIA had this hard drive on two occasions and, due to its own incompetence, simply did not make an attempt to copy it when it first had the hard drive. Thus, MALIBU MEDIA is responsible for complicating this matter even further.

D. RALEIGH did not fail to produce relevant evidence but, rather, it is clear that MALIBU MEDIA engaged in a systematic practice of attempting to smear RALEIGH's name when it realized that RALEIGH did not download or possess the copy written material.

MALIBU MEDIA claims that RALEIGH's "failure" to produce relevant evidence makes it likely that he is the "infringer." This is simply not true. First, such an

6

allegation defies logic. MALIBU MEDIA examined the following devices produced by RALEIGH:

- Two laptops,
- Two iPads, and
- Western Digital Hard Drive.

None of these devices contained any copy written materials with the rights of which were held by MALIBU MEDIA. Moreover, MALIBU MEDIA's search of RALEIGH's devices did not even lead to the conclusion that RALEIGH deleted any bitTorrented material, whether MALIBU MEDIA copy written material or other bitTorrented material. As indicated by RALEIGH's Affidavit, had RALEIGH deleted any copy written material, there would have been a trail on his devices which would have lead MALIBU MEDIA's expert to conclude that the material was on RALEIGH's devices at some point.

Even more troubling is the report generated by Patrick Page itself. Even without any technical knowledge or expertise, it is clear that Mr. Page makes significant "leaps and logic" to conclude that it is more likely than not that RALEIGH had downloaded the copy written material. Even though there is no evidence whatsoever that RALEIGH ever had the copy written material, let alone deleted it, Mr. Page concludes, from what he perceives to be RALEIGH's actions, that RALEIGH must have downloaded the copy written material. Mr. Page's conclusions, however, are completely faulty. They are similar to a police detective telling a suspect, "I know all of the forensic evidence shows you did not commit the crime. But, however, since a crime was committed, you must have done it simply because I have no other suspects."

MALIBU MEDIA finds itself in a precarious position. It has continuously prosecuted RALEIGH even though there has been no evidence whatsoever to connect him with the infringement of MALIBU MEDIA's copy written material. MALIBU MEDIA has bumbled its way through several rounds of discovery, several generously granted extensions of time by this Court, and numerous Motions all to end up in a position where it simply does not have any evidence whatsoever with which to support its case. Moreover, as indicated above, the conclusions MALIBU MEDIA draws with regard to RALEIGH'S testimony and Answers to written discovery are simply not supported by the fact and, moreover, anyone with basic IT skills could see that.

Second, MALIBU MEDIA has engaged in a deceptive practice of discovery designed to make it appear as though RALEIGH is the infringer when, in fact, ***MALIBU MEDIA failed to ask RALEIGH questions at his deposition regarding the subject of MALIBU MEDIA's Motion.*** For example, MAILBU MEDIA claims that RALEIGH committed perjury with regard to having, or not having, a server. At the time it took RALEIGH's deposition, MALIBU MEDIA had access to all of the data and information it had presented to the Court in this Motion. This included all of the data, and metadata, contained on RALEIGH's devices, as well as access to his Dropbox account. Despite this, MALIBU MEDIA did not ask RALEIGH one question regarding the picture identified on page 3 of its Motion. Had MALIBU MEDIA's attorneys done so, they would have learned that the server in question was not RALEIGH's server but, rather, a server belonging to RALEIGH's employer, which was easily verified by the time and location stamp on the picture itself. Clearly, the server in question is the property of Modustri, LLC, RALEIGH's employer.

In addition, MALIBU MEDIA claims that RALEIGH failed to disclose ownership of an additional laptop. Again, despite having access to this picture at the time of RALEIGH'S deposition, MALIBU MEDIA's attorneys did not ask RALEIGH any questions regarding the picture. Based on the time and location stamp for this picture, as well as RALEIGH's Affidavit, it is clear that there is a simple explanation for the number of laptops in the picture. While two laptops belonged to RALEIGH (and were disclosed by RALEIGH), the remaining laptop does not belong to RALEIGH. Further, the children in the picture are a good indicator that this picture was not taken with only RALEIGH's property depicted in it but, rather, friends of Mr. and Mrs. RALEIGH.

The most troubling aspect of MALIBU MEDIA's misrepresentations to this Court are that (a) they would have been easily avoided had MALIBU MEDIA's attorneys simply asked RALEIGH questions about the pictures identified in its motion; and (b) it was clearly done in an attempt to "frame" RALEIGH. At the time MALIBU MEDIA's attorneys took RALEIGH's deposition, Patrick Page had examined RALEIGH's devices on multiple occasions and had prepared two reports concluding that the copy written material alleged to be infringed by MALIBU MEDIA was not on any of RALEIGH's devices. MALIBU MEDIA's attorneys knew, from conversation with RALEIGH's attorneys, that he would be seeking sanctions in the form of attorney fees pursuant to the United States Copy Right Act. MALIBU MEDIA's attorneys were clearly engaging in desperate attempts to avoid paying those attorney fees.

Had MALIBU MEDIA's attorneys simply litigated this case, RALEIGH's attorneys would not have such strenuous objections or be asking for sanctions in this response. However, MALIBU MEDIA's attorneys have used and abused, the legal process in this case to make it appear as though, and accuse RALEIGH of, committing perjury and

9

misrepresenting evidence to the Court when, in fact, it is MALIBU MEDIA's attorneys who are doing that. This is a serious violation of not only the Court system, but the public trust in general. Moreover, this appears to be the standard in practice of MALIBU MEDIA's attorneys throughout the country. A quick review of situations reported on the internet show that MALIBU MEDIA's former attorneys, the Prendall law firm, were sanctioned for violations in other MALIBU MEDIA cases. In addition, Paul Nicoletti, MALIBU MEDIA's local counsel in this case, has been indicted in the United States District Court for the Eastern District of Michigan for mortgage fraud.

