UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT MICHIGAN

| | |
|---|---|
| MALIBU MEDIA, LLC,            )<br>                                                    )<br>     Plaintiff,                         )<br>                                                    )<br>v.                                                )<br>                                                    )<br>JESSE RALEIGH,                    )<br>                                                    )<br>     Defendant.                      )<br>                                                    ) | Civil Action Case No. 1:13-CV-360-RJJ |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SANCTIONS**

### I.      INTRODUCTION

Defendant Jesse Raleigh's Response and subsequently filed affidavit contain unsupported denials and improper attempts to submit expert testimony well after Court ordered deadlines. Throughout discovery, Plaintiff made significant efforts to secure all information or documentation which would corroborate Defendant's denial of infringement. And, Defendant continued to claim that he resided in Grand Rapids, Michigan during the period of recorded infringement. To date, Plaintiff has yet to produce a single document showing that he was not in his home during the period of recorded infringement. And, Defendant now, conveniently and without any support, explains that the BitTorrent files on his computer and the third MacBook belong to or where given to him by an unidentified "friend." He further denies ever owning a server despite explicitly stating in a tweet that he possesses a server. Defendant's denials and excuses are incredible. For the foregoing reasons, as explained more fully below, this Court should grant Plaintiff's Motion for Sanctions.

1

**II.     ARGUMENT**

    A.  <u>Defendant Committed Perjury Regarding His Ownership of a Server</u>

Defendant has always denied owning a server – both in responses to Plaintiff's written discovery and at his deposition. *See* Defendant's Response to Plaintiff's Second Set of Requests for Production, attached hereto as Exhibit "A"; *See also* Defendant's Deposition 30:24–25; 31:1; 41:23–24, attached hereto as Exhibit "B."  Now, when confronted with his own tweet admitting that he owns a server, Defendant claims that his tweet referred to "old log files" located on a work server.  *See* CM/ECF 115-2, p. 1.  Defendant further claims that these "old log files" where already produced through imaging of his MacBook laptop.  *Id*.  However, Defendant's tweet clearly states that he was viewing files "on an old server of mine[.]"  Defendant's own statement thus contradicts his explanation in his Response.



Plaintiff's Motion also relied upon a picture discovered during computer forensic examination.  Defendant explains that the metadata in this photo establishes that the picture was taken at his place of employment.  Plaintiff confirmed that explanation.

    B.  <u>Defendant Failed to Present Any Evidence Regarding Third-Party Ownership of the Third MacBook</u>

Defendant claims that he does not own a third MacBook.  He argues that the third MacBook pictured in Plaintiff's Motion belongs to his "friend."  However, both Defendant and his wife refused to identify any individuals who brought any computer devices into their home.  *See* Defendant's Dep. 48:12-20; *See* also Mrs. Raleigh's Dep. 38:5-12, attached hereto as Exhibit "C."  And, Defendant failed to produce an affidavit from this purported "friend."  As such

Defendant self-serving purported explanation cannot be tested. This leaves Defendant's assertions unverifiable and suspect.

### C. Plaintiff Made Substantial Efforts to Obtain a Complete List of Devices in Defendant's Home

Although Defendant blames Plaintiff for his failures to provide complete and truthful responses, as evidenced by the deposition transcript Plaintiff made substantial efforts to ensure that it obtained a complete list of devices in Defendant's home. Indeed, Plaintiff's thorough questions elicited Defendant's disclosure of a TI-98 calculator in his home because of its storage capabilities and both a Vizio television and Apple TV because of their internet capabilities. *See* Defendant's Deposition 43:11–24; 34:17-25; 35:1-24. Any allegation that Plaintiff failed to conduct a thorough investigation of devices in Defendant's possession is false.

