UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

MALIBU MEDIA, LLC          Civil Action Case No. 1:13-cv-00360-RJJ
                           Hon. Robert J. Jonker
    Plaintiff,

v.

Jesse Raleigh,

    Defendant.

_____

Nicoletti & Associates, PLLC              Blanco Wilczynski, PLLC
By: Paul Nicoletti (P44419)               By: Derek S. Wilczynski (P57079
Attorney for Plaintiff                    Attorneys for Defendant
33717 Woodward Ave., Suite 433            2095 E. Big Beaver Rd., Suite 400
Birmingham, MI 48009                      Troy, MI 48083
(248) 203-7800                            (248) 519-9000

Lipscomb, Eisenberg & Baker, PL           Lincoln G. Herwyer, PC
By: Keith Lipscomb (pro hac vice)         By: Lincoln G. Herweyer (P55742)
    Jessica Fernandez (pro hac vice)      Attorney for Defendant
Attorneys for Plaintiff                   35054 Twenty-Three Mile Rd., Suite 115
2 S. Biscsayne Blvd., Suite 3800          New Baltimore, MI 48047
Miami, FL 33131                           (586) 716-1562
(786) 431-2228
_____

****ORAL ARGUMENT REQUESTED****


# [DRAFT] BRIEF IN SUPPORT OF
# DEFENDANT'S *DAUBERT* MOTION AND MOTION *IN LIMINE* TO EXCLUDE, OR IN THE ALTERNATIVE LIMIT, THE EXPERT TESTIMONY OF PATRICK PAIGE

**INTRODUCTION**

Pending before this Court is an action for direct copyright infringement by Plaintiff Malibu Media, LLC against Defendant Jesse Raleigh.  Malibu Media is a prolific "for profit" copyright litigator and producer of pornographic videos that makes money through the seeding of the internet with its copyrighted pornography,[1] and by then suing or threatening to sue those individuals who "take the bait" (so to speak) and download Malibu's pornography.  Malibu also sues people, like your instant Defendant, who have not downloaded Malibu's pornography.

Because Malibu's business model relies on intimidation, it cannot afford to ever admit that it has sued an innocent party, because that would reveal the weakness in its general ability to prove infringement cases.  Instead, when discovery fails to support the allegations contained in its Complaint, Malibu alleges that the wrongfully sued person must have hidden the evidence.

Malibu claims that, working in league with a German Company called Excipio, it can determine the IP address through which a user of Bittorrent software has either downloaded or uploaded digitized portions of its copyrighted works.  As it regards this particular case, Malibu claims that, from February 11, 2013, through February 17, 2013, some 49 data packets associated with six of its copyrighted pornographic videos were transferred by a Bittorrent user through IP address 24.247.226.165.  For purposes of this motion (only), it is not disputed that, at the relevant time, that IP address was associated with internet service provided to an apartment in Petoskey, Michigan, and that the account was in Defendant's name.  The fact that Defendant is the one who paid for the internet service was sufficient, in Malibu's view, to sue Defendant and claim that he was the infringer.

---

[1] If Malibu, itself, is not the initial seeder, it is still the case that such seeding is necessary to Malibu's litigation model.  Its "films" are being made available on the internet for downloading as torrent files within hours of being completed, and but for the serendipity of this mysteriously timely and cooperative uploader, its shakedown operation could not flourish.

Defendant's theory of the case is decidedly less speculative.  <u>First</u>, Defendant has personal knowledge that he did not download or upload Malibu's works.  <u>Second</u>, Defendant was in Grand Rapids for the bulk of the period from February 11, 2013 through February 17, 2013, where his then job with Agent X, LLC was located.[2]  At the time, he had yet to complete the transition of moving his family to Grand Rapids.  <u>Third</u>, Defendant's router in Petoskey was not password protected, so (assuming that a Bittorrent user downloaded Malibu's works through the expediency of Defendant's internet service) it could have been anyone in any of the four apartments in the house in which his family lived, or even someone located in the 5-unit apartment house next door.[3]  <u>Fourth</u>, of course, none of Malibu's works (or any of the other items supposedly downloaded by the infringer according to Malibu's "expanded surveillance") were found on any of Defendant's computer devices.  <u>Fifth</u>, although Defendant works in the computer technology field and uses Bittorrent for legitimate purposes, Malibu's own evidence establishes that "the infringer" used a Bittorrent software version identified as qBittorent (or qBT), whereas the torrent client and torrent files identified on Defendant's devices by Malibu's supposed expert (Paige) were all associated with a software version identified as uTorrent.

