# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Case No.:  1:13-cv-00360-RJJ |
| *v.* | ) | HON. ROBERT J. JONKER |
| | ) | MAG. JUDGE:  RAY KENT |
| JESSE RALEIGH, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**NICOLETTI & ASSOCIATES, PLLC**
PAUL J. NICOLETTI [P-44419]
Attorney for Plaintiff
33717 Woodward Avenue, Ste. #433
Birmingham, MI 48009
Landline: (248) 203-7800
eFax: (248) 928-7051
pauljnicoletti@gmail.com
http://www.nicolettilawplc.com

**BLANCO WILCZYNSKI, PLLC**
Derek S. Wilczynski [P-57079]
Attorneys for Defendant
2095 East Big Beaver, Suite 400
Troy, MI 48083
(248)519-9000
Fax:  (248) 519-9001
dsw@blancopc.com

**LINCOLN G. HERWEYER, P.C.**
LINCOLN G. HERWEYER [P-55742]
Co-Counsel for Defendant
35054 Twenty-Three Mile Road, Suite 115
New Baltimore, MI  48047
(586)716-1562
Fax: (586) 716-1867
lgherweyer@netscape.net


## DEFENDANT'S BRIEF IN SUPPORT OF HIS
## MOTION FOR SUMMARY JUDGMENT AND FOR ATTORNEY FEES

### * * *   ORAL ARGUMENT REQUESTED   * * *

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES ....................................................................................................... iii

STATEMENT OF QUESTIONS PRESENTED ........................................................................ v

INTRODUCTION........................................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................... 3

FACTUAL BACKGROUND........................................................................................................ 5

LEGAL ARGUMENT ................................................................................................................. 12

      I.      THERE IS NO EVIDENCE THAT DEFENDANT VIOLATED THE
             COPYRIGHT ACT OR THAT HE OBTAINED OR POSSESSED ANY
             OF MALIBU MEDIA'S COPYRIGHTED MATERIALS AND,
             THEREFORE, THIS CASE SHOULD BE DISMISSED................................12

      II.     DEFENDANT SHOULD BE AWARDED ATTORNEY'S FEES..................... 18

CONCLUSION ........................................................................................................................... 20

## INDEX OF AUTHORIES

## Cases Cited                                                           Page

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52,
    106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ...................................................12

*Arendale v. City of Memphis*,
    519 F.3d 587, 601 (6th Cir. 2008)..............................................................15

*Bridgeport Music, Inc. v. Rhymes Syndicate Music*,
    376 F3d 615, 621 (6th Cir. 2004) ...............................................................14

*Bridgeport Music, Inc. v. WB Music Corp.*,
    508 F.3d 394, 398 (6th Cir. 2007) ..............................................................14

*Bulthuis v. Rexall Corp*,
    789 F.2d 1315, 1318 (9th Cir. 1985)...........................................................15

*Ellis v. Diffie*,
    177 F.3d 503, 506 (6th Cir. 1999) .............................................................. 16

*Evers v. General Motors*,
    770 F.2d 984, 986 (11th Cir. 1985) .............................................................15

*Feist Pub'lns, Inc. v. Rural Tel. Serv. Co.*,
    99 U.S. 340, 361, 111 S. Ct. 1282, 1296,
    13 L. Ed. 2d 358 (1991) ............................................................................14

*Hayes v. Douglas Dynamics*,
    8 F.3d 88, 92 (5th Cir. 1993).....................................................................15

*Huckaby v. Priest*,
    636 F.3d 211, 216 (6th Cir. 2011) ..............................................................12

*Martinez v McGraw*,
    581 F App'x 512, 517 (CA 6, 2014)............................................................ 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
     U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) .........................12

*Merit Motors, Inc. v. Chrysler Corp.*,
    187 U.S. App. D.C. 11, 569 F.2d 666, 673 (D.C. Cir. 1977).......................15

*Mid-State Fertilizer v. Exchange Natl. Bank*,
    877 F.2d 1333, 1339 (7th Cir. 1989).........................................................15

*Raum v. Norwood,*
    93 F. App'x 693, 696-97 (6th Cir. 2004) ............................................................. 16

*Riviera Distribs v. Jones,*
    517 F3d 926 (2008, CA7 Ill) ................................................................................. 20

*Stromback v. New Line Cinema,*
    384 F.3d 283, 293 (6th Cir. 2004) ....................................................................... 14

*Sultis v. General Motors Corp.,*
    690 F. Supp. 100, 103 (D. Mass. 1988) ............................................................... 15

