UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT MICHIGAN

| | |
|---|---|
| MALIBU MEDIA, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JESSE RALEIGH, )<br>)<br>Defendant. )<br>_____ ) | Civil Action Case No. 1:13-CV-360-RJJ |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S DAUBERT MOTION AND MOTION IN LIMINE TO EXCLUDE, OR IN THE ALTERNATIVE LIMIT THE EXPERT TESTIMONY OF PATRICK PAIGE**

i

# **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................1

II. LEGAL STANDARD .........................................................................................1

III. ARGUMENT .......................................................................................................2

   A.  Paige Should Be Permitted to Testify As to Defendant's Failure to Produce All Relevant Computer Devices and Perjury ........................................................2

      1.  Paige is Qualified to Opine about Missing Computer Evidence ....................3

      2.  Testimony about Missing Computer Evidence is Highly Relevant...............3

      3.  Paige's Opinion about Missing Computer Evidence is Reliable....................4

   B.  Paige Should Be Permitted to Opine on the Creation Date of Defendant's Western Digital Volume...........................................................................................7

      1.  Paige is Qualified to Opine about the Creation Date of Volumes..................7

      2.  Testimony about the Creation Date of the Western Digital is Relevant.........8

      3.  Paige's Opinion about the Creation Date is Reliable......................................8

   C.  Paige Should Be Permitted to Opine on Defendant's BitTorrent Use and the Likelihood of and Evidence Demonstrating Defendant's Liability ....................10

      1.  Paige is Qualified to Opine about Defendant's BitTorrent Use and Liability ...............11

      2.  Testimony about Defendant's BitTorrent use and Liability is Relevant........11

      3.  Paige's Opinion about Defendant's BitTorrent Use and Liability is Reliable ...............12

   D.  Paige Should Be Permitted to Opine on the Accuracy of Excipio's Infringement Detection System..................................................................................14

      1.  Paige is Qualified to Opine about the Accuracy of Excipio's Infringement Detection System ...............14

      2.  The Accuracy of Excipio's Infringement Detection System is Relevant .......14

      3.  Paige's Opinion about the Accuracy of Excipio's Infringement Detection System is Reliable...............15

IV. CONCLUSION ...................................................................................................15

## I. INTRODUCTION

Defendant Jesse Raleigh's ("Defendant") Daubert Motion and Motion in Limine to Exclude or in the Alternative, Limit The Expert Testimony of Patrick Paige [CM/ECF 130] ("Defendant's Motion") asks the Court to exclude four opinions of Plaintiff's expert, Mr. Patrick Paige ("Paige") on the sole basis that Defendant disagrees with Paige's findings and disputes them through submission of a self-serving declaration. Defendant's arguments create factual disputes that may be submitted to the fact finder, but they in no way support or warrant the exclusion of testimony and evidence. Notably, Defendant fails to cite a single source of authority that would support his requests for exclusion, and Defendant's requests are inconsistent with binding Sixth Circuit authority. For these reasons, as explained further below, Plaintiff respectfully requests this Court deny Defendant's Motion.

## II. LEGAL STANDARD

Rule 702, which governs the use of expert testimony, sets forth a three-part test to determine whether a proposed expert's opinion is admissible. *See* Fed. R. Evid. 702. First, "the witness must be qualified by 'knowledge, skill, experience, training, or education.'" *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008) (citing Fed. R. Evid. 702). Second, "the testimony must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Id.* Third, "the testimony must be reliable." *Id.* Since "the test for reliability is flexible," *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999), the Sixth Circuit has cautioned courts not to conflate the concept of reliability with that of disputability, since doing so "would turn *Daubert*, a case intended to relax the admissibility requirements for expert scientific evidence, on its head." *U.S. v. Jones*, 107 F.3d 1147, 1158 (6th Cir. 1997). Accordingly, in assessing reliability, the question is not really whether proffered

