## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Case No.: 1:13-cv-00360-RJJ |
| *v.* | ) | HON. ROBERT J. JONKER |
| | ) | MAG. JUDGE: HUGH W. BRENNEMAN |
| JESSE RALEIGH, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

NICOLETTI & ASSOCIATES, PLLC
PAUL J. NICOLETTI [P-44419]
Attorney for Plaintiff
33717 Woodward Avenue, Ste. #433
Birmingham, MI 48009
Landline: (248) 203-7800
eFax: (248) 928-7051
pauljnicoletti@gmail.com
http://www.nicolettilawplc.com

**BLANCO WILCZYNSKI, PLLC**
Derek S. Wilczynski [P-57079]
Attorneys for Defendant
2095 East Big Beaver, Suite 400
Troy, MI 48083
(248)519-9000
Fax: (248) 519-9001
dsw@blancopc.com

**LINCOLN G. HERWEYER, P.C.**
LINCOLN G. HERWEYER [P-55742]
Co-Counsel for Defendant
35054 Twenty-Three Mile Road, Suite 115
New Baltimore, MI 48047
(586)716-1562
Fax: (586) 716-1867
lgherweyer@netscape.net

# DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND FOR ATTORNEY FEES

Defendant, JESSE RALEIGH, by and through his attorneys, BLANCO WILCZYNSKI, P.L.L.C., files this Response to Plaintiff's Motion for Summary Judgment and for Attorney Fees and hereby relies on the arguments stated in the Brief in Support of this Reply.

Respectfully submitted,

**BLANCO WILCZYNSKI, P.L.L.C.**

/s/ *Derek S. Wilczynski*
DEREK S. WILCZYNSKI [P-57079]
Attorneys for Defendant
LINCOLN G. HERWEYER [P-55742]
Co-Counsel for Defendant

Dated:  March 28, 2016

ii

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... iii

INDEX OF AUTHORITIES ............................................................................... iv

STATEMENT OF ISSUES PRESENTED ........................................................... vi

INTRODUCTION ............................................................................................... 1

FACTUAL BACKGROUND ............................................................................... 2

LEGAL ARGUMENT ........................................................................................ 16

I.      STANDARD OF REVIEW ...................................................................... 16

II.     PLAINTIFF'S MOTION IS BASED SOLELY ON SPECULATION AND
        NOT ON EVIDENCE.  ACCORDINGLY, IT SHOULD BE DENIED ..................... 17

III.    DEFENDANT SHOULD BE AWARDED ATTORNEY'S FEES. ........................... 24

CONCLUSION ................................................................................................. 25

# INDEX OF AUTHORITIES

## CASE LAW                                                                 PAGE

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52,
    106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) .................................................16

*Arendale v. City of Memphis*,
    519 F.3d 587, 601 (6th Cir. 2008).........................................................20

*Bowen v. Manchester*,
    966 F.2d 13, n.16 (1st Cir. 1992).........................................................19

*Bridgeport Music, Inc. v. Rhymes Syndicate Music*,
    376 F3d 615, 621 (6th Cir. 2004) .........................................................19

*Bridgeport Music, Inc. v. WB Music Corp.*,
    508 F.3d 394, 398 (6th Cir. 2007) .......................................................18

*Bulthuis v. Rexall Corp*,
    789 F.2d 1315, 1318 (9th Cir. 1985)......................................................20

*Raum v. Norwood*,
    93 F. App'x 693, 696-97 (6th Cir. 2004) ...............................................20

*Evers v. General Motors*,
    770 F.2d 984, 986 (11th Cir. 1985) ..................................................19-20

*Feist Pub'lns, Inc. v. Rural Tel. Serv. Co.*,
    99 U.S. 340, 361, 111 S. Ct. 1282, 1296,
    13 L. Ed. 2d 358 (1991) ..............................................................18-19

*Hayes v. Douglas Dynamics*,
    8 F.3d 88, 92 (5th Cir. 1993).............................................................20

*Martinez v McGraw*,
    581 F App'x 512, 517 (CA 6, 2014).......................................................20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ......................................16

*Merit Motors, Inc. v. Chrysler Corp.*,
    187 U.S. App. D.C. 11, 569 F.2d 666, 673 (D.C. Cir. 1977)....................................19

*Mid-State Fertilizer v. Exchange Natl. Bank*,
    877 F.2d 1333, 1339 (7th Cir. 1989).....................................................19

*Moody v. Boston and Maine Corp.,*
   921 F.2d 1, 5 (1st Cir. 1990) ........................................................................ 19

*Raum v. Norwood,*
   93 F. App'x 693, 696-97 (6th Cir. 2004) ................................................... 20

*Riviera Distribs v. Jones,*
   517 F3d 926 (2008, CA7 Ill) ........................................................................ 24

*Stromback v. New Line Cinema,*
   384 F.3d 283, 293 (6th Cir. 2004) ............................................................... 18

*Sultis v. General Motors Corp.,*
   690 F. Supp. 100, 103 (D. Mass. 1988) ..................................................... 19

## STATUTES

17 U.S.C. §101 ........................................................................................... 2, 17, 24

17 U.S.C. § 505 ................................................................................................... 24

## COURT RULES

Fed. R. Civ. P. 56(a) ....................................................................................... 16

Fed. R. Civ. P. 56(c) ....................................................................................... 23

Fed. R. Civ. P. 41(a)(2) ................................................................................... 24

Fed. R. Civ. P. 56(d)(2)(B)(1) ....................................................................... 24

# STATEMENT OF ISSUES PRESENTED

1.      Should Malibu Media's Motion for Summary Judgment be granted?

>       *To the above questions:*
>
>       *Plaintiff answers:*                    *"Yes."*
>
>       *Defendants answer:*                    *"No."*

# INTRODUCTION

Pending before this Court is an action by Plaintiff, Malibu Media ("Malibu") for copyright infringement against Defendant Jesse Raleigh (Raleigh).  Discovery is closed and Raleigh has moved for Summary Judgment [D.E. 131].  While that Motion was pending, Malibu filed its own Motion for Summary Judgment, to which Raleigh now responds.  Malibu's motion is nothing more than a repeat of the arguments it advanced in its prior Motions for Sanctions.  [D.E. 81 and 108].  This Court has already ruled, on January 26, 2016 that there is a question of fact regarding the arguments advanced by Malibu.  [D.E. 126].  By contrast, Raleigh's pending Motion for Summary Judgment [D.E. 131] posits that this Court should enter summary judgment *for him* because there is no question of fact that Plaintiff's entire case rests purely on speculation and that Plaintiff cannot meet the elements for a claim pursuant to U.S. Copyright Act.

