# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN

MALIBU MEDIA, LLC,   )
                                )
    Plaintiff,            )         Civil Action Case No.: 1:13-cv-00360-RJJ
                                )         HON. ROBERT J. JONKER
v.                              )         MAG. JUDGE: RAY KENT
                                )
JESSE RALEIGH,         )
                                )
    Defendant.          )
_____ )

MALIBU MEDIA
In Pro Per

**BLANCO WILCZYNSKI, PLLC**
Derek S. Wilczynski [P-57079]
Attorneys for Defendant
2095 East Big Beaver, Suite 400
Troy, MI 48083
(248)519-9000
Fax: (248) 519-9001
dsw@blancopc.com

**LINCOLN G. HERWEYER, P.C.**
LINCOLN G. HERWEYER [P-55742]
Co-Counsel for Defendant
35054 Twenty-Three Mile Road, Suite 115
New Baltimore, MI 48047
(586)716-1562
Fax: (586) 716-1867
lgherweyer@netscape.net

**BRIEF IN SUPPORT OF
DEFENDANT'S POST-JUDGMENT MOTION
<u>FOR COSTS AND ATTORNEYS' FEES</u>**

\*\*\*   **ORAL ARGUMENT REQUESTED**   \*\*\*

## TABLE OF CONTENTS

INDEX OF AUTHORITIES .................................................................................... iii

STATEMENT OF QUESTIONS PRESENTED ....................................................... v

FACTUAL BACKGROUND ..................................................................................... 1

LEGAL ARGUMENT ............................................................................................... 6

    I.    **THIS COURT SHOULD DETERMINE THAT DEFENDANT IS ENTITLED TO RECOVER ATTORNEYS' FEES AND COSTS FOR THE REASONABLE VALUE OF THE SERVICES RENDERED IN DEFENDING HIM, PURSUANT TO 17 U.S.C. § 505.** ............................................................................. 6

CONCLUSION ....................................................................................................... 10

CERTIFICATE OF SERVICE ............................................................................... 10

# **MOST APPROPRIATE OR CONTROLLING AUTHORITY**

17 U.S.C. § 505

Fed. R. Civ. P. 54(d)(2)

*CRST, Inc. v. EEOC*, ___U.S.___, Docket No. 14-1375 (May 19, 2016)

## STATEMENT OF QUESTIONS PRESENTED

**I.   SHOULD DEFENDANT BE AWARDED COSTS, INCLUDING REASONABLE ATTORNEY'S FEES, PURSUANT TO THE COPYRIGHT ACT?**

   Defendant says "yes."

   Plaintiff says "no."

## **FACTUAL BACKGROUND**

**Introduction.**   On April 1, 2013, Plaintiff, Malibu Media ("Malibu") initiated this action under the Copyright Act with a Complaint against a John Doe, as a subscriber to an IP address [Doc. 1].  On June 23, 2013, Malibu Media filed an Amended Complaint against Jesse Raleigh ("Raleigh") [Doc. 10].

Plaintiff, Malibu Media, is a notorious producer of pornographic material. In this action, it claimed that Raleigh illegally uploaded to Malibu's investigator, IPP, through a process called "BitTorrenting," small portions of 6 pornographic movies. To be clear, Malibu did not claim that Raleigh illegally *downloaded* those works but, rather, that IPP downloaded bits of Malibu's pornography from an unidentified computer through a modem assigned to Raleigh by Charter Communications.  Malibu did not, however, have any evidence as to whether it was Raleigh, or even whether it was one of Raleigh's computer devices, that used that particular WiFi account to do so.