In response to MALIBU MEDIA's previous Motion for Sanctions, RALEIGH has argued for sanctions against MALIBU MEDIA and has implored this Court that MALIBU MEDIA's attorneys' abusive behavior must stop. The Court responded by noting that the parties were engaged in vigorous discovery and litigation and granted the parties latitude in the language used in their Motions and Responses. However, discovery has ended in this case. MALIBU MEDIA has conducted lengthy and exhaustive discovery and has found no evidence whatsoever of wrongdoing on the part of RALEIGH. Moreover, MALIBU MEDIA has misrepresented, to this Court, the evidence that it has collected in this case. Failing to ask RALEIGH questions regarding the server or the picture of the server on page 3, or the picture of the laptops on page 4, is a misrepresentation because MALIBU MEDIA knew that the answers to those questions would be simple and straightforward and would disprove the theory they are so desperately clinging to smear RALEIGH's name. It was a vain attempt to make RALEIGH appear to be a "bad guy" or infringer. However, RALEIGH respectfully requests that this Court take a good, hard look at the evidence in this case and allow MALIBU MEDIA's argument to fall on deaf ears.

E.

Respectfully submitted,

**BLANCO WILCZYNSKI, P.L.L.C.**

/s/ *Derek S. Wilczynski*
DEREK S. WILCZYNSKI [P-57079]
Attorneys for Defendant
LINCOLN G. HERWEYER [P-55742]
Co-Counsel for Defendant

Dated:  December 8, 2015

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing document was served upon all counsel at their above-captioned addresses on the *EIGHTH* day of *DECEMBER, 2015,* via:

| _____ U.S. Mail | _____ Express Delivery |
|---|---|
| _____ Facsimile | _____ Hand Delivery |
| ■ *EMAIL* | _____ Other |

and declares under penalty of perjury that this statement is true to the best of her information, knowledge and belief.

/s/ *Freda A. Noble*
***FREDA A. NOBLE***

---

s:\cases - opened\internet trolling cases\raleigh, jesse\pleading\120715 response to plaintiff's motion for sanctions.dsw.fan.docx

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT MICHIGAN**

| | |
|---|---|
| MALIBU MEDIA, LLC, | ) |
| Plaintiff, | ) Civil Action Case No. 1:13-CV-360-RJJ |
| v. | ) |
| JESSE RALEIGH, | ) |
| Defendant. | ) |

**DEFENDANT'S RESPONSES TO PLAINTIFF'S**
**SECOND SET OF REQUEST FOR PRODUCTION OF DOCUMENTS**

1. A forensically sound copy (a clone) of any device capable of storing electronic data used at **218 Michigan Street, Apt. 1, Petoskey, MI 49770** within the last four years. This includes any servers, NAS (Network-Attached Storage) devices, externals hard drives, portable hard drives, USB drives, thumb drives, internal hard drives which may have been removed from their original device, and solid state hard drives. This request does not include devices which Defendant already produced in response to prior discovery requests.

**RESPONSE NO. 1:** Other than the devices already produced in this case, Defendant does not possess of any devices responsive to this request.

2. All documents referring, relating to or comprising records associated with the purchase of any device capable of storing electronic data used at **218 Michigan Street, Apt. 1, Petoskey, MI 49770** within the last four years. This includes any servers, NAS (Network-Attached Storage) devices, externals hard drives, portable hard drives, USB drives, thumb drives, internal hard drives which may have been removed

from their original device, and solid state hard drives. This request does not include documents which Defendant already produced in response to prior discovery requests.

**RESPONSE NO. 2:** Defendant does not possess any documents responsive to this request.

3.    Any documents that contain credit card or bank statements relating to your purchases of any device capable of storing electronic data at any and all electronics retail stores in the past four years. This includes any servers, NAS (Network-Attached Storage) devices, externals hard drives, portable hard drives, USB drives, thumb drives, internal hard drives which may have been removed from their original device, and solid state hard drives. This request does not include documents which Defendant already produced in response to prior discovery requests.

**RESPONSE NO. 3:** Defendant does not possess any documents responsive to this request.

Respectfully submitted,

By:_/s/_____
Derek S. Wilczynski (P57079)
Attorney for Defendant
2095 E. Big Beaver Ste 400
Troy, MI 48083
248.519.9000
dsw@blancopc.com

Dated: July 16, 2015

2

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2015, a true and correct copy of the foregoing document was served via email to the following:

**SERVICE LIST**

Attorneys for Plaintiff:
Jessica Fernandez, Esq.
Lipscomb, Eisenberg & Baker, PL
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Tel: 786.431.2228 (Main)
e-mail: jfernandez@lebfirm.com

Paul Nicoletti (P-44419)
Nicoletti Law, PLC
33717 Woodward Avenue, Ste. #433
Birmingham, MI 48009
Landline: (248) 203-7800
eFax: (248) 928-7051
Email: pauljnicoletti@gmail.com
http://www.nicolettilawplc.com

By:_/s/_____
Derek S. Wilczynski (P57079)
Attorney for Defendant
2095 E. Big Beaver Ste 400
Troy, MI 48083
248.519.9000
dsw@blancopc.com

Dated: July 16, 2015

3