### D. The Picture of the AOC Device Demonstrates that Defendant Was Viewing a Process Related to the Android Operating System

Defendant claims that he does not own an AOC All-In-One Computer and that the device pictured is not a computer, but rather a USB monitor. The AOC All-In-One computer and AOC monitor are visually virtually identical. Accordingly, without production of the device, Plaintiff cannot confirm or deny Defendant's assertion. The Vizio television depicts a process related to the Android operating system. None of the devices produced have Android software. The AOC All-In-One computer can use Android software. That is why Mr. Paige initially concluded it was an AOC All-In-One. Defendant offered to produce the AOC monitor for inspection. Plaintiff accepts this offer to inspect it. If the AOC is merely a monitor, it will nevertheless leave unanswered questions as to why the Vizio shows that Defendant is viewing a process related to the Android operating system. And, Defendant has a powerful motive to lie. Indeed, he is an admitted BitTorrent user that had infringing transactions recorded from his internet.

### E. Defendant Committed Perjury Regarding the Extent of his BitTorrent Use

In response to Plaintiff's Interrogatory No. 16 Defendant stated that he has used BitTorrent to download Linux[.]" *See* CM/ECF 81-1, at p. 11-12. And, in response to Interrogatory No. 20, Defendant stated that "he does not download torrents that are not opensource software and legally distributed." *Id*. Through these answers, Defendant clearly testified that he only used BitTorrent to download versions of Linux and legally distributed content. Contrary to Defendant's position, Plaintiff discovered additional files containing BitTorrent metadata. Defendant, yet again, conveniently states that a "friend" gave him a thumb drive with these files. Although Defendant's contention could have easily been verified, Defendant refused to identify this "friend," or submit an affidavit from this "friend." Again, Defendant will not permit Plaintiff to test the veracity of his statements.

### F. The Data on Defendant's Western Digital Hard Drive Prior to December 17, 2013 Could Not have Been Automatically Deleted Because The Volume on Defendant's Hard Drive Was Created on that Date

Since Plaintiff first submitted its expert report, Defendant has argued that data prior to December 17, 2013 on his Western Digital hard drive was automatically deleted because "the drive deleted the oldest backups once it became full." *See* CM/ECF 120-1 at ¶ 34. Not true. Plaintiff provided expert testimony establishing that the volume on Defendant's hard drive was *created* on December 17, 2013 and the creation of this volume during this lawsuit erased all prior data on the hard drive. Plaintiff's works absolutely could have been on this storage device. In light of the foregoing, Plaintiff's expert testified "Defendant's contention that the data on the hard drive was automatically erased because the hard drive is full is inconsistent with the computer records." CM/ECF 85-3 at ¶ 82. In short, Defendant caused material evidence to be spoiled during this litigation.

4

Defendant now takes a completely contradictory position claiming that all files predating December 2013 are *intact* because the screenshots from his Western Digital drive demonstrate "files dating back to 2010," while simultaneously arguing that backup files predating 2012 cannot possibly exist because the Western Digital drive was only manufactured in 2012[1]. CM/ECF 115-2, at p. 5-6. Defendant's arguments are a flagrant attempt to obfuscate the facts in Plaintiff's expert report. To explain, screenshots demonstrating that a file contains a 2010 modification date merely shows that a 2013 backup saved a file initially created or last modified in 2010. Indeed, any backup created would be saving files created at a previous point in time. Nevertheless, Defendant cannot possibly refute five relevant facts: (1) the Western Digital hard drive's repeated use dates back to 2012; (2) the volume on the Western Digital hard drive was created on December 17, 2013; (3) no backups prior to December 17, 2013 exist on the Western Digital; (4) all prior data on the Western Digital drive was deleted through volume creation on December 17, 2013; and (5) Plaintiff's works and the other evidence of BitTorrent use could have been on the drive. Screenshots demonstrating that a file contains a 2010 modification date do not negate any of the foregoing facts.

      G.  Defendant's Response Contains Inaccuracies

Defendant argues that Plaintiff is intentionally misleading the Court by claiming that Defendant failed to produce his PlayStation 3. Plaintiff did not make this statement in its motion. Defendant produced his PlayStation 3 and as demonstrated in its expert report, Mr. Paige found correlations between Plaintiff's Additional Evidence and the contents of the PlayStation.