On October 5, 2015, Paige authored a report (see Doc 108-1), hereinafter "the Paige Report"), which was provided to Defendant's counsel on October 6, 2015 pursuant to Fed. R. Civ. P. 26(a)(2)(B) and this Court's October 6, 2015 order (Doc. 104).

---

[2] In its Reply brief recently filed in support of its specious motion for sanctions, Malibu argued that it had never been provided with evidence of Defendant's presence in Grand Rapids during the relevant time.  However, Malibu was given complete access to Defendant's Dropbox account, and its "expert" scrutinized Defendant's photo images that were uploaded to that account.  The metadata associated with numerous photos thereon demonstrates that Defendant's smart phone was in Grand Rapids during the relevant period and it was taking photographs of Grand Rapids images.

[3] Defendant even has particular suspicions about the individual who occupied the apartment directly above his family's, but unlike Malibu Media, he is unwilling to affirmatively make accusations based on no more than speculation.

Defendant now moves to exclude or limit the testimony of Paige based on the contents of the Paige Report, which reveal that the premises and conclusions therein are fatally flawed.

## STATEMENT OF FACTS

**Family, Residency and Work History.** Defendant is a software engineer, programmer, and information systems specialist. From June 2006 until January of 2013, he worked for Silversmith Inc., in Gaylord, Michigan. (Aff., p 2, Doc 80-11, Pg. ID 711; J. Raleigh Dep., pp 6-11, Doc 122-2, Pg. ID 1217-1218.) From 2011 until early January of 2013, Defendant commuted to that job (35 miles each way) from an apartment in a four-unit house at 218 Michigan Ave., Petoskey, Michigan, where he lived with his wife, Heather, and their two sons, J. and C. In February 2013, during the alleged period of infringement, Defendant's son J. was three years old, and his son C. was one year old. (*Id.*; H. Raleigh Dep, p 8, Pg. ID 1295.)

In December 2012, Defendant accepted a job offer from Agent X, LLC., a marketing firm located in Grand Rapids, Michigan, 178 miles from his apartment in Petoskey. Defendant began working as the Lead Technologist for Agent X, LLC in early January 2013 and initially (in order to work in Grand Rapids) Defendant stayed with a friend named Ryan Jackson, but he also spent about three weeks staying with his wife's relatives. (Aff., p 2, Doc.80-11, pg. ID 711; J. Raleigh Dep J. 6-9, Doc 122-2, Pg. ID 1217-1218.).

In March 2013, Defendant moved his family to a house located at 343 Norwood Avenue SE in Grand Rapids (*Id.*; Inter. Ans., p 1, Doc 122-2, Pg. ID 1260). On September 11, 2013, the owner of Agent X, LLC (Brian Steketee) registered a new limited liability company with the State of Michigan, called Modustri LLC, in order to capitalize on a new technology invented by Defendant. Although Agent X, LLC officially went out of business in May 2014, Defendant

continued working as the Lead Technologist for Modustri LLC, the offices of which are located at 38 Commerce Ave, Suite 102, Grand Rapids.

In February 2015, Defendant took a job as a Senior Developer with PhishMe Inc. The next month, he and his family moved to their current address on Fruit Street in Grand Rapids.