## Statutes

17 U.S.C. §101 ......................................................................................... 2, 3, 12, 18, 21

17 U.S.C. §101, *et seq* .................................................................................................. 21

17 U.S.C. § 505 ......................................................................................................... 19

## Court Rules

Fed.R.Civ.P. 56 ......................................................................................................... 15

Fed. R. Civ. P. 56(c) ........................................................................................... 19, 21

Fed. R. Civ. P. 41(a)(2) ............................................................................................. 20

Fed. R. Civ. Pro. 54(d)(2)(B)(i) ............................................................................. 2, 20

## STATEMENT OF QUESTIONS PRESENTED

**I. SHOULD PLAINTIFF'S CASE BE DISMISSED WITH PREJUDICE BECAUSE THERE IS NO EVIDENCE THAT THE DEFENDANT ILLEGALLY OBTAINED OR POSSESSED ANY COPYRIGHT PROTECTED MEDIA OWNED BY THE PLAINTIFF?**

Defendant says "yes."

Plaintiff says "no."

**II. SHOULD DEFENDANT BE AWARDED ATTORNEY'S FEES?**

Defendant says "yes."

Plaintiff says "no."

## INTRODUCTION

This is not a complex case and, in Defendant Jesse Raleigh's ("Raleigh") estimation, not a complex Motion for Summary Judgment. As the Court will see in the factual background below, Plaintiff Malibu Media ("Malibu"), a notorious purveyor of Internet pornography and serial Plaintiff in copyright infringement cases[1], accused Raleigh of illegally possessing Malibu's pornography. Raleigh has steadfastly maintained that he did not illegally download or possess any of Malibu Media's porn.

Discovery proved Raleigh to be correct. Raleigh has had two laptops, two iPads, and two external hard drives, and his two online storage services scrutinized by Malibu's computer forensics examiner, Patrick Paige. Those examinations have resulted in the following: no Malibu Media material was found on any of Raleigh's devices or services. Moreover, there is no evidence whatsoever that Raleigh <u>ever</u> had any of Malibu Media's copyrighted material. That is to say, there is no evidence that he ever downloaded the material, that he ever deleted any of the material, or that it was ever on his system at any point in time. If Raleigh ever had downloaded any of Malibu Media's pornography, it would have been traceable to one of Raleigh's devices. It was not so traced. As a result, this case cannot go to a jury and must be dismissed now as a matter of law, with prejudice.

In addition, Raleigh is requesting that the Court also schedule this matter for a hearing to determine the award of attorney's fees, to which Raleigh is entitled pursuant to the Copyright Act. Raleigh has litigated this matter since July of 2013, after he was served with the Complaint, despite telling Malibu Media that (a) he did not illegally copy

---

[1] A review of PACER reveals that Malibu Media is a litigant in more than 4,000 civil cases, with the overwhelming number of listings designating Malibu as the Plaintiff.

any of Malibu's pornography and (b) that he had an open network at the files were apparently copied, and ***anyone*** could have used this network to download the porn.

Accordingly, the facts of this case, as well at the interest of justice, lead to only one conclusion – that this Court should enter an Order pursuant to Fed. R. Civ. Pro. 56(c) dismissing this case and, pursuant to 17 U.S.C. §101, *et seq.,* setting this matter for a hearing to determine an award of Defendant's attorney fees under Fed. R. Civ. Pro. 54(d)(2)(B)(i).

## FACTUAL BACKGROUND

### Malibu Media and the Complaint Against Jesse Raleigh

Plaintiff, Malibu Media, is a notorious producer of pornographic material. On June 23, 2013, Plaintiff filed an Amended Complaint[2] against Raleigh, alleging violations of the Copyright Act, 17 U.S.C. §101, *et seq.* Specifically, Plaintiff claims that Raleigh illegally uploaded to Malibu's investigator, IPP, through a process called "BitTorrenting," the following pornographic movies, for which Malibu Media claims copyright protection:

| **Pornographic Movie** | **Date** |
| --- | --- |
| Spur of the Moment | February 11, 2013 |
| A Little Rain Must Fall | February 11, 2013 |
| Sacred Romance | February 15, 2013 |
| Formidable Beauty | February 16, 2013 |
| Inside Perfection | February 16, 2013 |
| Unfogettable View #2 | February 17, 2013 |

To be clear, Malibu does not claim that Raleigh illegally *downloaded* the afore-mentioned pornography but, rather, that IPP downloaded bits of Malibu's pornography from an unidentified computer through a modem assigned to Raleigh by Charter Communications. According to Malibu, the pornography referenced above was BitTorrented through a Charter Communications modem (that is, a modem leased to Raleigh through his cable company, Charter Communications), with a specific Internet

---

[2] Plaintiff filed its original Complaint on April 1, 2013 against a "John Doe" Defendant.  [D.E. 1].  On June 23, 2013, Malibu filed an amended Complaint naming Raleigh as the Defendant.  [D.E. 10].