1

testimony is "reliable," but whether it is "*sufficiently* reliable." *First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 334 (6th Cir. 2001). In the case of proposed scientific expert testimony, courts consider: "(1) whether a theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) the known or potential rate of error; and (4) general acceptance." *Id.* (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593–94 (1993)). In the case of technical or other specialized expert testimony, the relevant reliability concerns "focus upon personal knowledge or experience." *Id.* at 335. In either case, "where the opinion has a reasonable factual basis, it should not be excluded. Rather, it is up to opposing counsel to inquire into the expert's factual basis. [A]ny weaknesses in the factual basis of an expert witness' opinion, including unfamiliarity with standards, bear on the weight of the evidence rather than on its admissibility." *U.S. v. L.E. Cooke Co., Inc.*, 991 F.2d 336, 342 (6th Cir. 1993); *Davis v. Combustion Eng'g, Inc.*, 742 F.2d 916, 919 (6th Cir. 1984); *Upjohn Co. v. Rachelle Labs., Inc.*, 661 F.2d 1105, 1112 (6th Cir. 1981).

**III.   ARGUMENT**

Defendant's Motion seeks to preclude Paige from providing four opinions on the basis that they are inconsistent with Defendant's self-serving and uncorroborated declaration. Defendant's declaration, however, is provably false in at least one material respect and allowing Defendant to substitute his self-serving testimony in place of evidence would undermine the entire truth-seeking function of trial. Further, Defendant's fails under binding precedent. Therefore, Defendant's Motion should be denied.

    **A.   Paige Should Be Permitted to Testify As to Defendant's Failure to Produce All Relevant Computer Devices and Perjury**

Defendant first requests this Court to exclude Paige's opinion that Defendant failed to produce relevant computer devices and committed perjury. *See* CM/ECF 130 at p. 8–10. While

Plaintiff stipulates that Paige will not provide an opinion on Defendant's mental state through use of the term "perjury," Paige must be allowed to report that Defendant failed to produce all relevant computer devices. This is a fact he discovered through a computer forensic examination which, as explained below, he is qualified to conduct.

1. Paige is Qualified to Opine about Missing Computer Evidence

Paige, a veteran computer forensics examiner with over 20 years of experience in the computer forensics industry, has the requisite "knowledge, skill, experience, training, or education" to opine, generally and specifically, on the subject of computer evidence. Paige has conducted thousands of forensic computer examinations for state and federal law enforcement agencies and private litigants alike. *See* Paige's Amended Report attached hereto as Exhibit "A," p. 22. He has taught over 400 hours of courses in computer forensics, and his students have included high-ranking law enforcement personnel, FBI agents, ATF agents, and agents from the CIA. *Id*. Paige has testified in numerous cases and always been determined qualified to opine about computer evidence. *Id*. at p 23. Defendant's Motion offers no argument about Paige's qualifications; Consequently, there appears to be no dispute that Paige is qualified as a computer forensics expert.

2. Testimony about Missing Computer Evidence is Highly Relevant

Paige's opinion that Defendant failed to produce computer evidence is *incredibly* relevant because it explains why Paige was unable to locate Plaintiff's copyrighted works on the devices Defendant produced, and it makes Defendant's liability more likely than it would be without the opinion. *See* Fed. R. Evid. 401 (so defining relevance). And, given Paige's wealth of experience in these cases and as a law enforcement officer doing computer forensic examinations—through which he has garnered an unparalleled expertise for recognizing indicia of suppression, indicia

3

which are present here—Paige's testimony will clearly assist the trier of fact in understanding and adjudicating this dispute. *See Nucor Corp. v. Bell*, 251 F.R.D. 191, 197 (D.S.C. 2008) (Court held computer content or the absence thereof was relevant where the computer content would make Plaintiff's claims more or less probable.) And, Paige's opinion regarding missing computer evidence is the "the product of assessing and synthesizing a wide-range of information relating to [computer forensics], including his own experiences working in the field." *Gonzalez Prod. Sys., Inc. v. Martinrea Int'l Inc.*, No. 13-cv-11544, 2015 WL 4771096, at *8 (E.D. Mich. Aug. 13, 2015) (holding expert's testimony "will assist the jury, is tied to the facts of the case, and is relevant.") Defendant does not argue that Paige's opinion is irrelevant or unhelpful.