In addition to the arguments made in this Response Brief, Defendant relies on the arguments advanced in his responses to Plaintiff's multiple Motions for Sanctions. [D.E. 83 and 115].  Defendant also relies on the arguments it advanced in his own Motion for Summary Judgment.  [D.E. 131].  Quite simply, Plaintiff has produced no evidence at all to support its claims that Defendant illegally possessed, downloaded or uploaded Plaintiff's allegedly copyrighted material.  Plaintiff's case relies entirely on speculation, which itself relies on "expert" opinions that are inadmissible (and the subject to a Motion in Limine to preclude; D.E. 129], and not on any facts.  Plaintiff suggests that it is entitled to Summary Judgment based on its own perception of an algorithm as to probabilities and what it characterizes as Defendant's failure to "offer a defense."  That is not enough for this Court to grant summary judgment, and Malibu's motion should be denied.

# FACTUAL BACKGROUND

## I.    MALIBU MEDIA AND THE COMPLAINT AGAINST JESSE RALEIGH.[1]

Plaintiff, Malibu Media, is a notorious producer of pornographic material. On June 23, 2013, Plaintiff filed an Amended Complaint[2] against Raleigh, alleging violations of the Copyright Act, 17 U.S.C. §101, *et seq.* Specifically, Plaintiff claims that Raleigh illegally uploaded to Malibu's investigator, IPP, through a process called "BitTorrenting," the following pornographic movies, for which Malibu Media claims copyright protection:

| Pornographic Movie | Date |
| --- | --- |
| Spur of the Moment | February 11, 2013 |
| A Little Rain Must Fall | February 11, 2013 |
| Sacred Romance | February 15, 2013 |
| Formidable Beauty | February 16, 2013 |
| Inside Perfection | February 16, 2013 |
| Unfogettable View #2 | February 17, 2013 |

To be clear, Malibu does not claim that Raleigh illegally *downloaded* the afore-mentioned pornography but, rather, that IPP downloaded bits of Malibu's pornography from an unidentified computer through an address temporarily assigned to a wireless modem functioning in Raleigh's house.  According to Malibu, the pornography referenced above was BitTorrented through a Charter Communications modem (that is, a modem leased to Raleigh through his cable company, Charter Communications), with

---

[1] Because these issues have been litigated so many times already, and Plaintiff has not offered any new arguments to this Court, much of the language of this Brief has been taken directly from Briefs previously filed by Defendant.

[2] Plaintiff filed its original Complaint on April 1, 2013 against a "John Doe" Defendant.  [D.E. 1].  On June 23, 2013, Malibu filed an amended Complaint naming Raleigh as the Defendant.  [D.E. 10].

a specific Internet Protocol, or "IP," address.  Malibu does not, however, know the IP address of the computer from which IPP downloaded the bits of its own pornography.

On August 23, 2013, Defendant, Jesse Raleigh (hereinafter "Raleigh"), filed an Answer to the Amended Complaint on August 13, 2013.  [D.E. 16].  In his Answer to the Amended Complaint, Raleigh denied each and every allegation that he violated the Copyright Act.  [D.E. 16].

More specifically, Raleigh has maintained that he never downloaded or possessed Malibu's copyrighted pornography, that he was not at home in Petoskey when the material was BitTorrented in February of 2013 (he was in Grand Rapids on business), and that there were multiple, equally possible, ways that the pornography could have been downloaded.  For example, Raleigh works in the information technology ("IT") field, and his friends, many of whom visited his apartment, are also familiar with technology.   It is possible that a friend, acquaintance, or associate of Raleigh downloaded the material.  Finally, Raleigh did not have a password protected modem and, as a result, anyone within distance of his modem could have connected to it wirelessly.

**Jesse Raleigh**

Defend works in the information technology ("IT") field.  In late 2012-early 2013, Raleigh lived in Petoskey with his wife, Heather, and their two boys.  (See, D.E. 122-2, Raleigh Deposition at 6; see also D.E. 122-3, Affidavit of Raleigh).  Raleigh worked for a company called Siversmith at the end of 2012 and, in early 2013, he started working at a company called Agent X Marketing.  (See D.E. 122-2, at 6-8).  When he started working for Agent X, Raleigh lived with a friend, Ryan Jackson, in Grand Rapids while his wife and children remained in Petoskey.  (See D.E. 122-2, at 6).  In addition to living with

3

Ryan Jackson, Raleigh also lived with his wife's relatives in the Grand Rapids area.  (See D.E. 122-2, at 8).  At some point around March of 2013, Raleigh's wife and children moved to Grand Rapids, where they rented a house.  (See D.E. 122-2, at 8-9).

Raleigh received his Internet access through a modem supplied by his "cable" company, Charter Communications.  Because Raleigh works in the IT field, and many of his friends also work in the IT field, his modem was not password protected.  (See D.E. 122-2, at 47).  According to Raleigh, it was inconvenient to have to share his password with everyone who visited his home.  (*Id.*)  "[N]early every single person" Raleigh knows and interacts with has a computer, carries the computer with them, and brings the computers to his house when they visit.  (See D.E. 122-2, at 48).