On August 23, 2013, Defendant, Jesse Raleigh (hereinafter "Raleigh"), filed an Answer to the Amended Complaint on August 13, 2013. [D.E. 16].   In his Answer to the Amended Complaint, Raleigh denied each and every allegation that he violated the Copyright Act.   [D.E. 16]. Since then, Raleigh has maintained (and the evidence supported) that he never downloaded or possessed Malibu's copyrighted pornography, that he was not at home in Petoskey when the material was BitTorrented in February of 2013 (he was in Grand Rapids on business), and that there were multiple, equally possible, ways that the pornography could have been downloaded.   For example, Raleigh works in the information technology ("IT") field, and his friends, many of whom visited his apartment, are also familiar with technology.  It is possible that a friend, acquaintance, or associate of Raleigh downloaded the material.  Finally, Raleigh did not

have a password protected modem and, as a result, anyone within distance of his modem could have connected to it wirelessly-- and (at the time) he lived in a four-unit apartment building, located next to a five-unit building.

Moreover, while Raleigh, as an IT professional, uses BitTorrent for legitimate purposes, the version on his devices and associated files is uTorrent, which is not the program that was used by the supposed infringer (see below).

**Jesse Raleigh.** Defendant is a software engineer, programmer, and information systems specialist. From June 2006 until January of 2013, he worked for Silversmith Inc., in Gaylord, Michigan. (Aff., p 2, Doc 80-11, Pg. ID 711; J. Raleigh Dep., pp 6-11, Doc 122-2, Pg. ID 1217-1218.) From 2011 until early January of 2013, Defendant commuted to that job (35 miles each way) from an apartment in a four-unit house at 218 Michigan Ave., Petoskey, Michigan, where he lived with his wife, Heather, and their two sons, J. and C. In February 2013, during the alleged period of infringement, Defendant's son J. was three years old, and his son C. was one year old. (*Id.*; H. Raleigh Dep, p 8, Pg. ID 1295.)

In December 2012, Defendant accepted a job with Agent X, LLC., a marketing firm located in Grand Rapids, Michigan, 178 miles from his apartment in Petoskey. Defendant began working as the Lead Technologist for Agent X, LLC in early January 2013 and initially (in order to work in Grand Rapids) Defendant stayed with a friend named Ryan Jackson, but he also spent three weeks staying with his wife's relatives. (Aff., p 2, Doc.80-11, pg. ID 711; J. Raleigh Dep J. 6-9, Doc 122-2, Pg. ID 1217-1218.).

In March 2013, Defendant moved his family to a house located at 343 Norwood Avenue SE in Grand Rapids (*Id.*; Inter. Ans., p 1, Doc 122-2, Pg. ID 1260). On September 11, 2013, the owner of Agent X, LLC (Brian Steketee) registered a new limited

2

liability company with the State of Michigan called Modustri LLC (Attachment 2), in order to capitalize on a new technology invented by Defendant. Although Agent X, LLC officially went out of business in May 2014, Defendant continued working as the Lead Technologist for Modustri LLC, the offices of which are located at 38 Commerce Ave, Suite 102, Grand Rapids. In February 2015, Defendant took a job as a Senior Developer with PhishMe Inc. The next month, he and his family moved to their current address on Fruit Street in Grand Rapids. (J. Raleigh Aff., Doc 80-11, Pg. ID 711.)

**The Discovery Process.** Malibu's Complaint alleged six acts of infringement occurring through Defendants IP address in Petoskey as follows: two incidents occurring just after midnight on February 11, 2013; three incidents on February 15, 2013 (one around noon, and two just after 8:00 pm); and one on February 17, 2013 at around 5:00 pm. (Complaint Ex A, Doc 1-1, Pg. ID 8.) The affidavit of Michael Patzer revealed that Malibu purported to have actually tracked a total 49 data packets transferred from or to Defendant's IP address, all occurring roughly at the times indicated above, regarding six of Malibu's works. (Doc 130-3.) The "client version" associated with each of those transfers was qBittorrent 3.0.6.[1] (MySQL Log, Exhibit B to Patzer Aff., Doc 130-4.) In a telephone conference on January 21, 2016, between counsel for both parties and Charter Communications, we learned that Malibu's investigator had been tracking that particular IP address since well before it had been assigned to Raleigh, and continued to track it after it was no longer assigned to Raleigh.