---

[1] Mr. Paige's expert report stated that the earliest log date for the Western Digital was October 2011. This was a scrivener's error. The earliest log date located is October 2012. Plaintiff's expert will correct this error and file his amended report as soon as possible. To be clear, this scrivener's error does not change or contradict Plaintiff's argument –the Western Digital hard drive was in use for a significant amount of time prior to the December 17, 2013 volume creation and all data prior to December 2013 has been deleted from the drive.

5

Defendant argues that this Court should not give Plaintiff's expert report any weight because it impermissibly draw conclusions on fact issues and is unsupported by evidence. Mr. Paige provided a comprehensive report detailing his examination of the hard drives, and used all the evidence discovered to draw conclusions on whether infringement by Defendant was likely or not. Even if Mr. Paige's conclusions are inadmissible, which they are not, this is an insufficient basis to strike Mr. Paige's entire report. Lastly, Defendant claims that Malibu ignored the discovery he produced and violated Court orders and discovery rules. However, he fails to identify an example of any violation. Instead, Defendant prefers to ignore Plaintiff's prior requests for any documentation which would prove that Defendant did not commit the infringement.

### H. Despite Plaintiff's Efforts, Defendant Refused to Produce Any Evidence Supporting His Denials or Explaining the Inconsistencies Between His Testimony and Plaintiff's Expert Report

Throughout the course of discovery, Plaintiff sought travel documentation, lease agreements, or any other documents demonstrating that Defendant was not at his residence during the period of recorded infringement. Although Defendant claims that he was away from his residence during this time due to his change in employment, Defendant failed to produce any receipts proving travel, an employment offer letter, an affidavit from any friends who he purportedly temporarily resided with during his move to Grand Rapids, banking statements demonstrating purchases made in Grand Rapids, or any documents showing the execution or termination of a lease agreement in light of his move from Petoskey, Michigan to Grand Rapids, Michigan. In short, the date of Defendant's move to Grand Rapids during the period of recorded infringement has never been verified. "When parties … intentionally withhold properly requested information, courts have the authority to presume that the party's refusal to produce

the information is an admission of the want of merit in the asserted defense[.]" *Tech. Recycling Corp. v. City of Taylor*, 186 F. App'x 624, 639 (6th Cir. 2006). Indeed, if Defendant "had the meat, [he] would have put it on the grill[.]" *Id*. To date, Defendant has not presented any evidence to support his defense that he was in Grand Rapids during the period of recorded infringement.

On October 5, 2015, Plaintiff served its expert report on Defendant. In light of the findings on its expert report, on November 25, 2015, Plaintiff attempted to confer with defense counsel and requested an explanation for the various inconsistencies between Mr. Paige's report and Defendant's testimony. *See* Emails Between Plaintiff and Defense Counsel, attached hereto as Exhibit "D." Defense counsel's e-mail responses claimed that Plaintiff's allegations were "without foundation[,]" and stated "[y]ou are simply wrong about the pictures […] That's your mistake, not mine. There is a good explanation for them – but you had your chance with my client and wasted it." *Id*. Defense counsel subsequently claimed that his client "was under no obligation to preserve anything." *Id*.

### III.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant Plaintiff's Motion for Sanctions.

Dated:  January 8, 2016

        Respectfully submitted,

        LIPSCOMB, EISENBERG & BAKER, PL

By:   /s/ *Jessica Fernandez*
       Jessica Fernandez, Esq.
       Lipscomb, Eisenberg & Baker, PL
       2 South Biscayne Blvd, Suite 3800
       Miami, Florida 33131
       Phone No. (786) 431-2228
       Fax No. (786) 431-2228
       Email Address: Jfernandez@lebfirm.com
       *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 8, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

        By:   /s/ *Jessica Fernandez*