**The Alleged Infringement, Discovery, and the Paige Report.** Malibu's Complaint alleges six acts of infringement occurring through Defendants IP address in Petoskey as follows: two incidents occurring just after midnight on February 11, 2013; three incidents on February 15, 2013 (one around noon, and two just after 8:00 pm); and one on February 17, 2013 at around 5:00 pm. (Complaint Ex A, Doc 1-1, Pg. ID 8.) The affidavit of Michael Patzer reveals that Malibu purports to have actually tracked a total 49 data packets transferred from or to Defendant's IP address, all occurring roughly at the times indicated above, regarding six of Malibu's works. (Exhibit _, Patzer Declaration, Ex B.) The "client version" associated with each of those transfers was qBittorrent 3.0.6.[4] (*Id.*)

In his Answers to Interrogatories, Defendant explained that he was in Grand Rapids at the time of the first three incidents of infringement,[5] and was driving from Grand Rapids to Petoskey at the time of the fourth and fifth incidents. He spent the 16th at his parents' house in Alanson, and returned to Grand Rapids on the 17th. (Doc-122-2, p 9, Pg. ID 1267.)

At no small inconvenience and burden on Defendant's privacy, Malibu's computer forensics "expert" (Paige) has been permitted to extensively examine Defendants two MacBook

---

[4] "qBittorrent" is a BitTorrent client (i.e., program) written using the Qt4 Framework for its user interface. https://github.com/qbittorrent/qBittorrent/wiki/Frequently-Asked-Questions. The 3.0.6 version of qBittorent was first released for use on October 7, 2012. http://www.qbittorrent.org/news.php. (Both accessed on January 11, 2016.)

[5] Malibu has in its possession numerous photographs, the metadata of which evinces Defendant's presence at 38 Commerce Ave, Suite 102, Grand Rapids, Michigan, at the times in question.

Computers, two iPads, an 80 GB Toshiba external hard drive (the contents of which were created specifically to respond to discovery in this case);[6] a 2TB Western Digital external hard drive that Defendant has been using as a "Time Machine" backup for his computer files.[7]

On October 5, 2015, Paige authored his report (Doc 108-1). The three most notable aspects of the report are all omissions. <u>First</u>, the Paige Report leaves the reader to assume from its absence of mention that he found no traces of Malibu's works on any of Defendant's devices. This is consistent with Paige's past practice.[8] Second, Paige likewise omits mentioning that he found none of the torrent files associated with Malibu's "expanded surveillance" of Defendant's

---

[6] In Plaintiff's initial Requests for Production (the objections to which were later resolved with a moderating order), Malibu asked Defendant to make a clone of his hard drive(s) and produce it. The Toshiba was such a clone, produced in accordance with that request. When it and the Western Digital Drive were later turned over to Plaintiff's counsel's expert, they were retained for some 45 days, and then returned without being examined because Plaintiff's counsel insisted that his expert be permitted to make his own copies of Defendant's hard drives. After doing so, and finding evidence of the existence of the Toshiba and Western Digital hard drives, Plaintiff's counsel then demanded to be again provided with the two hard drives. And if that is not enough evidence of a farce, Plaintiff's counsel later demanded to examine Defendant's Playstation after seeing an excerpt from a text exchange between two people (who Defendant does not even know) that was highlighted in Paige's 2-13-15 findings for an unrelated (but still specious) point that Paige was trying to make. Plaintiff's counsel, however, got confused, and thought Defendant was a participant in the text exchange (which he was not) that mentions playing downloaded torrent files on a Playstation2. Consequently, laboring under his own misapprehension and tendency to jump to the wrong conclusions, Plaintiff's counsel continued the farce with a fruitless forensic examination of an old gaming console.

[7] Time Machine is a program that backs up all of your files to an external hard drive so that you can restore them later or see how they looked in the past. The program automatically makes hourly backups for the past 24 hours, daily backups for the past month, and weekly backups for all previous months. The oldest backups are deleted when your backup drive is full. https://support.apple.com/en-us/HT201250 (accessed 1-11-16). Hence, a Time Machine back up will always have something like 24 backups for each of the preceding 24 hours (23 of which are released to be overwritten the next day), 30 daily backups for the prior month (26 of which are released to be overwritten the next month), and as many weekly backups as the drive can hold.

[8] In a similar case where Malibu had sued the wrong party (who was represented by the undersigneds), Paige actually had to be ordered by Judge Roberts of the Eastern District of Michigan to supplement his affidavit to specifically state that no evidence of infringing files or of their deletion had been found on the defendant's hard drive. (See Exhibit _, 9-17-14 order USDC ED Mich. 13-cv-12217.)