Protocol, or "IP," address.  Malibu does not, however, know the IP address of the computer from which IPP downloaded the bits of its own pornography.

On August 23, 2013, Defendant, Jesse Raleigh (hereinafter "Raleigh"), filed an Answer to the Amended Complaint on August 13, 2013.  [D.E. 16].  In his Answer to the Amended Complaint, Raleigh denied each and every allegation that he violated the Copyright Act.  [D.E. 16].

More specifically, Raleigh has maintained that he never downloaded or possessed Malibu's copyrighted pornography, that he was not at home in Petoskey when the material was BitTorrented in February of 2013 (he was in Grand Rapids on business), and that there were multiple, equally possible, ways that the pornography could have been downloaded.  For example, Raleigh works in the information technology ("IT") field, and his friends, many of whom visited his apartment, are also familiar with technology.   It is possible that a friend, acquaintance, or associate of Raleigh downloaded the material.  Finally, Raleigh did not have a password protected modem and, as a result, anyone within distance of his modem could have connected to it wirelessly.

**Jesse Raleigh**

The Defendant, Jesse Raleigh, works in the information technology ("IT") field. In late 2012-early 2013, Raleigh lived in Petoskey with his wife, Heather, and their two boys.  (**Ex. A**, Raleigh Deposition at 6; see also **Ex. B**, Affidavit of Raleigh).  Raleigh worked for a company called Siversmith at the end of 2012 and, in early 2013, he started working at a company called Agent X Marketing.  (**Ex. A**, at 6-8).  When he started working for Agent X, Raleigh lived with a friend, Ryan Jackson, in Grand Rapids while his wife and children remained in Petoskey.  (**Ex. A**, at 6).  In addition to living with

4

Ryan Jackson, Raleigh also lived with his wife's relatives in the Grand Rapids area.  (**Ex. A**, at 8).  At some point around March of 2013, Raleigh's wife and children moved to Grand Rapids, where they rented a house.  (**Ex. A**, at 8-9).

Raleigh received his Internet access through a modem supplied by his "cable" company, Charter Communications.  Because Mr. Raleigh works in the IT field, and many of his friends also work in the IT field, his modem was not password protected. (**Ex. A**, at 47).  According to Mr. Raleigh, it was inconvenient to have to share his password with everyone who visited his home.  (*Id.*)  According to Raleigh, "nearly every single person" he knows and interacts with has a computer, carries the computer with them, and brings the computers to his house.  (**Ex. A**, at 48).

**The Discovery Process**

The parties engaged in the discovery process, during which Raleigh continued to deny that he illegally obtained or possessed any of Plaintiff's pornographic (or other) material.  Raleigh also denied illegally using BitTorrent.  (**Ex. A,** Raleigh's Answers to Discovery and **Ex. B** Supplemental Answers to Discovery).  As the Court knows from Raleigh's Response to Malibu's Motion for Sanctions [D.E. 109], because Raleigh works in the IT industry, he has reason to ***legally*** BitTorrent.

The analysis of Raleigh's electronic devices proved to be a comedy of errors. Malibu demanded to physically examine and analyze Raleigh's electronic devices. Raleigh had no objection to Malibu examining his devices, but wanted a Protective Order entered.  The parties agreed to a Protective Order at a hearing held on August 26, 2014 [D.E. 38], which was entered two months later on October 27, 2014. [D.E. 47]. The Order was prepared by Malibu Media's attorneys, reviewed by Raleigh's attorneys, and mutually agreed upon by the parties.  Significantly, the Order specifically lists the

devices requested by Malibu Media, and was *limited* to the following devices:

(a) Two Apple Mac Book Pros;

(b) An original iPad; and

(c) An iPad 2.

[D.E. 47].