    3. <u>Paige's Opinion about Missing Computer Evidence is Reliable</u>

Since Paige's opinion about missing computer evidence is technical and specialized, rather than scientific, to be deemed reliable within the meaning of Rule 702 it must merely be (1) based upon Paige's observation, knowledge, or experience and (2) not overly speculative and supported by evidence. *See Barreto*, 268 F.3d at 335; *see also Hillerich & Bradsby Co. v. Charles Prods., Inc.*, 2015 WL 7185514, at *2 (W.D. Ky. Nov. 13, 2015) ("When expert testimony is non-scientific, experience alone—or experience in conjunction with other knowledge, skill, training, or education may be sufficient"). The standard is easily met here because Paige's opinion is based upon an array of evidence flowing from his personal examination of Defendant's computer devices and prior experience. First, Paige's examination of Defendant's hard drives unearthed a picture taken in Defendant's home revealing the presence of a third MacBook and Tablet, neither of which had ever been identified. Defendant attempts to explain this evidence by stating that the devices belonged to a "friend," whom he now reveals to be "a man named Nick Peariso." CM/ECF 130 at p. 9. Yet, during discovery, which has closed,

4

neither Defendant nor his wife were ever able to identify *any* individuals who brought their computer devices into Defendant's home either in deposition or in response to written discovery, and Defendant has not produced an affidavit from his purported and unidentified friend (now claimed to be a "Nick Peariso").[1]

Second, Paige located computer evidence showing that Defendant tweeted the following on December 27, 2014: "looking at the timestamps of some files on an *old server of mine*." *See* Exhibit "A," p. 4. (emphasis added). Defendant's admission that he possesses a server is additional evidence of suppressed computer evidence. Indeed, Defendant denied owning a server. Defendant now claims that this tweet referenced "files that were turned over to Paige." CM/ECF 130 at p. 9. But this too, is uncorroborated. No server was ever turned over to Paige.

Third, Paige uncovered evidence on Defendant's MacBook demonstrating unidentified storage locations on other computer devices within Defendant's home network. Specifically, Paige located a directory titled "PSF" which computer records show Defendant consistently accessed. The contents of this computer directory were never produced. And, none of the computer evidence Defendant produced reflects the folders contained within the "PSF" directory.

Fourth, Paige located a photograph reflecting what appears to be either an AOC All-In-One Computer or an AOC monitor—the two are visually identical—in Defendant's home. Paige concluded that the AOC was more likely a computer than a monitor, a conclusion that Defendant attacks as factually erroneous and speculative. *See* CM/ECF 130 at p. 10. However, within this same photograph, there is a Vizio monitor depicting a process relating to the Android operating system. None of the computer devices Defendant identified or produced use Android software or related processes, but AOC computers can. If the AOC is merely a monitor, it fails to answer why the Vizio shows a process related to the Android operating system—an operating system

---

[1] Further, any such affidavit would be untimely because Plaintiff cannot depose Mr. Peariso.

5

which was never found on any other device produced. In short, this means the AOC is either a computer or that it was accessing another computer device that was never identified or produced.

Finally, Paige also discovered *significant* and voluminous correlations between Plaintiff's Additional Evidence (*i.e.*, the evidence of third-party works that were infringed using Defendant's Internet) and Defendant. Defendant's likes and interests—established by computer evidence on Defendant's hard drives, Defendant's public information on social media, and Defendant's deposition testimony—correlate directly to the Additional Evidence. *See* CM/ECF 108, pp. 11 – 15; *See* Chart of Additional Evidence Correlations to Defendant, attached hereto as Exhibit "B." These correlations *strongly* support the conclusion that Defendant is withholding one or more computer devices. In short, Defendant and his family have a unique interest in survival tactics, an adult cartoon television show titled "Aqua Teen Huger Force," "Resident Evil" video games, numerous children movies, and upcycling. Excipio recorded someone using Defendant's IP address to download numerous survival tactic e-books, several episodes of "Aqua Teen Hunger Force," "Resident Evil" video games, numerous children movies, and an e-book on upcycling. Unless there was an interest-hobby twin to Defendant and his family, Defendant must have used BitTorrent to download and distribute these files. However, Paige did not find these files. This strongly supports the conclusion that a device with BitTorrent evidence was not produced. That device likely also contains Plaintiff's works.[2]

The foregoing more than adequately establishes a sufficient factual basis for Paige's conclusions that Defendant failed to produce computer devices, thus satisfying the reliability prong of Rule 702. *See Barreto*, 268 F.3d at 335; *Hillerich*, 2015 WL 7185514, at *2. At trial, Defendant can introduce admissible contrary evidence and cross examine Paige. But

---

[2] Plaintiff explained this during oral argument at the hearing on Plaintiff's Motion for Sanctions. This argument is incorporated herein.