**The Discovery Process**

The parties engaged in the discovery process, during which Raleigh continued to deny that he illegally obtained or possessed any of Plaintiff's pornographic (or other) material.  Raleigh also denied illegally using BitTorrent.  (See D.E. 81-1, 81-3, 81-4, 122-1).  As the Court knows from Raleigh's Response to Malibu's Motion for Sanctions [D.E. 109], because Raleigh works in the IT industry, he has reason to ***legally*** BitTorrent.

The analysis of Raleigh's electronic devices proved to be a comedy of errors.  Malibu demanded to physically examine and analyze Raleigh's electronic devices.  Raleigh had no objection to Malibu examining his devices, but wanted a Protective Order entered.  The parties agreed to a Protective Order at a hearing held on August 26, 2014 [D.E. 38], which was entered two months later on October 27, 2014. [D.E. 47].  The Order was prepared by Malibu Media's attorneys, reviewed by Raleigh's attorneys, and mutually agreed upon by the parties.  Significantly, the Order specifically lists the devices requested by Malibu Media, and was *limited* to the following devices:

4

(a) Two Apple Mac Book Pros;

(b) An original iPad; and

(c) An iPad 2.

[D.E. 47].

Despite the Protective Order being entered, Plaintiff, who had the burden of providing information to Raleigh by which Raleigh would know how to produce the requested devices, did not communicate any instructions to either Raleigh or his counsel.   In fact, Raleigh's attorney attempted, through email, to obtain these instructions from Malibu Media's attorney, despite numerous requests by Raleigh's counsel, attached as Ex. A to D.E. 80, Raleigh's attorney did not receive a timely response from Malibu Media's attorney.   This was particularly important because Malibu Media's counsel indicated that he intended on having the device imaged by Stot T. Matthews, an individual working at a company in Southfield, Michigan.   Plaintiff's counsel could have remedied this by simply responding to defense counsel's emails but, for whatever reason, chose not to do so.

Eventually, Raleigh produced the hard drives to Plaintiff's technician/ transporter, who was then, in turn, supposed to forward these devices to Plaintiff's analysis expert, Patrick Paige, on December 3, 2014.   However, the technician/transporter forgot that he had the devices in the back of his car and did not transport them to Mr. Paige until December 22, 2014.   (D.E. 80, Ex. B, emails from Plaintiff's counsel).

Plaintiff's counsel then represented to the Court, through the former Magistrate assigned to the case, on December 9, 2014, that Mr. Paige would have the devices analyzed and a report produced by the end of 2014.   Plaintiff's counsel insisted on using

Patrick Paige and would not allow anyone else to analyze the hard drives and/or produce a report.  However, Mr. Paige was apparently delayed due to a pre-planned vacation and another hearing/trial.  This caused not just a three week delay but, because Mr. Paige had a pre-planned vacation as well as a hearing/trial, it delayed matters until February 13, 2015, at which time, Plaintiff finally served Patrick Paige's first report on Defendant.  (See D.E. 81-2, Patrick Paige's first report).

To make matters even worse, Plaintiff did not file a Status Report required by this Court, despite being notified by defense counsel that the report was due and that defense counsel had no objection to an extension of time by which the report could be filed.  (D.E. 80-3, emails between Plaintiff and defense counsel).  Instead, Plaintiff's counsel simply let the deadline pass and did not file the report with this Court.  Instead, Plaintiff filed a Motion for Extension of Time to Conduct Discovery.  This was not the fault of Defendant or Defendant's counsel.

On February 17, 2015, after Patrick Paige issued his February 13, 2015 report, Plaintiff's counsel emailed defense counsel demanding that Raleigh produce two external hard drives for examination by Paige.  Raleigh's counsel opposed this request because those hard drives had been produced to Kevin Pursley, the courier who to was transmit the drives to the company to perform imaging of them, on December 3, 2014.  Nonetheless, Plaintiff's counsel insisted on physically obtaining the hard drives a second time.  (D.E. 80-5 emails between counsel regarding these devices).  Even though Raleigh's attorneys were under no obligation to allow an additional inspection of this external hard drive, they consented and requested that Raleigh send the external hard drive to Malibu Media's experts.  Paige then issued a second report on March 19, 2015 in which he stated that he did not find any of Malibu Media's copyrighted material on the

hard drives.  (See D.E. 132-4, Patrick Paige's second report).

On May 29, 2015, Malibu demanded to examine Raleigh's Toshiba external drive (even though this drive was delivered to Plaintiff's and they neglected to examine it during the time they had it), a PlayStation 3 video game console, his Dropbox account, his Cloud storage, and his social media accounts.  (See D.E. 132-5, May 29, 2015 email).  Raleigh gave Malibu access to his online accounts by producing his usernames and passwords for the accounts.  (Notably, to date, Malibu has not confirmed for Raleigh that it is no longer accessing these accounts and has not allowed Raleigh to change his passwords.  Moreover, in previously filed documents with the Court, Malibu has disclosed Raleigh's passwords.)  These devices were provided to Plaintiff on August 25, 2015 and usernames and passwords for the iCloud and DropBox were provided to Plaintiff's counsel at that time as well.

On September 24, 2015, Plaintiff took the deposition of Raleigh and his wife, Heather.  Even though Plaintiff had reviewed the contents of the iCloud and DropBox, it did not ask Raleigh or his wife any questions regarding the content.  In fact, Plaintiff's counsel never directly asked Raleigh if he ever downloaded or possessed any of the copyrighted material.  On October 15, 2015, Patrick Paige issued his third and final report.  (See D.E. 132-6, Patrick Paige's third report).