In his Answers to Interrogatories, Defendant explained that he was in Grand

---

[1] "qBittorrent" is a BitTorrent client (i.e., program) written for Windows operating systems that was first released for use on October 7, 2012. Significantly, Raleigh's devices were Apple products ("Macs") which are not Windows based.

3

Rapids at the time of the first three incidents of infringement, and was driving from Grand Rapids to Petoskey at the time of the fourth and fifth incidents. He spent the 16th at his parents' house in Alanson, and returned to Grand Rapids on the 17th. (Doc-122-2, p 9, Pg. ID 1267.)

Overall, the discovery process was a comedy of errors, which space limitations preclude Defendants from rehashing here (although Defendant will be more than happy to elaborate at any evidentiary hearing deemed necessary). But to summarize: Malibu had the following devices examined and analyzed by its experts: 2 laptops, belonging to Jesse Raleigh and his wife; 2 ipads; 1 Western Digital external hard drive; Toshiba hard drive; 1 PlayStation 3 video game console; Jesse Raleigh's social media accounts; Jesse Raleigh's Dropbox account; and Jesse Raleigh's iCloud account. In addition to the examination and analysis conducted on Raleigh's devices, Malibu also made numerous and extensive discovery requests and deposed Defendant and his wife.

**Patrick Paige's Reports.** Malibu's expert witness, Patrick Paige, produced three reports. In all reports, every search of the device or item was negative for Malibu Media files or even for the files supposedly downloaded or uploaded by the IP address during Malibu's "expanded surveillance."

The parties litigated this case for just shy of three years. On May 24, 2016, this Court entered an Order dismissing this case for Plaintiff's failure to prosecute, as well as a Judgment reflecting the same. [Docs. 157 and 158]. In the Order Dismissing Case, the Court noted Plaintiff's long-standing history of requesting adjournments, failing to timely proceed with this litigation, and its failure to obtain new counsel after this Court's Order dated April 29, 2016. [Doc. 153].

4

# **LEGAL ARGUMENT**

**I. THIS COURT SHOULD DETERMINE THAT DEFENDANT IS ENTITLED TO RECOVER ATTORNEYS' FEES AND COSTS FOR THE REASONABLE VALUE OF THE SERVICES RENDERED IN DEFENDING HIM, PURSUANT TO 17 U.S.C. § 505.**

Defendant is entitled to attorney fees pursuant to the Copyright Act. 17 U.S.C. §101, *et seq*. Section 505 of the Copyright Act provides in pertinent part that "in any copyright infringement action, the court may ... award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.

Specifically, 17 U.S.C. § 505 provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

<u>First</u>, this case is a good candidate for fee shifting under § 505. Malibu files cases like this by the thousands, and it knows at the outset that, by suing the internet account holder it is (at best), suing one person of a group (of undetermined size) of people who use a particular IP address to access the internet. In other words, it is taking a risk as to whether it has sued an actual infringer or just someone who pays for internet service. When Malibu gets the right person (or when Malibu takes a default, and we have no idea whether it actually sued the right person) Malibu typically obtains a judgment that includes attorneys fees. It is only fair, therefore, that when its gamble turns out to be incorrect, and it has put a blameless person through the "meatgrinder" (so to speak), that Malibu be required to suffer in accordance with the same rule by which it benefits.

Second, upholding the integrity of the federal judicial system warrants imposing fee-shifting here.  Malibu's business model, to a large extent, relies on intimidation-- intimidation of being hit with statutory damages, and of being hit with having to pay attorneys' fees, of a defendant having to pay their own attorney, and of a defendant being publicly shamed as a consumer of pornography.  The typical defendant, even if he did not do it, might rationally be willing to pay the $10,000 or so in ransom being demanded in order to avoid: (1) paying more than that to his own attorney for a defense; (2) run the risk of losing; (3) having his computers and private information pored over by pornographers looking for leverage and a basis for aspersing the defendant as a liar or violator of some unrelated law or right; and (4) being questioned on his use of pornography, and habits or preferences in that regard.