IP address.  Third, being perhaps the most glaring omission of all, while the Paige Report expounds on the discovery of the uTorrent client (i.e., a program) on Defendant's computer (a finding that Defendant's discovery answers said would be present) and a smattering of stray torrent files (which one would expect since Defendant uses uTorrent), the Paige Report makes no mention of the fact that no trace of the qBittorent client (i.e., the software that Malibu's expert Michael Patzer says was used for each alleged incident of infringement) was found anywhere on any of Defendant's computers or storage devices.  In the Argument section that follows, Defendant will address the opinions that actually were set forth in the Paige Report.

## ARGUMENT

**I. THIS COURT SHOULD EXCLUDE, OR OTHERWISE LIMIT, THE TESTIMONY OF PATRICK PAIGE BECAUSE THE OPINIONS CONTAINED IN HIS OCTOBER 5, 2015 REPORT ARE NOT BASED ON SUFFICIENT FACTS, ARE NOT THE PRODUCT OF RELIABLE PRINCIPLES AND METHODS THAT HAVE BEEN RELIABLY APPLIED, AND ARE OTHERWISE NOT ADMISSIBLE.**

In *Daubert v Merell Dow Pharm.s, Inc.*, 509 U.S. 579, 13 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), the Supreme Court held that the Federal Rules of Evidence, in particular Fed. R. Evid. 702 and 104(a), govern the admission of expert testimony and require that the trial judge "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589.  The Supreme Court later clarified that this gatekeeping obligation applies to all expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 143 L. Ed. 2d 238, 119 S. Ct. 1167 (1999). The "knowledge" requirement of Rule 702 requires "more than subjective belief or unsupported speculation," *Daubert*, 509 U.S. at 590; ,*Tamraz v Lincoln Elec. Co.*, 620 F3d 665, 670 (CA 6, 2010).  "Red flags" that demonstrate a lack of reliability include: (1) improper extrapolation, (2) reliance on anecdotal evidence, (3) reliance on temporal proximity, (4) insufficient information about the case, (5) failure to consider other possible

6

causes, (6) lack of testing, and (7) subjectivity. *Best v Lowe's Home Ctrs, Inc*, 563 F3d 171, 177 (6th Cir. 2009); *Downs v. Perstorp Comp., Inc.*, 126 F. Supp. 2d 1090 (E.D. Tenn. 1999).

The party proffering the expert testimony bears the burden of showing its admissibility. *Daubert*, 509 U.S. at 592 n. 10.  It is left to the discretion of the district court as to whether an evidentiary hearing is necessary in order to resolve a *Daubert* challenge.  See *Nelson v Tenn Gas Pipeline Co*, 243 F3d 244, 248-249 (6th Cir. 2001).

Moreover, given that *Daubert* not only requires that expert testimony be reliable but also relevant, FRE 404(b), 104(b), 401 and 403 are particularly applicable to the Paige Report.  Under FRE 404(b) "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Even if such other "bad acts' were relevant (for instance, on a theory other than propensity), under FRE 104(b), their relevance would be conditioned on establishing that they did, in fact occur.  Finally, any marginal relevance would have to be weighed against unfair prejudice. FRE 403.

**A.   Paige's Opinions that "Defendant Failed to Produce Relevant Computer Devices and Committed Perjury" Should Be Excluded.**

Paragraph 17 of the Paige Report presents a photograph obtained from Defendant's dropbox.  Cropped from the photograph by Paige are the images of Defendant's son J., and another boy not related to Defendant, N.H.  The metadata associated with the photograph establishes that it was taken on June 29, 2013 at Defendant's house at 343 Norwood, in Grand Rapids.  Another picture taken contemporaneously also depicts a young girl, A.P., who is also playing on an iPad.  Present at the home at that time was a man named Nick Peariso, who is the father of A.P. and is dating the mother of N.H., and who owned one of the MacBook computers seen on the table and two of the iPads. (Doc 115-2, Pg. ID 1142-1143; Affidavit, Doc 1201-1, Pg. ID 1198-1199.)