Despite the Protective Order being entered, Plaintiff, who had the burden of providing information to Raleigh by which Raleigh would know how to produce the requested devices, did not communicate any instructions to either Raleigh or his counsel.   In fact, Raleigh's attorney attempted, through email, to obtain these instructions from Malibu Media's attorney, despite numerous requests by Raleigh's counsel, attached as Ex. A to D.E. 80, Raleigh's attorney did not receive a timely response from Malibu Media's attorney.   This was particularly important because Malibu Media's counsel indicated that he intended on having the device imaged by Stot T. Matthews, an individual working at a company in Southfield, Michigan.   Plaintiff's counsel could have remedied this by simply responding to defense counsel's emails but, for whatever reason, chose not to do so.

Eventually, Raleigh produced the hard drives to Plaintiff's technician/ transporter, who was then, in turn, supposed to forward these devices to Plaintiff's analysis expert, Patrick Paige, on December 3, 2014.   However, the technician/transporter forgot that he had the devices in the back of his car and did not transport them to Mr. Paige until December 22, 2014.   (D.E. 80, Ex. B, emails from Plaintiff's counsel).

Plaintiff's counsel then represented to the Court, through the former Magistrate assigned to the case, on December 9, 2014, that Mr. Paige would have the devices

analyzed and a report produced by the end of 2014. Plaintiff's counsel insisted on using Patrick Paige and would not allow anyone else to analyze the hard drives and/or produce a report. However, Mr. Paige was apparently delayed due to a pre-planned vacation and another hearing/trial. This caused not just a three week delay but, because Mr. Paige had a pre-planned vacation as well as a hearing/trial, it delayed matters until February 13, 2015, at which time, Plaintiff finally served Patrick Paige's first report on Defendant. (**Ex. C**, Patrick Paige's first report).

To make matters even worse, Plaintiff did not file a Status Report required by this Court, despite being notified by defense counsel that the report was due and that defense counsel had no objection to an extension of time by which the report could be filed. (D.E. 80, Ex. C, emails between Plaintiff and defense counsel). Instead, Plaintiff's counsel simply let the deadline pass and did not file the report with this Court. Instead, Plaintiff filed a Motion for Extension of Time to Conduct Discovery. This was not the fault of Defendant or Defendant's counsel.

On February 17, 2015, after Patrick Paige issued his February 13, 2015 report, Plaintiff's counsel emailed defense counsel demanding that Raleigh produce two external hard drives for examination by Paige. Raleigh's counsel opposed this request because those hard drives had been produced to Kevin Pursley, the courier who to was transmit the drives to the company to perform imaging of them, on December 3, 2014. Nonetheless, Plaintiff's counsel insisted on physically obtaining the hard drives a second time. (D.E. 80, Ex. E, emails between counsel regarding these devices). Even though Raleigh's attorneys were under no obligation to allow an additional inspection of this external hard drive, they consented and requested that Raleigh send the external hard drive to Malibu Media's experts. Paige then issued a second report on March 19, 2015 in

7

which he stated that he did not find any of Malibu Media's copyrighted material on the hard drives.  (**Ex. D**, Patrick Paige's second report).

On May 29, 2015, Malibu demanded to examine Raleigh's Toshiba external drive (even though this drive was delivered to Plaintiff's and they neglected to examine it during the time they had it), a PlayStation 3 video game console, his Dropbox account, his Cloud storage, and his social media accounts.  (**Ex. E**, May 29, 2015 email).  Raleigh gave Malibu access to his online accounts by producing his usernames and passwords for the accounts.  (Notably, to date, Malibu has not confirmed for Raleigh that it is no longer accessing these accounts and has not allowed Raleigh to change his passwords.  Moreover, in previously filed documents with the Court, Malibu has disclosed Raleigh's passwords.)  These devices were provided to Plaintiff on August 25, 2015 and usernames and passwords for the iCloud and DropBox were provided to Plaintiff's counsel at that time as well.

On September 24, 2015, Plaintiff took the deposition of Raleigh and his wife, Heather.  Even though Plaintiff had reviewed the contents of the iCloud and DropBox, it did not ask Raleigh or his wife any questions regarding the content.  In fact, Plaintiff's counsel never directly asked Raleigh if he ever downloaded or possessed any of the copyrighted material.  On October 15, 2015, Patrick Paige issued his third and final report.  (**Ex. F**, Patrick Paige's third report).

**<u>Summary of Discovery</u>**

In sum, Malibu had the following devices examined and analyzed by its experts:

2 laptops, belonging to Jesse Raleigh and his wife;

2 ipads;

1 Western Digital external hard drive;

8

1 Toshiba external hard drive

1 PlayStation 3 video game console;

Jesse Raleigh's social media accounts;

Jesse Raleigh's Dropbox account; and

Jesse Raleigh's iCloud account.