Defendant's attempt to exclude Paige's opinion fails as a matter of law. "An expert's opinion [may be] based on assumed facts [so long as there is] some support for those assumptions in the record." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000). Even if Paige's opinion was weakly supported, which it is not, the "mere weaknesses in the factual basis of an expert witness's opinion bear on the weight of the evidence rather than on its admissibility." *Id.*; *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993) (same); *see also Hightower v. City of Columbus*, 2013 WL 5923699, at *2 (S.D. Ohio Nov. 4, 2013) ("Plaintiff's gripe with Sgt. Weekley's opinions is that they are not based on valid assumptions as to the facts. But his assumptions are supported by evidence [and] [t]he question of the credibility of the expert assumptions goes to the weight of the evidence, not its reliability or admissibility."). This is especially the case where, as here, the only basis for exclusion is Defendant's untestable and self-serving counter-testimony. *See Greenwell v. Boatwright*, 184 F.3d 492, 497 (6th Cir. 1999) ("Expert testimony is not inadmissible simply because it contradicts [witness] testimony.").

### B. Paige Should Be Permitted to Opine on the Creation Date of Defendant's Western Digital Volume

Second, Defendant requests is that the Court exclude Paige's opinion that the creation date of the volume on Defendant's Western Digital erased all data prior to December 17, 2013. *See* CM/ECF 130 at p. 11–12. Defendant's proffered basis for exclusion is simply that Defendant disagrees with the opinion and believes that Paige "does not appear to understand" how backups work. *Id.* But there is no authority—and Defendant does not offer any—for excluding an expert witness solely because an adverse litigant either does not understand or disagrees with the expert's opinion. Rule 702 is not offended and exclusion is improper.

1. Paige is Qualified to Opine about the Creation Date of Volumes

As set forth *supra*, there is no dispute that Paige has the requisite "knowledge, skill,

7

experience, training, or education" to opine, generally and specifically, on the subject of computer evidence, including, necessarily, software installation and volume creation dates.

2. Testimony about the Creation Date of the Western Digital is Relevant

The contents of a computer hard drive are *extremely* relevant to a copyright case involving movies illegally downloaded online. As this Court correctly recognized, "[f]orensic analysis of computer materials is … critical to the development of the case[.]" CM/ECF 86 at p. 1; *see also Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 111 (E.D. Pa. 2005) (concluding that "the computer's memory was relevant to the litigation" in a similar peer-to-peer copyright infringement case). Here, the Western Digital's volume creation date is relevant because it accounts for an entire year's worth of missing data, including the time period during which Plaintiff's works were infringed. Indeed, computer records establish that Defendant repeatedly used his Western Digital hard drive between October 2012 through December 2013, and yet, not a shred of data from this time period exists on the drive – nor is it recoverable since creation of the current volume on the Western Digital drive permanently erased and overwrote previously existing content. If Plaintiff's works were on this drive, which they could have been, this evidence explains why Paige was unable to find them. Consequently, it makes Defendant's liability more likely than it would be without the opinion. The opinion is also helpful to the jury's understanding of this lawsuit because, significantly, the volume was created *during this lawsuit* and on the heels of Defendant's deadline to submit his discovery responses and turn over his hard drives. This information is relevant because the timing weighs on Defendant's credibility and his intention for creating the volume.