**<u>Summary of Discovery</u>**

In sum, Malibu had the following devices examined and analyzed by its experts:

2 laptops, belonging to Jesse Raleigh and his wife;

2 ipads;

1 Western Digital external hard drive;

1 Toshiba external hard drive

1 PlayStation 3 video game console;

Jesse Raleigh's social media accounts;

Jesse Raleigh's Dropbox account; and

Jesse Raleigh's iCloud account.

In addition to the examination and analysis conducted on Raleigh's devices, Malibu also conducted the following written discovery:

| | |
|---|---|
| February 27, 2014 | Defendant answered Plaintiff's First Set of Requests to Produce; |
| June 2014 | Defendant answered Plaintiff's Interrogatories; |
| October 10, 2014 | Defendant provided supplemental answers to Plaintiff's First Set of Interrogatories; |
| October 10, 2014 | Defendant provided supplemental answers to Plaintiff's first set of Requests for Production; |
| July 16, 2015 | Defendant answered Plaintiff's Second Request to Produce; |
| July 16, 2015 | Defendant answered Plaintiff's Request to Inspect Land (Plaintiff requested to inspect the apartment Raleigh had not lived at in years); |
| October 1, 2015 | Defendant answered Plaintiff's Third Set of Requests to Produce; |
| October 1, 2015 | Defendant answered Plaintiff's First Set of Requests for Admission. |

## Patrick Paige's Reports

Malibu's expert witness, Patrick Paige, produced three reports on the following dates, with all of the reports that the devices examined by Paige did not contain Malibu Media's copyrighted materials:

| | |
|---|---|
| Initial Report – February 13, 2015 | Examination of: MacBook, MacBook, iPad, and iPad; |

Second Report – March 19, 2015          Examination of: Western Digital 2TB Hard Drive;

Third Report – October 5, 2015          Examination of: Toshiba 2TB external Hard Drive; PlayStation 3; iCloud contents; DropBox contents.

(See D.E. 132-3, 132-4, and 132-6).

Specifically, in the February 13, 2015 report, Paige stated as follows:

MacBook C02HW056DV31 Findings: A search of the hard drive for evidence relating to Malibu Media movies was **negative**. (See D.E. 132-3, p. 3, emphasis added).

MacBook 340269NBATM Findings: A search of the hard drive for evidence relating to Malibu Media movies was **negative**. (See D.E. 132-3, p. 8, emphasis added).

IPad Devices & Findings: On the hard drive I was provided were Cellebrite extractions for 2 Apple iPad devices. Both devices were searched using Cellebrite's Physical Analyzer software. The search was **negative** for Malibu Media's works and for BitTorrent use and related activity. (See D.E. 132-3, p. 13, emphasis added).

In the March 19, 2015 report, Paige examined Raleigh's "Time Machine" backup external hard drive (that is, the external hard drive Raleigh used to back up his machines) and concluded:

A search was conducted on the drive for evidence of Malibu Medias (sic) copyrighted works and BitTorrent use. The search was **negative** for Malibu's movies.

(See D.E. 132-4, p. 4).

In his October 5, 2015 report, Paige did not find any evidence of Malibu Media's copyrighted pornography on Raleigh's PlayStation 3, in his iCloud account, or in his DropBox account. (See, See D.E. 132-6, Paige Report of October 5, 2015).

## II.     MALIBU'S "FACTS" ARE HARDLY UNDISPUTED.

In addition, Malibu has entitled the background section of its brief "Statement of Undisputed Facts." Much of the factual background contained in this section is, and has been, vigorously disputed by Defendant.

### A.     Raleigh Did Not Provide False Testimony Regarding The Extent Of His BitTorrent Use.

Malibu Media claims that Raleigh uses BitTorrent and committed perjury regarding the extent of the BitTorrent use. This is simply not true. This statement is misleading at best and intentionally deceptive at worst. By using the qualifier, "*he only*," Malibu Media makes it appear as though Raleigh absolutely limited his discovery response stating that he *exclusively* used BitTorrent to download Linux installation ISO images.

A closer look at the Interrogatory Response, attached as **Exhibit A** to Plaintiff's first Motion for Sanctions [D.E. 81] (and, for the sake of judicial economy, will not be reattached here), shows that Raleigh went beyond the scope of the Interrogatory being asked to indicate *an example* of *when* he uses BitTorrent to state *how* he uses BitTorrent. The answer to the Interrogatory was not to state *exclusive* use of BitTorrent to download Linux installation ISO images but, rather, to indicate an instance of under what circumstances he uses them. For Plaintiff to claim otherwise ignores the plain language of the Answer to the Interrogatory given by Raleigh and attempts to twist and bend an example given by Raleigh for Plaintiff's own nefarious purpose, to libel Raleigh in open Court.

Additionally, Plaintiff claims that Raleigh provided false testimony by swearing that he only legally purchased content despite having content on his devices which

***Plaintiff believes*** were illegally obtained.   However, as can be seen from The Affidavit signed by Raleigh as **Exhibit A** to Doc. No. 80, Raleigh did not illegally download any of that content.  Rather, this material was given to Raleigh on a thumb drive and was not illegally downloaded, or "BitTorrented", at any time by Raleigh.  Malibu Media is clearly making a leap of logic (claiming that Raleigh illegally downloaded something which was given to him) again, for the sole purpose of smearing Raleigh's name.

In addition, Raleigh would note that none of the allegations made by Malibu Media with regard to Raleigh's BitTorrent use is the four files that Malibu claims are copyright protected.  Moreover, it is worth noting that Defendant, Raleigh, has engaged in a career in information technology and uses his computer constantly for this purpose. The fact that there are random files and folders does not mean that Raleigh engaged in "illegal" bitTorrent.   Malibu Media's argument in this regard is severely lacking. Moreover, this exact argument was made in Malibu Media's previous Motion for Sanctions.   This argument is nothing more than an attempt to cast dispersions on Raleigh by smearing his name.