Meanwhile, Malibu has effectively made the federal court system an unwilling partner in its grand scheme of coercing settlements out of hapless and often blameless victims.  And the only thing that makes the judicial system's role in Malibu's scheme palatable is the notion that if a blameless person does stand up to the bully, and the defendant does prevail against those tactics, then it will be Malibu who has to face the same consequences it uses to frighten others.

Third, Jesse Raleigh is not your typical Defendant, and he should be commended for the risks he took in standing up to this bully.  Raleigh knew from the beginning that he was not the infringer, that no amount of discovery and inspection would show him to be the infringer, and that ultimately, he could prove to a jury's satisfaction that he did not infringe Malibu's works.  And from the beginning, Raleigh made it known that he was willing to endure a fat lip and bloody knuckles to not let Malibu put him through the

6

wringer and get away with it. Raleigh knew that he was not just fighting for himself, but for others who were similarly situated but who could not fight for themselves.

<u>Fourth</u>, for all of Malibu's posturing, and for all of the thousands of cases they have filed, they are not really serious about proving a case of infringement. Simply put, they do not have the goods. Attorney Wilczynski has now appeared in four different cases brought by Malibu Media, and stewarded each of them to a dismissal without the defendant ever paying a dime to Malibu either by judgment or settlement. In the only case Malibu has ever brought to trial (the so-called Bellwhether case), it was a bench trial where the defendant admitted that he was the infringer. The fact is, however, Malibu files these cases with absolutely no evidence pointing to the Defendant as a violator of the Copyright Act, and its subsequent efforts are all designed to extract a check, not the truth.

<u>Fifth</u>, but most importantly, the mere fact that this dismissal was based on conduct by Malibu akin to a "default" (when it failed to secure to representation after its attorneys jumped ship on the eve of the hearing on Summary Judgment and the *Daubert* motion), does not mean that no party "prevailed." To the contrary, Defendant was clearly the "prevailing party." In a May 19, 2016, decision of the United States Supreme Court, *CRST, Inc. v. EEOC*, ___U.S.___, Docket No. 14-1375 (May 19, 2016), the Court reconciled a circuit split that resulted from the Eighth Circuit's decision regarding the definition of "prevailing party." The Supreme Court stated that "a defendant need not obtain a favorable judgment on the merits in order to be a 'prevailing party' under Title VII." The Court noted that Congress had not intended that defendants should be eligible to recover for costs and fees only when courts disposed of cases on their merits and reasoned:

7

> Common sense undermines the notion that a defendant cannot "prevail" unless the relevant disposition is on the merits. Plaintiffs and defendants come to court with different objectives. A plaintiff seeks a material alteration in the legal relationship between the parties. A defendant seeks to prevent this alteration to the extent it is in the plaintiff's favor. The defendant, of course, might prefer a judgment vindicating its position regarding the substantive merits of the plaintiff's allegations. The defendant has, however, fulfilled its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision. The defendant may prevail even if the court's final judgment rejects the plaintiff's claim for a nonmerits reason.
>
> *CRST, Inc., supra* at p. 12, Doc No. 156-1.

The same reasoning applies to the instant case.

Consequently, Defendant (an individual as opposed to a large company such as Malibu Media) has incurred a significant amount of attorney fees in defending this matter and is entitled to recover the value of those services, as a matter of law, pursuant to the Copyright Act. Raleigh has beens represented by Derek S. Wilczynski and Lincoln G. Herweyer. Mr. Wilczynski is an attorney who has practiced since his admission to the Bar in November of 1997. Mr. Herweyer has practiced for the same amount of time. Mr. Wilczynski's practice focuses on civil litigation, primarily corporate defense, insurance defense, and criminal defense. He has tried numerous cases to verdict. Mr. Herweyer practices in those same areas, primarily as an appellate attorney, but frequently "second-chairs" litigation in the trial court.