Paige was aware of the ages of Defendant's children, and should reasonably have realized that the picture he was referencing did not depict C., who was only two years old at the time.  It is obvious that he was scrutinizing Defendant's photo library, so he also must have seen the picture with A.P. in it.  Paige's assertion that the photo he references "does not show any guests" (Paige Report, ¶ 22) is demonstrably false, and his presumption that a picture of a guest's laptop taken in Grand Rapids in June 2013 is evidence that Defendant withheld a computer device that was used in Petoskey in February 2013 is not the product of a reliable method reliably applied. Instead, it has the hallmarks of all of the "red flags" identified by the Sixth Circuit.  See *Best, supra*, at 177.

Similarly, at ¶¶ 11-15 of the Paige Report, Paige tries to associate a random photo taken by Defendant on November 8, 2013 with an unrelated tweet sent on December 27, 2014, then he applies some absolutely false information to reach a wholly fabricated conclusion.  That is, the metadata associated with the photo in Paige Report ¶ 12 clearly establishes that it was taken at the Modustri offices located at 38 Commerce Avenue in Grand Rapids on November 8, 2013. The 1-terrabyte server backup associated with the icon in the photo belonged to Modustri.  The tweet issued on December 27, 2014 (over a year later) had nothing to do with the picture, and was referencing files that were turned over to Paige.  (Doc 115-2, Pg. ID 1141-1142.)  Moreover, Paige's assertions in ¶14 of his Report is simply false-- the testimony and evidence is very clear (see *supra*) that Defendant stopped working at Silversmith, Inc. in early January 2013.  Hence, Paige's erroneous presumption that the November 8, 2013 picture was taken while Defendant worked at Silversmith is just that -- erroneous.  Again, all of the "red flags" apply here.  *Best, supra* at 177; *Downs, supra* at 1120-1122.

To like effect, ¶¶ 24-26 of the Paige Report evince yet another speculation-driven conclusion that is demonstrably false. That is to say, during Paige's scrutiny of the photos in Defendant's Dropbox, he found the photo set forth in ¶ 25 of his Report. At the right side of the photo is an AOC monitor that Defendant still owns and Malibu is free to examine. (See Doc 115-2, Pg. ID 1143; Doc 120-1, ¶ 13, Pg. ID 1200.) Paige, however, apparently envisioned that the monitor <u>could</u> have been an AOC all-in-one computer. From the notion that this was a *possibility*, he then concluded that it <u>was</u> an all-in-one computer. From that erroneous conclusion, he further concluded that Defendant was hiding computer devices. Clearly, this is the kind of speculation that the Supreme Court decided should not be erroneously clothed with the imprimatur of reliable by coming from an "expert." See, *Daubert*, 509 U.S. at 590.

Similarly, and with the additional aspect that it calls Paige's computer "expertise" even further into question, Paige suggests that the presence of Google Drive URLs on Defendant's machine somehow establishes that Defendant had a Google Drive account that he failed to make available to Malibu. (Paige Report, ¶¶ 28-29.) But such URLs are produced when anyone clicks a link to someone else's shared file. (Doc 120-1, ¶14, Pg. ID 1200.) Apparently, if Defendant had ever directly downloaded one of the filings in this case, Paige would be accusing him of not disclosing all of the files stored on the computers of the United State District Court for the Western District of Michigan.

**B.     Paige's Opinion that "The Creation Date of the Volume on Defendant's Western Digital Erased All Data on the Western Digital Prior to December 17, 2013" Should Be Excluded.**

Defendant purchased a Western Digital external hard Drive to use to back up the files on his laptop computer, and has used it for that purpose since he obtained it. The hard drive itself was manufactured on May 2, 2012 in Taiwan (Doc 115-2, Pg. ID 1144). Paige, however, claims

9

that the hard drive was connected to Defendant's computer's "numerous times between October 2011 to December 2014." (Paige Report, ¶ 48.) Obviously, the hard drive could not have been used before it was even manufactured. When this was brought to this Court's attention with regard to Malibu's latest motion for sanctions, Malibu claimed that it was a "scrivener's error" and that the report should have read "October 2012 to December 2014." (Doc 122, p 5, Pg. ID 1299.) However, if it was a "scrivener's error" it was one that Paige also included in his February 13, 2015 Report, where it was supported by screenshots of log entries that showed months and days but no years. That report, itself, purported to provide the years of the log entries, but the earliest purported date is November 24, 2012. (See Ex _.)[9] Given Paige's propensity for "scrivener's errors" it is more likely that he either made a bigger mistake than Malibu's counsel gives him credit for, or there is malfeasance going on here.