In addition to the examination and analysis conducted on Raleigh's devices, Malibu also conducted the following written discovery:

| | |
|---|---|
| February 27, 2014 | Defendant answered Plaintiff's First Set of Requests to Produce; |
| June 2014 | Defendant answered Plaintiff's Interrogatories; |
| October 10, 2014 | Defendant provided supplemental answers to Plaintiff's First Set of Interrogatories; |
| October 10, 2014 | Defendant provided supplemental answers to Plaintiff's first set of Requests for Production; |
| July 16, 2015 | Defendant answered Plaintiff's Second Request to Produce; |
| July 16, 2015 | Defendant answered Plaintiff's Request to Inspect Land (Plaintiff requested to inspect the apartment Raleigh had not lived at in years); |
| October 1, 2015 | Defendant answered Plaintiff's Third Set of Requests to Produce; |
| October 1, 2015 | Defendant answered Plaintiff's First Set of Requests for Admission. |

## **Patrick Paige's Reports**

Malibu's expert witness, Patrick Paige, produced three reports on the following dates, with all of the reports that the devices examined by Paige did not contain Malibu Media's copyrighted materials:

| | |
|---|---|
| Initial Report – February 13, 2015 | Examination of: MacBook, MacBook, iPad, and iPad; |
| Second Report – March 19, 2015 | Examination of: Western Digital 2TB Hard Drive; |
| Third Report – October 5, 2015 | Examination of: Toshiba 2TB external Hard Drive; PlayStation 3; iCloud contents; DropBox contents. |

(**Exs. C, D,** and **F**).

Specifically, in the February 13, 2015 report, Paige stated as follows:

MacBook C02HW056DV31 Findings: A search of the hard drive for evidence relating to Malibu Media movies was **negative**. (**Ex. C**, p. 3, emphasis added).

MacBook 340269NBATM Findings: A search of the hard drive for evidence relating to Malibu Media movies was **negative**. (**Ex. C**, p. 8, emphasis added).

IPad Devices & Findings: On the hard drive I was provided were Cellebrite extractions for 2 Apple iPad devices. Both devices were searched using Cellebrite's Physical Analyzer software. The search was **negative** for Malibu Media's works and for BitTorrent use and related activity. (**Ex. C**, p. 13, emphasis added).

In the March 19, 2015 report, Paige examined Raleigh's "Time Machine" backup external hard drive (that is, the external hard drive Raleigh used to back up his machines) and concluded:

A search was conducted on the drive for evidence of Malibu Medias (sic) copyrighted works and BitTorrent use. The search was **negative** for Malibu's movies.

(**Ex. D**, p. 4).

In his October 5, 2015 report, Paige did not find any evidence of Malibu Media's copyrighted pornography on Raleigh's PlayStation 3, in his iCloud account, or in his DropBox account. (See, **Ex. F**, Paige Report of October 5, 2015).

Raleigh has filed a Motion in Limine to Preclude Patrick from testifying in this case on the grounds that his testimony is speculative in nature and does not meet the threshold for expert testimony pursuant to *Daubert*.

## STANDARD OF REIEW

Circuit Court of Appeals reviews *de novo* a District Court's grant of summary judgment. *Huckaby v. Priest*, 636 F.3d 211, 216 (6th Cir. 2011). Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the District Court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## LEGAL ARGUMENT

I.  **THERE IS NO EVIDENCE THAT DEFENDANT VIOLATED THE EXCLUSIVE RIGHTS OF ANY OF MALIBU MEDIA'S COPYRIGHTED MATERIALS AND, THEREFORE, THIS CASE SHOULD BE DISMISSED.**

**Plaintiff's Theory of Liability.**

Plaintiff has brought this case pursuant to the Copyright Act, 17 U.S.C. §101, *et seq*. There are three types of liability for copyright infringement: direct, contributory, and vicarious. Plaintiff has only alleged a theory of direct infringement. Plaintiff's theory of liability is that, because the Charter Communications modem at issue was leased to Raleigh, he is the most likely person to illegally download and possess Malibu's copyrighted material. Like most of their cases, Malibu operated under an initial hope that Raleigh would either admit to violating the Copyright Act or would act as Malibu's

involuntary agent and unearth evidence as to who, if anyone, actually downloaded Malibu's works.