3. Paige's Opinion about the Creation Date is Reliable

Paige's opinion regarding the creation date of Defendant's Western Digital Volume is

sufficiently reliable within the meaning of Rule 702 because it is based upon Paige's personal examination and observations. *See Barreto*, 268 F.3d at 335; *Hillerich*, 2015 WL 7185514, at *2. Paige personally examined Defendant's Western Digital and confirmed that Defendant repeatedly connected it to his MacBook laptops since October 2012. Paige also determined, however, that the Western Digital's current volume was created on December 17, 2013, and that this volume creation *during this lawsuit* erased all prior data on the hard drive. Paige therefore concluded and will opine that "Creation of FileVault2 encrypted volume erased all data that existed on the hard drive prior to December 17, 2013. And, its subsequent use caused all data to be unrecoverable." *See* Exhibit "A," p. 11. The data is unrecoverable because it has been overwritten. Defendant concedes that Paige's testimony will be based on his personal examination and observations, and, therefore, the analysis should end; exclusion is improper.

Even on the merits, Defendant's two arguments for exclusion are untenable. First, Defendant—who is <u>not</u> an expert in computer forensics and is undisputedly less qualified to testify on the subject matter than Paige—argues that "Paige does not appear to understand how the Time Machine Program works." CM/ECF 130 at p. 11. First Defendant argues that Paige's conclusion is unreliable because when Paige opined on this subject in an earlier expert report, he made a scrivener's error.[3] *See id.* Defendant does not offer any authority that would conceivably warrant exclusion on this basis. The suggestion that a scrivener's error could warrant exclusion is, frankly, frivolous and in complete derogation of the principle that *Daubert* and Rule 702 strongly favor admissibility over exclusion. *See, e.g.*, *Jones*, 107 F.3d at 1158 (emphasizing that Rule 702 is flexible and that *Daubert* is intended to "relax the admissibility requirements").

---

[3] In a prior expert report, Mr. Paige inadvertently stated that the earliest log date for the Western Digital was October 2011. As previously stated, this was a scrivener's error. The earliest log date is October 2012.

9

Second, Defendant argues that Paige's opinion is unreliable because Defendant claims he only ever used the Western Digital for backup purposes in conjunction with a Time Machine Program and that backups preceding the December 2013 date were therefore automatically deleted as part of the Time Machine protocol. *See id.* Paige knows this to be false because the drive was formatted to be a backup drive on December 17, 2013. Paige's opinion is reliable because it is based on the basic computer forensic understanding of volume creation and the effects thereof. At best, Defendant's assertion simply creates a factual dispute for the jury; it clearly does not support his request for exclusion. *Greenwell*, 184 F.3d at 497 ("Expert testimony is not inadmissible simply because it contradicts [witness] testimony."). And, although a factual dispute does not warrant exclusion anyway, the Court might note that neither of Defendant's arguments affect Paige's ultimate conclusion that the Western Digital hard drive was in use for a significant period of time prior to the December 17, 2013 volume creation date and that all data prior to December 2013 was deleted through volume creation during this lawsuit. Further, that any claim that all contents of the Western Digital hard drive preceding the December 2013 date were automatically deleted through use of the Time Machine Program is undisputedly false, and any expert that reviewed the device would confirm as much. Significantly, the device is large enough to have stored all of Plaintiff's movies and the other third party content which the evidence proves Defendant used BitTorrent to download.

    C.    **Paige Should Be Permitted to Opine on Defendant's BitTorrent Use and the Likelihood of and Evidence Demonstrating Defendant's Liability**

Defendant's third request seeks preclusion of Paige's testimony about Defendant's BitTorrent use and his false testimony regarding same. That Defendant would like to keep the jury from learning this information is understandable, but, yet again, exclusion is inappropriate.