Further, this argument was also made by Plaintiff in its previous Motion for Sanctions.  [D.E. 81] and responded to by Raleigh.  [D.E. 84].  As Raleigh argued at that time, he did not commit perjury with regard to his BitTorrent use.  Moreover, this Court has already ruled that sanctions were not appropriate.  [D.E. 86].

### B.    Raleigh Produced All of His Computer Devices.

According to Malibu, Raleigh's Dropbox contains a picture of three MacBook lap tops and three tablets.  Even though Malibu Media had the picture identified on page 4 at the time of Raleigh's deposition, Malibu Media's attorneys never questioned him about the MacBooks contained in the pictures.

Raleigh refers to the Affidavit which supplemented his Response to the Motion for Sanctions filed in November of 2015, D.E. 120-1.  The additional MacBook and tablets belong to guests who were present in the Raleigh household at the time the picture was taken.  Interestingly, even though Malibu Media claims that it "cropped" the picture to protect the identities of the children in the image, had Malibu Media not cropped the photograph, they would have learned that one of the children present in the picture owned the MacBook and/or tablet.  Raleigh has provided the relevant pictures, contained in Exhibit 2 to D.E. 115**,** to illustrate this.[3]

### C.      Raleigh's Western Digital Hard Drive Was Not Spoiled.

Malibu Media claims that Raleigh erased data prior to December 17, 2013, in essence "spoiling" the Western Digital drive.  This is simply incorrect.   Raleigh has attached a screenshot from the provided drive showing files dating back to 2010.  See D.E. 115-2 and 120-1.

It is also worth noting that Malibu Media had this hard drive on two occasions and, due to its own incompetence (see D.E. 84), simply did not make an attempt to copy it when it first had the hard drive.  Thus, Malibu Media is responsible for complicating this matter even further.

As this Court is well aware, the parties eventually agreed to a Protective Order in this case.  That Protective Order was entered on ***October 27, 2014***. [Doc. No. 47].  ***The Order was prepared by Malibu Media's attorneys, reviewed by Raleigh's attorneys, and mutually agreed upon by the parties***.  Significantly, the Order

---

[3] Malibu Media and its attorneys attempt to smear Raleigh's name by referencing the fact that neither he nor his wife wanted to identify individuals who were guests at their house.  The fact that Malibu would continuously disregard the Protective Order entered in this case and potentially expose Raleigh's friends and family to Court filings is the very reason why they did not want to disclose the names of the individuals involved.  However, faced with a Motion for Sanctions, Malibu Media has put Raleigh in the position where he has no choice but to proceed accordingly.

specifically lists the devices requested by Malibu Media, and is *limited* to the following devices:

> (d) Two Apple Mac Book Pros;
>
> (e) An original iPad; and
>
> (f) An iPad 2.

Notably absent from this is any request for an external hard drive, ***even though one had been disclosed to Plaintiff's counsel well before the Protective Order had been entered.***

In other words, even though he drafted the Protective Order, sent it to Raleigh's counsel for review, accepted the changes requested by Raleigh's counsel, and submitted the Protective Order for entry with the Court, Malibu Media's attorney ***limited himself*** to the production of the four devices listed above. Malibu Media's attorney is being completely disingenuous and, more specifically, misrepresenting to this Court what Raleigh was required to identify and/or produce during discovery in this case. Malibu Media's own attorney identified four devices which he wanted to inspect and Raleigh produced those devices. For Malibu Media's attorney to now come into this Court and suggest that Raleigh is somehow lying, misrepresenting, or failing to produce certain devices is ludicrous.

It should also be noted, even though Raleigh identified the external hard drive in his Supplemental Answers to Malibu Media's discovery requests on October 2, 2014, Plaintiff's counsel apparently overlooked this disclosure and did not request the external hard drive. To facilitate discovery, Raleigh still forwarded the external hard drive to Malibu Media's expert, which kept the external hard drive for approximately 45 days before returning it to Raleigh. Despite having the external hard drive for 45 days, no

one from Malibu Media analyzed the external hard drive.

In February of 2015, Malibu Media's attorney then contacted Raleigh's attorney and requested to examine the external hard drive, even though he had the external hard drive for approximately 45 days. If Malibu was correct, and the hard drive was "spoiled," it stands to reason that it could have happened when Malibu had the hard drive for 45 days. Even though Raleigh's attorneys were under no obligation to allow inspection of this external hard drive, they consented and requested that Raleigh send the external hard drive to Malibu Media's experts. As this Court is well aware from Defendant's Motion for Summary Judgment, Malibu Media's expert witness, Patrick Page, examined the external hard drive and *found no evidence of Malibu Media's pornography anywhere on the external hard drive.*

In addition, Malibu Media attempts to mislead this Court further, on page 5 of the Motion for Sanctions, by pointing out to the Court that Raleigh has *two external hard drives*. Plaintiff, however, was aware of both external hard drives, because Plaintiff's counsel himself caused Raleigh to have to purchase one of the external hard drives for the reasons that follow. (See Exhibit B to Doc. No. 80 – emails between Plaintiff's counsel and Defendant's counsel). After entry of the Protective Order, which was almost two months after the hearing on Plaintiff's Motion to Compel, Malibu Media's attorneys still had not requested that Raleigh forward the hard drives to its experts, or the manner in which this would be accomplished. Raleigh's attorneys continuously pressed Malibu Media's attorneys to let them know how, and in what way, the devices should be sent to Malibu Media's experts. When Raleigh's attorneys did not receive a response, they instructed Raleigh to follow the very first instructions which were given by Malibu Media's attorneys, that is, to make a copy of the hard drives at

issue and forward the copy to Malibu Media's experts.  Raleigh did this, thus creating the "second" external hard drive at issue. (Exhibit E to Doc. No. 80).