Mr. Wilczynski and Mr. Herweyer are asking for $350.00 per hour for their defense of Mr. Raleigh. This is copyright trolling defense is a highly specialized area of practice. It required Mr. Herweyer and Mr. Wilczynski to learn about BitTorrenting, Copyright Trolling, Copyright Protection, and the technical side of the defense of this case. Mr. Herweyer and Mr. Wilczynski were required to learn the technical aspects of the allegations made by Patrick Page, in his three reports, as well as the relationship

8

between Malibu Media, the Copyright Act, and the delivery of Malibu Media's pornography at issue in this case. (By "delivery of the pornography," Mr. Wilczynski and Mr. Herweyer had to learn the technical reasons as to *why* Malibu Media's pornography was not downloaded by Mr. Raleigh at any time.)

Three Hundred Fifty Dollars per hour is not unreasonable for a case of this magnitude. Mr. Herweyer and Mr. Wilczynski have represented three other Defendants in cases brought by Malibu Media, three of which resulted in early dismissal. Additionally, Mr. Herweyer and Mr. Wilczynski had to deal with the "shenanigans" of Malibu Media throughout this case. As this Court is well aware, it was never clear, at any point in time, which attorneys represented Malibu Media. Recently, Paul Nicoletti, Malibu Media's "first" attorney in this case, and its ostensible local counsel, represented to Mr. Wilczynski and Mr. Herweyer that, after a long "delay" he was re-entering the case in an attempt to settle it on behalf of Malibu Media. Mr. Nicoletti then back tracked from this position and represented to this Court that he had not represented Malibu Media since June of 2015, even though this position was belied by telephone conversations and emails between the attorneys in which Mr. Nicoletti specifically and affirmatively represented that he was currently representing Malibu Media.

Mr. Wilczynski and Mr. Herweyer were forced to endure numerous eleventh hour Motions filed for the purpose of delaying this matter, extending time, or covering up for Malibu Media's attorneys' failure to prosecute, "Scriveners errors," and failure to follow the Court Rules. On numerous occasions, the Court directed Malibu Media and Raleigh to file Joint Status Reports, which Mr. Nicoletti refused to do.

The bills submitted by Mr. Herweyer and Mr. Wilczynski were kept contemporaneously with the events of this case. Mr. Herweyer's time log is submitted

9

herewith as Exhibit A,[2] and Mr. Wiczynski's time sheets will be provided to the Court once they have been redacted for confidential or privileged information and verified for accuracy. Mr. Raleigh should receive his attorney fees for having to endure three years of vexatious litigation on the part of Malibu Media.

## CONCLUSION and RELIEF REQUESTED

**WHEREFORE**, Defendant Respectfully requests that this Court, after giving Plaintiff an opportunity to contest it, determine that Defendant is entitled to an award of costs and attorneys' fees under the Copyright Act of up to $158,685.00 and, thereafter, receive submissions on any issues relating to the value of the services rendered, and thereafter, enter an appropriate award of costs and fees to Defendant.

Respectfully submitted,

| | |
|---|---|
| s/ Derek W. Wilczynski | s/ Lincoln G. Herweyer |
| Dererek W. Wilczynski (P57079) | Lincoln G. Herweyer (P55742) |
| Counsel for Defendant | Co-Counsel for Defendant |
| 20295 E. Big Beaver Rd., Ste 400 | 35054 23 Mile Rd., Ste 115 |
| Troy, MI 48083 | New Baltimore, MI 48047 |
| (248) 519-9000 | (586) 716-1562 |

CERTIFICATE OF SERVICE

I, Lincoln G. Herweyer, hereby certify that on June 7, 2016, I mailed a copy of Defendants Post-Judgment Motion For Costs and Attorneys' Fees, as well as this Brief in Support, to Malibu Media, LLC, at the following address: 409 W. Olympic Blvd., Suite 501, Los Angeles, California, 90015.

s/ Lincoln G. Herweyer

---

[2] Mr. Herweyer's client log also contains entries for the $450 in costs associated with case evaluating this matter.