Secondly, Paige does not appear to understand how the Time Machine Program works, and Malibu has suggested to this Court that the Western Digital drive was full when examined by Paige and that older backups had been written over by newer backups. Paige's own supplemental report from March 19, 2015 reveals that there were 335 Gigabytes of space still available on the hard drive when he examined it on March 4, 2015, and all of the hourly, daily, and weekly backups that one would expect to see (72 in total) were present on the drive going all

---

[9] Paige's 2-13-15 Report purports that the "search hits" evincing the times that the Western Digital drive was connected to Defendant's MacBooks were exported to a folder in his final report case files entitled "USB Device Search Hits" and are reviewable by viewing those files. (Ex._, p 10.) There are actually two such folders (presumably, one for each MacBook). The contents of those folders are attached hereto as Exhibit _ and Exhibit _. To save this Court time, nothing in those folders demonstrates factual support for Paige's claims as to <u>when</u> the Western digital drive was connected to Defendant's computers.

the way back to the date that it was first put into service as a "time machine." (Exhibit _.) See fn 6, infra.[10]

Paige's presumption that Malibu's files were on the Western Digital drive in the days from its purchase to when it was formatted and put into use is sheer speculation, and is a conclusion not warranted by the facts.

C.. **Paige's Opinions that "Defendant Used BitTorrent and Committed Perjury Regarding his BitTorrent Use" and that "Defendant's Intentional Failure to Produce Relevant Devices and Other Evidence Makes it Likely that Defendant is the Infringer" Should Both Be Excluded.**

At ¶¶ 32-45 of the Paige Report, Paige offers the "expert" opinion that Defendant was lying about his BitTorrent use, and had perjured himself. At ¶¶ 56-74, the Paige Report offers the "expert" opinion that Defendant intentionally failed to turn over computer devices and that this, and the fact that he *fits the profile* of the infringer means that he is probably the infringer. Even if these opinions were not already fatally flawed as having been inferred from the erroneous conclusions of Paige that were previously refuted, they are exactly the sort of "expert" opinion that are barred by *Daubert* and its progeny.

First, a jury does not need someone like Paige to tell them whether defendant was lying or had committed perjury or what Defendant's intent was. An expert cannot testify about a witness' credibility. The jury, not the expert, evaluates credibility. *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 448 (6th Cir. 2011) (witness credibility is solely

---

[10] It is interesting that Paige's March 19, 2015 supplemental report regarding the Western Digital drive describes (as if it were an alarming event) the fact that the Time Machine files show 16 hourly backups the day that Defendant shipped the drive to Paige, and daily backups in the month prior. (Exhibit _, p _.) Paige seems to be suggesting that Defendant, driven by some nefarious purpose, engaged in a frenzy of backups that were related to turning over the hard drive. In truth, however, Time Machine makes a back up every hour of every day. But it only keeps them for 24 hours, after which it overwrites all but one of them. Similarly, it keeps daily backups only for a month, then discards all except those it uses as weekly backups.

11

within the jury's province.); *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999) ("Regardless of the intent or motivation of the expert in commenting on the eyewitness testimony, we agree . . . that the testimony regarding the credibility of eyewitness testimony was improper."); *Conde v. Velsicol Chemical Corp.*, 804 F.Supp. 972, 986 (S.D. Ohio 1992) ("It is the province of the jury to weigh the credibility of witnesses"). Such "human lie detector" testimony is universally rejected. See, e.g., *United States v. Kasper*, 58 M.J. 314, 315 (C.A.A.F. 2003) (human lie detector testimony "usurps the jury's exclusive function to weigh evidence and determine credibility" ); *People v Graham*, 173 Mich App 473, 478; 434 NW2d 165 (1988) ("[a]n expert cannot be used as a human lie detector to give a stamp of scientific legitimacy to the truth or falsity of a witness' testimony"). Here, Defendant has set forth evidence establishing that he neither lied about his Bittorrent use nor hid computer devices from Malibu. (See Doc-115-2; Doc 120-1.) If Malibu has evidence on which it feels that it can argue otherwise to the jury, it may do so. The jury does not need Paige, of all people, to tell them who to believe.