When Raleigh declined to emulate Malibu by accusing individuals on the mere possibility that it was them, Malibu's tactic changed. It demanded to review and analyze Raleigh's hard drives (Raleigh is using "hard drives" for all of the devices Malibu examined.) When the review of Raleigh's hard drives did not reveal any of Malibu's allegedly copyrighted works, it changed course again, this time accusing Raleigh of committing perjury and lying about the number and type of devices he actually owned by filing a motion for sanctions. [D.E. 108] Malibu failed to provide any credible support for these allegations and, in fact, was proven to be wrong with its allegations by the metadata contained in photographs in Raleigh's DropBox [see D.E. 116] as well as Plaintiff's misrepresentations regarding Raleigh's testimony.

At the hearing for Malibu's motion for sanctions, Malibu's attorneys advanced the argument that Raleigh must be the "infringer" because he fits the "profile" of an infringer due to the fact that Raleigh used "uTorrent" to download files that Malibu claims (but has not provided evidence to establish) were illegally downloaded. According to Malibu, because Raleigh, allegedly "illegally" BitTorrented certain movies, books, and music during a certain time period, he must be the infringer. Malibu has enlisted the help of Patrick Paige to testify that, in his opinion, because Raleigh fits the profile of an infringer, he must have illegally downloaded Malibu's copyright protected material. Patrick Paige, however, is the subject of Defendant's Motion in Limine to preclude him from testifying and should not be allowed to provide any testimony, affidavits, or support for Malibu's response. (Even if Paige's reports were allowed to be used, they are so lacking in facts and analysis that would not assist the Court.)

There is simply no evidence Raleigh ever owned or possessed any of the copyrighted works at issue in this case.  Rather, Plaintiff's case is based solely on speculation and conjecture and, accordingly should be dismissed.

**Direct Infringement of Copyright.**  "Direct copyright infringement occurs when anyone 'violates any of the exclusive rights of the copyright owner.' "*Bridgeport Music, Inc. v. WB Music Corp.,* 508 F.3d 394, 398 (6th Cir. 2007)(quoting 17 U.S.C. § 501(a)).  "Subject to certain exceptions . . . the owner of a copyright has the exclusive rights (1) to reproduce the copyrighted work; (2) to prepare derivative works; (3) to distribute copies; (4) to perform publicly a copyrighted work; and (5) to display publicly a copyrighted work." *Stromback v. New Line Cinema,* 384 F.3d 283, 293 (6th Cir. 2004)(citing 17 U.S.C. § 106). "A plaintiff may bring a claim against a person who infringes any of the plaintiff's exclusive rights in a copyright under § 106 by demonstrating two elements: '(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original.'" *Id.* (quoting *Feist Pub'lns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991)).

**Other Theories of Liability for Copyright Infringement.**  "Contributory infringement occurs when one, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *Bridgeport Music, Inc. v. Rhyme Syndicate Music,* 376 F.3d 615, 621 (6th Cir. 2004). Furthermore, "[a] defendant can be held vicariously liable if he enjoys a direct financial benefit from the infringing activity and has the right and ability to supervise the infringing activity." *Id.* (internal quotation marks and citation omitted).

**Speculation and Conjecture.**  In order to defeat a motion for summary judgment an expert opinion must be more than a conclusory assertion about ultimate

legal issues. *Bowen v. Manchester*, 966 F.2d 13, n.16 (1st Cir. 1992). See also *Moody v. Boston and Maine Corp.*, 921 F.2d 1, 5 (1st Cir. 1990); *Sultis v. General Motors Corp.*, 690 F. Supp. 100, 103 (D. Mass. 1988).   The evidentiary rules regarding expert testimony at trial were "not intended . . . to make summary judgment impossible whenever a party has produced an expert to support its position." *Merit Motors, Inc. v. Chrysler Corp.*, 187 U.S. App. D.C. 11, 569 F.2d 666, 673 (D.C. Cir. 1977).  As with all other evidence submitted on a motion for summary judgment, expert affidavits must be reviewed in light of Fed.R.Civ.P. 56.

Where an expert presents "nothing but conclusions -- no facts, no hint of an inferential process, no discussion of hypotheses considered and rejected", such testimony will be insufficient to defeat a motion for summary judgment. *Mid-State Fertilizer v. Exchange Natl. Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989). See also *Evers v. General Motors*, 770 F.2d 984, 986 (11th Cir. 1985); *Bulthuis v. Rexall Corp*, 789 F.2d 1315, 1318 (9th Cir. 1985).  Although an expert affidavit need not include details about all of the raw data used to produce a conclusion, or about scientific or other specialized input which might be confusing to a lay person, it must at least include the factual basis and the process of reasoning which makes the conclusion viable in order to defeat a motion for summary judgment.  *Hayes v. Douglas Dynamics*, 8 F.3d 88, 92 (5th Cir. 1993).