1. <u>Paige is Qualified to Opine about Defendant's BitTorrent Use and Liability</u>

Aside from the fact that Paige is a nationally-renowned computer forensic expert, he spent 11 years investigating the distribution of child pornography through peer-to-peer file sharing. And, for the past two and a half years, Paige has examined numerous hard drives for evidence of BitTorrent use. As such, Paige is more than qualified to testify about the use of BitTorrent. Similarly, Paige is qualified to testify about the likely copyright infringement liability of BitTorrent users. Indeed, in the last two and a half years Paige has gained an unparalleled understanding of the facts in Plaintiff's cases and the technology employed to detect the infringement. He has also garnered specific computer forensics skills and knowledge necessary to uncover relevant evidence vital to Plaintiff's cases. Although in some prior litigations Paige located direct evidence of infringement on defendants' hard drives, in cases where the defendant has an above average knowledge of computers, computer evidence can exist in less obvious forms. Specifically, Paige has developed an expertise on the efforts frequently employed by defendants in BitTorrent copyright litigation to evade liability by erasing files, wiping hard drives, reformatting hard drives, manipulating hard drives, suppressing hard drives, committing perjury and engaging in other types of discovery abuses. Defendant does not dispute that Paige is qualified to testify on these subjects.

2. <u>Testimony about Defendant's BitTorrent use and Liability is Relevant</u>

Testimony and evidence revealing that Defendant is a regular BitTorrent user and that he was not forthcoming about his BitTorrent use is extremely relevant because it will be used to impeach Defendant's credibility, and it will prove that Defendant has suppressed computer evidence. Accordingly, Paige must be permitted to testify as to the hard drive evidence which <u>directly contradicts</u> Defendant's sworn statements and which also shows that Defendant is hiding

11

one or more computers. Relevance is clear. Defendant does not argue otherwise.

### 3. Paige's Opinion about Defendant's BitTorrent Use and Liability is Reliable

Although Paige has personally examined all of the computer evidence Defendant produced in this case and is now familiar with the extent of Defendant's BitTorrent use, Defendant urges the Court to nevertheless find that Paige's testimony on this topic would be unreliable because "Defendant has set forth evidence establishing that he neither lied about his BitTorrent use nor hid computer devices from Malibu." CM/ECF 130 at p. 12. In other words, Defendant asks the Court to accept his representations and to exclude evidence which establishes that his representations are false. Quite obviously, the Court must not prevent Plaintiff from impeaching Defendant through the use of contrary evidence. Again, "expert testimony is not inadmissible simply because it contradicts [witness] testimony." *Greenwell*, 184 F.3d at 497.

Equally appropriate and reliable is Paige's opinion that, based on all the specific computer evidence discussed herein and in his Report, it is likely that Defendant is the infringer. "An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. As such, "an expert witness is permitted to testify in the form an opinion as to an 'ultimate issue of fact.'" *Donnelly Corp. v. Gentex Corp.*, 918 F. Supp. 1126, 1137 (W.D. Mich. 1996) (citing *U.S. v. Zipkin*, 729 F.2d 384, 386–87 (6th Cir.1984)). As stated *supra*, Paige is not an uninformed witness, but an expert in the field of investigating peer-to-peer file sharing cases as a law enforcement officer and in private practice for over 13 years. This training has allowed him to develop a unique understanding of the efforts frequently employed by defendants in peer-to-peer cases to evade liability. In Paige's experience in these cases, the following evidence has existed: (a) computer records demonstrate the use of undisclosed hard drives; (b) hard drives may have been reformatted, wiped, or altered on or around significant dates in the litigation

(service of process date, date Plaintiff named the defendant, defendant's deadline to submit discovery responses, date scheduled for hard drive imaging); (c) there is a significant lack of evidence which would corroborate or support a defendant's defense; (d) computer records prove a defendant's prior statements regarding a material fact to be untruthful; and (e) there are significant correlations through the peer-to-peer network and a defendant's hobbies and interests. This background comes into play in this lawsuit because all of the hallmarks of liability and suppression are present, which Paige explains through his testimony. Paige has every right to provide an opinion regarding Defendant's liability by relying on (a) his prior experiences; (b) his specialized skillset in detecting cybercrimes and missing computer evidence; (c) his personal observations from examining Defendant's hard drives and discovery responses; and (d) his knowledge regarding the accuracy and reliability of Excipio's evidence. *Accord Gonzalez Prod. Sys.*, 2015 WL 4771096, at *8 (reliability inheres when an expert brings a wealth of experience which can be applied to the facts of a case); *Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt LLC*, 2014 WL 1744858, at *2 (E.D. Ky. Mar. 1, 2014) (same); *See U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 768, 772 (N.D. Ill. 2009) (An expert's "experience in a particular field is often quite relevant in determining the reliability of her opinion. [And] [d]etermining whether a particular activity is reasonable in light of other facts is often a function of experience.") *See also United States v. Fifer*, 2015 WL 7004995, at *6 (C.D. Ill. Nov. 10, 2015) (Court allowed expert testimony when the expert "had specialized knowledge in the actions of child pornographers from his extensive investigatory work. From this knowledge, he can provide the jury with insight as to actions that seem to be commonplace […] in the production of child pornography.")