Therefore, it is patently obvious that the second hard external hard drive does not contain any of Malibu Media's pornography.  Moreover, and what is completely misleading by Plaintiff's counsel, ***it had possession of the "second" hard drive*** for approximately 45 days because Raleigh sent both external hard drives to Malibu Media's experts.  However, what could only be described as a case of "Abbott and Costelloitis," Malibu Media's experts failed to even look at the external hard drives.  Rather, they simply returned them to Raleigh.

In February of 2015, when Malibu Media's attorney realized his error, he requested that only one of the external hard drives be sent to his experts for review, the Western Digital "Time Machine" back up hard drive referenced above.  Malibu Media's attorney chose not to examine the second hard drive because he knew that such an examination would be futile because the hard drive was only used to image Raleigh's laptop.  It is simply outrageous for Malibu Media's attorneys to now come into Court and claim that Raleigh has lied in his discovery responses when he created this mess by not minding his files.  Malibu Media's attorneys have libeled Raleigh's good name for the sake of trying to protect their client.

**D.    Plaintiff's Works Were Not On Any Device Owned By Raleigh.**

Malibu claims that, "Since the evidence establishes that Defendant did not turn over all of his devices and spoiled the Western Digital, Plaintiff's works could have been on any of those devices."  This is not an "undisputed fact."  Defendant disagrees with the premise of this "fact," that Raleigh did not turn over any of the devices.  As can be seen from the way Malibu stumbled through discovery, Raleigh turned over every device

15

requested, and the Western Digital device was not spoiled.

### E.     Raleigh Does Not Have The Burden Of Proof.

Malibu claims that Raleigh "has not produced any evidence to corroborate any defense."  Malibu's "argument" regarding this "fact" is faulty.  First, Raleigh does not have the burden of proof to establish that he was *not* the infringer in this case.  Rather, Malibu must establish that Raleigh illegally infringed on Malibu's copyrights.

Second, Raleigh and his wife provided testimony and answered discovery requests stating that he was not living in Petoskey, Michigan at the time of the alleged infringement.  His wife and children, however, were living in Petoskey at that time.  Raleigh would like to produce evidence indicating he was in Grand Rapids at the time of the infringement; however, other than his testimony (and his wife's testimony), he will have to rely on the testimony of friends and family members if this case proceeds to trial, and not documentary evidence.

## LEGAL ARGUMENT

### I.     STANDARD OF REVIEW.

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, the District Court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## II.   PLAINTIFF'S MOTION IS BASED SOLELY ON SPECULATION AND NOT ON EVIDENCE.  ACCORDINGLY, IT SHOULD BE DENIED.

### Plaintiff's Theory of Liability.

Plaintiff has brought this case pursuant to the Copyright Act, 17 U.S.C. §101, *et seq*.  There are three types of liability for copyright infringement: direct, contributory, and vicarious.  Plaintiff has only alleged a theory of direct infringement.  Plaintiff's theory of liability is that, because the Charter Communications modem at issue was leased to Raleigh, he is the most likely person to illegally download and possess Malibu's copyrighted material.  Like most of their cases, Malibu operated under an initial hope that Raleigh would either admit to violating the Copyright Act or would act as Malibu's involuntary agent and unearth evidence as to who, if anyone, actually downloaded Malibu's works.

When Raleigh declined to emulate Malibu by accusing individuals on the mere possibility that it was them, Malibu's tactic changed.  It demanded to review and analyze Raleigh's hard drives (Raleigh is using "hard drives" for all of the devices Malibu examined.)  When the review of Raleigh's hard drives did not reveal any of Malibu's allegedly copyrighted works, it changed course again, this time accusing Raleigh of committing perjury and lying about the number and type of devices he actually owned by filing a motion for sanctions.  [D.E. 108]  Malibu failed to provide any credible support for these allegations and, in fact, was proven to be wrong with its allegations by the metadata contained in photographs in Raleigh's DropBox [see D.E. 116] as well as Plaintiff's misrepresentations regarding Raleigh's testimony.

At the hearing for Malibu's motion for sanctions, and in the Motion for Summary Judgment, Malibu's attorneys advanced the argument that Raleigh must be the

17

"infringer" because he fits the "profile" of an infringer due to the fact that Raleigh used "uTorrent" to download files that Malibu claims (but has not provided evidence to establish) were illegally downloaded.  According to Malibu, and relying on an "algorithm," because Raleigh, allegedly "illegally" BitTorrented certain movies, books, and music during a certain time period, he must be the infringer.  Malibu has enlisted the help of Patrick Paige to testify that, in his opinion, because Raleigh fits the profile of an infringer, he must have illegally downloaded Malibu's copyright protected material. Patrick Paige, however, is the subject of Defendant's Motion in Limine to preclude him from testifying and should not be allowed to provide any testimony, affidavits, or support for Malibu's response.  (Even if Paige's reports were allowed to be used, they are so lacking in facts and analysis that would not assist the Court.)

There is simply no evidence Raleigh ever owned or possessed any of the copyrighted works at issue in this case.  Rather, Plaintiff's case is based solely on speculation and conjecture and, accordingly should be dismissed.  Plaintiff's Motion should, therefore, be denied.

**Direct Infringement of Copyright.**  "Direct copyright infringement occurs when anyone 'violates any of the exclusive rights of the copyright owner.' "*Bridgeport Music, Inc. v. WB Music Corp.,* 508 F.3d 394, 398 (6th Cir. 2007)(quoting 17 U.S.C. § 501(a)).  "Subject to certain exceptions . . . the owner of a copyright has the exclusive rights (1) to reproduce the copyrighted work; (2) to prepare derivative works; (3) to distribute copies; (4) to perform publicly a copyrighted work; and (5) to display publicly a copyrighted work." *Stromback v. New Line Cinema,* 384 F.3d 283, 293 (6th Cir. 2004)(citing 17 U.S.C. § 106). "A plaintiff may bring a claim against a person who infringes any of the plaintiff's exclusive rights in a copyright under § 106 by

demonstrating two elements: '(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original.'" *Id.* (quoting *Feist Pub'lns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991)).