<u>Second</u>, Paige's opinion that Defendant fits the profile of the infringer is just an attempt to put Malibu's counsel's argument in Paige's mouth. For instance, Malibu believes that it can establish that Defendant has an interest in camping, outdoor and survivalist activities. Allegedly, the "expanded surveillance" of Defendant's IP address suggests that a qBittorrent user with similar interests was using Defendant's IP address. Paige wants to opine that the odds of two people living in close proximity in Petoskey, Michigan with both being interest in camping and survivalism is so low that the jury should presume that Defendant was the one who downloaded that information and, a through an additional leap of logic, was also the infringer of Malibu's copyrights. However, while it may be fair game for Malibu's counsel to <u>argue</u> that to the jury, there is no scientific basis, study, or specialized knowledge on the part of Paige that justifies

having him present, in the form of an expert opinion, Malibu's counsel's theory. See *Nelson, supra*, 243 F.3d at 254 (testimony relying on "the *ipse dixit* of the expert" is not admissible).

Third, the entirety of the opinions here challenged appear to rely on the this syllogism: (1) Defendant engaged in other copyright violations and lying; (2) therefore he is the kind of person who violates copyrights and lies about it; and (3) therefore, the jury should believe that, in all likelihood, Defendant committed the infringements alleged in this case and is now lying about it. However, unlike the "profile" argument discussed above, this would not even be permissible for Malibu's counsel to argue, since evidence may not be admitted to show conduct in conformance with character. See FRE 404(b). Moreover, Paige cannot even show that Defendant committed other incidental acts of infringement (he simply makes assumptions in that regard), so it fails under FRE 104(b).

## CONCLUSION

It is clear from the nature of most of the opinions in the Paige Report that his conclusions are not actually deducible from his premises (and not even accounting for the falsity of many of his premises). This is somewhat understandable when one considers that his Report is the product of *inductive logic* rather than *deductive logic*. That is, if one starts with the assumption that Defendant is the infringer (as Paige has obviously done here), and then works backward to extrapolate the premises, one reproduces Paige's results. For example: (1) Paige assumes Defendant is the infringer; (2) Paige finds no evidence supporting that assumption on Defendant's computers and file storage devices; so (3) Paige concludes that Defendant withheld computer devices, hid evidence or lied. The problem with that type of reasoning is that the initial premise (which is actually the conclusion) is not supported by the syllogism.

Therefore, based on the overall lack of reliability in Paige's Report (only some of which was detailed herein, given space limitations), Defendant respectfully requests that his entire Report be excluded. Accordingly, and pursuant to Fed. R. Civ. P 26(b)(2) and this Court's scheduling order, Paige would be precluded from testifying as an expert or offering any opinion at all. However, Defendant understands that Paige might still be called as a fact witness to testify as to such matters as the fact that he examined Defendants computers and storage files, and the fact that he found no traces of Malibu's copyrighted works. The parties might even be able to come up with an appropriate stipulation obviating the need for his limited testimony.

**WHEREFORE**, Defendant respectfully requests that this Court grant his Motion, in whole or in part, and grant such other relief as is just and proper.

Respectfully submitted,

| | |
|---|---|
| /s/ Derek S. Wiczynski | /s/ Lincoln G. Herweyer |
| Derek S. Wilczynski (P57079) | Lincoln G. Herweyer (P55742) |
| Attorney for Defendant | Attorney for Defendant |
| 2095 E. Big Beaver Rd., Ste 400 | 35054 23-Mile Rd., Ste 115 |
| Troy, MI 48083 | New Baltimore, MI 48047 |
| (248) 519-9000 | (586) 716-1562 |