In responding to a properly supported summary judgment motion, the nonmoving party must come forward with "sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008).  A plaintiff must provide more than "mere supposition" to avoid dismissal.  A plaintiff's claim may not be

inferred through mere speculation or conjecture.  *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999).  A plaintiff cannot rely on unsupported inferences to prove his or her claim. See e.g., *Raum v. Norwood*, 93 F. App'x 693, 696-97 (6th Cir. 2004); Ellis, 177 F.3d at 506;  *Martinez v McGraw*, 581 F App'x 512, 517 (CA 6, 2014).

Raleigh has consistently denied ever illegally obtaining or possessing any of Malibu Media's copyrighted works.  (See D.E. 16, Raleigh's Answer to Complaint).  In his Answers to Interrogatories, Defendant explained that he was in Grand Rapids at the time of the first three incidents of infringement[3], and was driving to Grand Rapids at the time of the fourth and fifth incidents.  He spent the 16th at his parents' house in Alanson, and returned to Grand Rapids on the 17th.  (D.E. 122-2, p 9, Pg. ID 1267.)

Plaintiff cannot establish a *prima facie* case that Raleigh violated the Copyright Act based on the evidence in the record in this case, whether through the expert testimony of Patrick Paige or if the Court excludes that testimony.   There is no evidence in the record in this case that Raleigh copied any of Malibu Media's copyrighted works. In fact, all of the evidence establishes the exact *opposite,* that Raleigh did not possess *any* of Malibu's pornography at any time.

Malibu's theory of the case is based entirely on speculation.  According to Malibu, the modem and/or Internet connection leased to Raleigh from Charter Communications was used to upload the pornographic movies for which Malibu claims it owns copyrights from February 11, 2013 to February 17, 2013.   Malibu further believes that because Raleigh's Internet connection was used to upload the movies, they must have been possessed by Raleigh at some point in time, contrary to Malibu's copyrights.

---

[3] Malibu has in its possession numerous photographs from Raleigh's iCloud and DropBox, the metadata of which evinces Defendant's presence at 38 Commerce Ave, Suite 102, Grand Rapids, Michigan, at the times in question.  Malibu knows, therefore, that Raleigh was not in Petoskey at the time the infringement occurred.

The reason this is speculation is because Patrick Paige examined not just Raleigh's laptop and his iPad, but Raleigh's wife's laptop and iPad Raleigh's PlayStation 3, Raleigh's iCloud account, and Raleigh's DropBox account, and did not find any of the pornographic movies at issue stored in or on any those devices or storage facilities. Even more telling, however, is that there is no evidence that Raleigh ever possessed any of the allegedly copyrighted works at issue, or that he deleted those works at some point in time.   There is no "footprint" on any of Raleigh's devices or in his "cloud-based" storage facilities to indicate which would support a theory that Raleigh ever possessed or owned the copyrighted material.    Instead, there is a complete absence of any copyrighted works on Raleigh's devices and storage facilities currently, or that they ever existed on those devices and storage facilities.

When information is "Deleted" from a computer hard drive, it is initially marked as deleted, but the contents of the file are not immediately removed or overwritten. Rather, the blocks which formerly contained File A are no longer reserved, and may be overwritten by subsequent writes to the drive.   In a drive with a spinning magnetic platter for storage, the drive typically attempts to optimize writes such that a file is written in a single contiguous series of blocks.  (**Ex. B**, Raleigh Affidavit).

This increases the efficiency by which they can be read back and reduces seek times in accessing the files.   As a result, deleted files are often wholly or partly recoverable and detectable long after having been erased.   On Flash based storage devices, such as those found in iPads and high end computers, the drive optimizes to avoid wearing out a single cell of memory, which has a limited number of useable write cycles.  (**Ex. B**, Raleigh Affidavit).

To facilitate this, an SSD drive controller will mark a deleted file in a similar fashion to a spinning drive, however it will not be until it's written to most of the available cells that it will then begin to overwrite previously deleted information.  As cells reach their maximum life cycle, the drive will mark them as bad, effectively decaying the storage capacity over time.  In order to effectively remove any traces of infringing files, software similar to that which was used to detect infringement must be employed.  (**Ex. B**, Raleigh Affidavit).