**D. Paige Should Be Permitted to Opine on the Accuracy of Excipio's Infringement Detection System**

1. Paige is Qualified to Opine about the Accuracy of Excipio's Infringement Detection System

Defendant claims that Paige is not qualified to testify about Excipio's infringement software because Paige is "not an expert as to the proprietary [infringement detection] software." CM/ECF 103 at p. 14. Presumably, Defendant's argument is that infringement detection software is not an area with which Paige has years of experience. This argument fails for two reasons. First, Paige supervised detectives at TLO Corp. For years, Paige was imbedded in TLO Corp.'s office and performed the exact same job for law enforcement which Excipio does for private litigants. Namely, recording illegal computer transactions in the form of PCAPs. That experience taught Paige how the detection process works. Second, Paige's test is conceptually simple and he is certainly qualified to conduct and interpret it. To explain, Paige seeded public domain works and recorded the transactions of the BitTorrent peers who connected to him. Excipio downloaded pieces of these files from Paige and recorded the transactions. Paige then compared his recordings with Excipio's recordings. The recordings showed the *exact* same transactions to the zeros and ones. This could not happen if Excipio was not able to identify and accurately record BitTorrent transactions. Therefore, the test proves how well Paige understands the infringement detection process and the test is scientifically reliable and repeatable.

2. The Accuracy of Excipio's Infringement Detection System is Relevant

Defendant does not dispute that testimony regarding the accuracy of Excipio's infringement detection system is relevant. Paige's testimony assists the jury in understanding and determining that Excipio's system works. It should not be excluded.

### 3. Paige's Opinion about the Accuracy of Excipio's Infringement Detection System is Reliable

Paige's opinion that the Excipio infringement detection system works is reliable because it is the result of testing. *See Barreto*, 268 F.3d at 334; *Penn. Trust Co.*, 851 F. Supp.2d at 836–37. Although Defendant concedes that testing may render an opinion reliable, he argues that Paige's test was inadequate. According to Defendant, this is not because Paige's methodologies were unsound, but because the test was "anecdotal." CM/ECF 130 at p. 14. It is not at all clear what Defendant means, but he attempts to clarify by citing *Best v. Lowe's Home Centers, Inc.*, 563 F.3d 171 (6th Cir. 2009) and, without explanation, provides the following example: "suppose a person were to aim a radar gun at a car known to be going 70 mph, and the gun indicates that the car was going 70 mph. Suppose further that the person does this 10 times in a row, and the same thing happens. That person, like Paige in this instance, might conclude that the radar gun works—but the conclusion would be merely anecdotal." *Id.* at p. 15. Neither *Best* nor Defendant's analogy remotely supports exclusion.

In *Best*, the Sixth Circuit explained that a scientific expert opinion may be insufficiently reliable if it is merely based on "anecdotal evidence" and not supported by testing. *Best*, 563 F.3d at 177. But here, there was testing and Paige is relying on that testing and two years of his personal experience working with the infringement detection system; he is <u>not</u> relying on merely anecdotal evidence at all. It is <u>*impossible*</u> to guess the sequence of over a thousand zeros and ones that match between two digital recordings. The notion that this is coincidental and anecdotal is absurd. Thus, *Best*'s concern for unsupported anecdotal evidence is not at issue.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court deny the subject Motion.

15

Respectfully submitted,

LIPSCOMB EISENBERG & BAKER, PL

By: /s/ *Jessica Fernandez*
**Jessica Fernandez**
*Pro Hac Vice*
jfernandez@lebfirm.com
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile: (786) 431-2229
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ *Jessica Fernandez*