**Other Theories of Liability for Copyright Infringement.** "Contributory infringement occurs when one, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *Bridgeport Music, Inc. v. Rhyme Syndicate Music,* 376 F.3d 615, 621 (6th Cir. 2004). Furthermore, "[a] defendant can be held vicariously liable if he enjoys a direct financial benefit from the infringing activity and has the right and ability to supervise the infringing activity." *Id.* (internal quotation marks and citation omitted).

**Speculation and Conjecture.** In order to defeat a motion for summary judgment an expert opinion must be more than a conclusory assertion about ultimate legal issues. *Bowen v. Manchester*, 966 F.2d 13, n.16 (1st Cir. 1992). See also *Moody v. Boston and Maine Corp.*, 921 F.2d 1, 5 (1st Cir. 1990); *Sultis v. General Motors Corp.*, 690 F. Supp. 100, 103 (D. Mass. 1988). The evidentiary rules regarding expert testimony at trial were "not intended . . . to make summary judgment impossible whenever a party has produced an expert to support its position." *Merit Motors, Inc. v. Chrysler Corp.*, 187 U.S. App. D.C. 11, 569 F.2d 666, 673 (D.C. Cir. 1977). As with all other evidence submitted on a motion for summary judgment, expert affidavits must be reviewed in light of Fed.R.Civ.P. 56.

Where an expert presents "nothing but conclusions -- no facts, no hint of an inferential process, no discussion of hypotheses considered and rejected", such testimony will be insufficient to defeat a motion for summary judgment. *Mid-State Fertilizer v. Exchange Natl. Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989). See also *Evers v.*

*General Motors*, 770 F.2d 984, 986 (11th Cir. 1985); *Bulthuis v. Rexall Corp*, 789 F.2d 1315, 1318 (9th Cir. 1985).  Although an expert affidavit need not include details about all of the raw data used to produce a conclusion, or about scientific or other specialized input which might be confusing to a lay person, it must at least include the factual basis and the process of reasoning which makes the conclusion viable in order to defeat a motion for summary judgment.  *Hayes v. Douglas Dynamics*, 8 F.3d 88, 92 (5th Cir. 1993).

In responding to a properly supported summary judgment motion, the nonmoving party must come forward with "sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008).  A plaintiff must provide more than "mere supposition" to avoid dismissal.  A plaintiff's claim may not be inferred through mere speculation or conjecture.  *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999). A plaintiff cannot rely on unsupported inferences to prove his or her claim. See e.g., *Raum v. Norwood*, 93 F. App'x 693, 696-97 (6th Cir. 2004); *Ellis*, 177 F.3d at 506; *Martinez v McGraw*, 581 F App'x 512, 517 (CA 6, 2014).

Raleigh has consistently denied ever illegally obtaining or possessing any of Malibu Media's copyrighted works.  (See D.E. 16, Raleigh's Answer to Complaint).  In his Answers to Interrogatories, Defendant explained that he was in Grand Rapids at the time of the first three incidents of infringement[4], and was driving to Grand Rapids at the time of the fourth and fifth incidents.  He spent the 16th at his parents' house in Alanson, and returned to Grand Rapids on the 17th.  (D.E. 122-2, p 9, Pg. ID 1267.)

---

[4]  Malibu has in its possession numerous photographs from Raleigh's iCloud and DropBox, the metadata of which evinces Defendant's presence at 38 Commerce Ave, Suite 102, Grand Rapids, Michigan, at the times in question.  Malibu knows, therefore, that Raleigh was not in Petoskey at the time the infringement occurred.

Plaintiff cannot establish even a *prima facie* case that Raleigh violated the Copyright Act based on the evidence in the record in this case, whether through the expert testimony of Patrick Paige or if the Court excludes that testimony.   There is no evidence in the record in this case that Raleigh copied any of Malibu Media's copyrighted works.   In fact, all of the evidence establishes the exact *opposite,* that Raleigh did not possess *any* of Malibu's pornography at any time.

Malibu's theory of the case is based entirely on speculation.  According to Malibu, the modem and/or Internet connection leased to Raleigh from Charter Communications was used to upload the pornographic movies for which Malibu claims it owns copyrights from February 11, 2013 to February 17, 2013.  Malibu further believes that because Raleigh's Internet connection was used to upload the movies, they must have been possessed by Raleigh at some point in time, contrary to Malibu's copyrights.

The reason this is speculation is because Patrick Paige examined not just Raleigh's laptop and his iPad, but Raleigh's wife's laptop and iPad Raleigh's PlayStation 3, Raleigh's iCloud account, and Raleigh's DropBox account, and did not find any of the pornographic movies at issue stored in or on any those devices or storage facilities. Even more telling, however, is that there is no evidence that Raleigh ever possessed any of the allegedly copyrighted works at issue, or that he deleted those works at some point in time.  There is no "footprint" on any of Raleigh's devices or in his "cloud-based" storage facilities to indicate which would support a theory that Raleigh ever possessed or owned the copyrighted material.   Instead, there is a complete absence of any copyrighted works on Raleigh's devices and storage facilities currently, or that they ever existed on those devices and storage facilities.

21

When information is "Deleted" from a computer hard drive, it is initially marked as deleted, but the contents of the file are not immediately removed or overwritten. Rather, the blocks which formerly contained File A are no longer reserved, and may be overwritten by subsequent writes to the drive. In a drive with a spinning magnetic platter for storage, the drive typically attempts to optimize writes such that a file is written in a single contiguous series of blocks. (See D.E. 120-1, Raleigh Affidavit).