Where the forensics software is designed to identify and catalog specific types of files, cleanup software is designed to identify and delete those types of files.  Also similarly, it would be indiscriminate in its approach to removing offensive files, such that there would be all or nothing remaining on the computer it had been employed on.  This would have removed all of the fingerprints and metadata accumulated from years of housekeeping neglect.  (**Ex. B**, Raleigh Affidavit).

It is equally troubling that Paige's own speculation is unsupported by the "facts" contained in his expert reports.  For example, in his October 5, 2015 report, Paige claims that the BitTorrent client (or application or program) "uTorrent" was installed on a Windows XP virtual machine on Raleigh's laptop and his wife's laptop.  (See **Ex. G**, p. 8, ¶¶34, 39).   Michael Patzer, however, Malibu's expert from IPP (IPP claims it downloaded Malibu protected works prior to the filing of the Complaint, whereas Paige examined Raleigh's "hardware" after litigation began), the investigator who monitored the activity on Raleigh's modem, identified "qBitTorrent"[4] as the client (or application

---

[4] "qBittorrent" is a BitTorrent client (i.e., program) written using the Qt4 Framework for its user interface. https://github.com/qbittorrent/qBittorrent/wiki/Frequently-Asked-Questions.   The 3.0.6 version of qBitTorrent was first released for use on October 7, 2012.  http://www.qbittorrent.org/news.php.  (Both accessed on January 11, 2016.)

or program) used to upload Malibu's allegedly copyrighted pornographic works.  (**Ex. H**, Ex. A to Patzer's declaration).  So, Plaintiff's own evidence indicates that someone using Torrent program that only runs on a Windows operating system is the infringer. Raleigh is a Macintosh user, and the Torrent program found on his computers and associated with the torrent files on his devices is completely different than that of the alleged infringer.

Accordingly, because there is no evidence on which to present this case to a jury, and Plaintiff's case is built on nothing more than speculation and conjecture, this case should be dismissed *with prejudice* as a matter of law.   Defendant, therefore, respectfully requests that this Court enter an Order, pursuant to Fed. R. Civ. P. 56(c), dismissing this case with prejudice as a matter of law.

## II.    DEFENDNAT SHOULD BE AWARDED ATTORNEY'S FEES.

Defendant is entitled to attorney fees pursuant to the Copyright Act.  17 U.S.C. §101, *et seq*.  Section 505 of the Copyright Act provides in pertinent part that "in any copyright infringement action, the court may ... award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.

Specifically, 17 U.S.C. § 505 provides:

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

Defendant is entitled to attorneys' fees under § 101 of Copyright Act of 1976, codified at 17 U.S.C. § 505, (1) in the event that this Court grants his motion and he is entitled to entry of a favorable judgment when district court dismissed plaintiffs'

copyright infringement action with prejudice under Fed. R. Civ. P. 41(a)(2); (2) in the event the district court recognizes his as prevailing party for the awarding of costs under Fed. R. Civ. P. 54, which would mean that Defendant is also a prevailing party for purpose of 17 USCS § 505; and (3) this case is a good candidate for fee shifting under § 505 because it was filed with absolutely no evidence pointing to Defendant as a violator of the Copyright Act. *Riviera Distribs v. Jones,* 517 F3d 926 (2008, CA7 Ill).

Defendant, an individual (as opposed to a large company such as Malibu Media) has incurred a significant amount of attorney fees in defending this matter and is entitled to attorney fees, as a matter of law, pursuant to the Copyright Act. Raleigh makes this request pursuant to Fed. R. Civ. Pro. 54(d)(2)(B)(i) to avoid wasting more time and judicial resources in another filing. At this stage of the litigation and in light of Patrick Paige's reports, no party is prejudiced by this request. A hearing is the appropriate procedural mechanism to ask for attorney's fees. Defendant, therefore, respectfully requests that this matter be set for a hearing to determine an award of attorney fees, with a briefing scheduled to be set by this Court.

## <u>CONCLUSION</u>

Based on the foregoing, Defendant respectfully requests that this Court enter an Order, pursuant to Fed. R. Civ. P. 56(c), dismissing this case as a matter of law and, pursuant to 17 U.S.C. §101, *et seq.,* setting this matter for a hearing to determine an award of Defendant's attorney fees.

Respectfully submitted,

**BLANCO WILCZYNSKI, P.L.L.C.**

/s/Derek S. Wilczynski
DEREK S. WILCZYNSKI [P-57079]
Attorneys for Defendant
LINCOLN G. HERWEYER [P-55742]
Co-Counsel for Defendant

Dated:  February 13, 2016