This increases the efficiency by which they can be read back and reduces seek times in accessing the files. As a result, deleted files are often wholly or partly recoverable and detectable long after having been erased. On Flash based storage devices, such as those found in iPads and high end computers, the drive optimizes to avoid wearing out a single cell of memory, which has a limited number of useable write cycles. (See D.E. 120-1, Raleigh Affidavit).

To facilitate this, an SSD drive controller will mark a deleted file in a similar fashion to a spinning drive, however it will not be until it's written to most of the available cells that it will then begin to overwrite previously deleted information. As cells reach their maximum life cycle, the drive will mark them as bad, effectively decaying the storage capacity over time. In order to effectively remove any traces of infringing files, software similar to that which was used to detect infringement must be employed. (See D.E. 120-1, Raleigh Affidavit).

Where the forensics software is designed to identify and catalog specific types of files, cleanup software is designed to identify and delete those types of files. Also similarly, it would be indiscriminate in its approach to removing offensive files, such that there would be all or nothing remaining on the computer it had been employed on.

This would have removed all of the fingerprints and metadata accumulated from years of housekeeping neglect.  (See D.E. 120-1, Raleigh Affidavit).

It is equally troubling that Paige's own speculation is unsupported by the "facts" contained in his expert reports.  For example, in his October 5, 2015 report, Paige claims that the BitTorrent client (or application or program) "uTorrent" was installed on a Windows XP virtual machine on Raleigh's laptop and his wife's laptop.  (See D.E. 132-6, p. 8, ¶¶34, 39).  Michael Patzer, however, Malibu's expert from IPP (IPP claims it downloaded Malibu protected works prior to the filing of the Complaint, whereas Paige examined Raleigh's "hardware" after litigation began), the investigator who monitored the activity on Raleigh's modem, identified "qBitTorrent"[5] as the client (or application or program) used to upload Malibu's allegedly copyrighted pornographic works.  (See D.E. 132-7, Ex. A to Patzer's declaration).  So, Plaintiff's own evidence indicates that someone using a Torrent program that only runs on a Windows operating system is the infringer.   Raleigh is a Macintosh user, and the Torrent program found on his computers and associated with the torrent files on his devices is completely different than that of the alleged infringer.

Accordingly, because there is no evidence on which to present this case to a jury, and Plaintiff's case is built on nothing more than speculation and conjecture, this case should be dismissed *with prejudice* as a matter of law.   Defendant, therefore, respectfully requests that this Court enter an Order, pursuant to Fed. R. Civ. P. 56(c), dismissing this case with prejudice as a matter of law.

---

[5] "qBittorrent" is a BitTorrent client (i.e., program) written using the Qt4 Framework for its user interface. https://github.com/qbittorrent/qBittorrent/wiki/Frequently-Asked-Questions.    The 3.0.6 version of qBitTorrent was first released for use on October 7, 2012.  http://www.qbittorrent.org/news.php.  (Both accessed on January 11, 2016.)

## III.   DEFENDANT SHOULD BE AWARDED ATTORNEY'S FEES.

Defendant is entitled to attorney fees pursuant to the Copyright Act.  17 U.S.C. §101, *et seq*.  Section 505 of the Copyright Act provides in pertinent part that "in any copyright infringement action, the court may ... award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.

Specifically, 17 U.S.C. § 505 provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

Defendant is entitled to attorneys' fees under § 101 of Copyright Act of 1976, codified at 17 U.S.C. § 505, (1) in the event that this Court grants his motion and he is entitled to entry of a favorable judgment when district court dismissed plaintiffs' copyright infringement action with prejudice under Fed. R. Civ. P. 41(a)(2); (2) in the event the district court recognizes his as prevailing party for the awarding of  costs under Fed. R. Civ. P. 54, which would mean that Defendant is also a prevailing party for purpose of 17 USCS § 505; and (3) this case is a good candidate for fee shifting under § 505 because it was filed with absolutely no evidence pointing to Defendant as a violator of the Copyright Act.  *Riviera Distribs v. Jones,* 517 F3d 926 (2008, CA7 Ill).

Defendant, an individual (as opposed to a large company such as Malibu Media) has incurred a significant amount of attorney fees in defending this matter and is entitled to attorney fees, as a matter of law, pursuant to the Copyright Act.  Raleigh makes this request pursuant to Fed. R. Civ. Pro. 54(d)(2)(B)(i) to avoid wasting more time and judicial resources in another filing.  At this stage of the litigation and in light of

Patrick Paige's reports, no party is prejudiced by this request. A hearing is the appropriate procedural mechanism to ask for attorney's fees. Defendant, therefore, respectfully requests that this matter be set for a hearing to determine an award of attorney fees, with a briefing scheduled to be set by this Court.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court deny Malibu Media's Motion for Summary Judgment.

Respectfully submitted,

**BLANCO WILCZYNSKI, P.L.L.C.**

/s/ *Derek S. Wilczynski*
DEREK S. WILCZYNSKI [P-57079]
Attorneys for Defendant
LINCOLN G. HERWEYER [P-55742]
Co-Counsel for Defendant

Dated: March 30, 2016

25

<u>***PROOF OF SERVICE***</u>

The undersigned certifies that a copy of the foregoing document was served upon all counsel at their above-captioned addresses on the **30th** day of ***MARCH 2016*** via:

| | |
|---|---|
| _____ U.S. Mail | _____ Express Delivery |
| _____ Facsimile | _____ Hand Delivery |
| ■ ***ECF Filing*** | _____ Other |

and declares under penalty of perjury that this statement is true to the best of her information, knowledge and belief.

/s/_____

s:\cases - opened\internet trolling cases\raleigh, jesse\pleading\motion for summary judgment 2016\03221620916 defendant'sresponse to reply to motion for summary judgment.dsw.fan.docx